ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
**AKERMAN LLP**
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Telephone: (702) 634-5000
Facsimile:  (702) 380-8572
Email: ariel.stern@akerman.com

MICHAEL D. NAPOLI, ESQ.
*PRO HAC VICE*
**AKERMAN LLP**
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 720-4360
Facsimile:  (214) 720-8116

*Attorneys for party in interest Tecumseh – Infinity Medical Receivables Fund, L.P.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.<br><br>Debtor. | Case No.:   21-14486-abl<br>Chapter        7<br><br>**JOINT MOTION OF CHAPTER 7 TRUSTEE AND PARTY IN INTEREST TO REJECT EXECUTORY AGREEMENT**<br><br>[Agreement: Sub-advisory Agreement with Tecumseh – Infinity Medical Receivables Fund, LP] |

Chapter 7 Trustee Robert Atkinson ("Trustee"), and Tecumseh – Infinity Medical Receivable Fund, LP, ("Tecumseh"), a party interest, by and through their counsel, respectfully submit this joint motion (the "Motion") for entry of an order under 11 U.S.C. § 365 rejecting a certain executory contract between the Debtor and Tecumseh known as the Sub-Advisory Agreement (the "Agreement").  A copy of the Agreement is attached as **Exhibit A** to the supporting Declaration of Chad Meyer filed contemporaneously hereto.

60280477;1

## INTRODUCTION

1. The Agreement requires the Debtor to provide a series of services to Tecumseh. Among other things, the Debtor is to:

   a. "[U]tilize its network of attorneys and service providers to identify commercially viable Receivables for purchase by" Tecumseh;

   b. Perform a due diligence "review of all Receivables to help identify only those most suitable for purchase;"

   c. "[N]egotiate a favorable Purchase Price for the Receivable and facilitate purchase of the Receivable by" Tecumseh;

   d. Track and manage the Receivables and any collections related to them.

See Agreement at Exh. A (Services).

2. The agreement is not assumable. Since the filing of the instant matter, the Debtor has ceased all business operations and thus cannot provided the required services. These breaches cannot be cured. *Id*. at ¶ 9.

3. Moreover, this Agreement is unassignable. Section 365 of the Bankruptcy Code provides that it cannot be assumed if under applicable law Tecumseh is excused from accepting performance from an entity other than the Debtor, which is discussed further below. Tecumseh asserts that the Agreement was entered into with the intent and expectation that services be rendered exclusively by Debtor's principals, in reliance of Debtor's skill and reputation in the industry. *Id.* at ¶¶ 4-10. Thus, this Agreement may not be assumed or assigned, and thus must be rejected.

4. It is vital to Tecumseh that the Agreement be terminated sooner rather than later. No one is currently servicing these receivables. Tecumseh's ability to hire a new servicer is impeded by the existing Agreement. Until the Agreement is rejected, Tecumseh cannot service these receivables.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

6. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

60280477;1

## BACKGROUND

7. On June 18, 2020, Debtor and Tecumseh entered into the Agreement, attached hereto as **Exhibit A** to the Meyer Declaration.

8. Tecumseh entered into the Agreement solely due to the character, reputation, and skill of the Debtor and its principals. Meyer Decl. at ¶¶ 4-6. In addition to their skill and reputation, the principals had a strong personal relationships with a network of plaintiff's lawyers which enhanced their ability to acquire medical receivables in connection with personal injury cases; to identify appropriate receivables and to negotiate a good price. *Id.* The skill, reputation and relationships of Debtor and its principals enabled the Debtor to service the receivables ensuring that they were collected timely and any required discounts were minimized. But for these skills, Tecumseh would not have engaged the Debtor. *Id*.

9. Tecumseh's intent to acquire services only from the Debtor as controlled by its principals is evidenced by the Agreement. The Agreement terminates upon the death or incapacity of the Debtor's owners. Agreement at § 3(b). "Cause" for termination includes (i) the conviction of one of Debtor's owners for a felony or crime of moral turpitude; and (ii) an act by the Debtor's owners in reckless disregard of Tecumseh's rights. *Id*. at § 3(c). The Agreement also forbids assignment. *Id*. at § 10. Tecumseh is not amenable to receiving these services from anyone other than the Debtor or its principals. Meyer Decl. at ¶ 7.

10. Since the filing of this bankruptcy case, Debtor has ceased all business operations and, thus, cannot provide the services required under the same. *Id*. at ¶ 9. Existing receivables are not being serviced; new receivables are not being acquired. Plaintiff's lawyers associated with the underlying medical liens who are seeking to negotiate payment terms have no one to speak with. *Id*. Tecumseh critically needs these services to be performed. Debtor cannot do them and Tecumseh's ability to retain a new servicer is impeded by the existence of the Agreement. *Id.* at ¶ 10.

11. For these reasons, Tecumseh and the Trustee request an order rejecting the Agreement.

## LEGAL ARGUMENT

12. Section 365 of the Bankruptcy Code allows a debtor to assume or reject executory contracts, subject to court approval. See 11 U.S.C. § 365(a). Further, in the context of a Chapter 7

3

AKERMAN LLP
1635 VILLAGE CENTER CIRCLE, SUITE 200
LAS VEGAS, NEVADA 89134
TEL.: (702) 634-5000 – FAX: (702) 380-8572

60280477;1

filing, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996). The Agreement is unquestionably an executory contract within the meaning of Section 365 of the Bankruptcy Code.

13. Generally, upon finding that a trustee has exercised his/her sound business judgment in determining that rejection of certain contracts or leases is in the best interests of the estate's creditors and all parties in interest, a court should approve the rejection under Section 365(a). *See In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees Stores*, Inc., 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

14. Section 365(a) of the Bankruptcy Code provides that the debtor, subject to the Court's approval, may assume or reject any executory contract. 11 U.S.C. § 365(a). Certain contracts, however, are incapable of assumption or assignment under Section 365. Specifically, pursuant to Section 365(c)(1) of the Bankruptcy Code, those contracts to which applicable law excuses the non-debtor party from accepting performance from, or rendering performance to, an entity other than the debtor or the debtor in possession, cannot be assumed or assigned unless the non-debtor party consents. 11 U.S.C. § 365(c)(1).

15. Under 11 U.S.C. § 365(c)(1), a contract that for personal services may not be assumed or assigned. In essence this is because personal service contracts entered into on the basis of the character, reputation, taste, skill, or discretion of the party that is to render performance. *In re Catron*, 158 B.R. 624 (Bankr. E.D. Va. 1992); *Farnsworth, Contracts* § 11.10 at 744 (3d ed. 1999) (stating "personal" contracts are those which "the recipient must rely on qualities such as the character, reputation, taste, skill, or discretion of the party that is to render [performance]").

16. Ultimately, the determination of whether a contract may be assigned is one of state law. *In re Catapult Entertainment, Inc*., 165 F.3d 747, 754–55 (9th Cir. 1999) (holding that "where applicable nonbankruptcy law makes an executory contract nonassignable because the identity of the nondebtor party is material, a debtor in possession may not assume the contract absent consent of the

4

nondebtor party."). Here, the non-bankruptcy law is that of North Carolina. Agreement at § 11(a). Under North Carolina law, a contract may not be assigned if "the other party has a substantial interest in having his original promisor perform or control the acts required by the contract." N.C. Gen. Stat. § 25-2-210(1). As discussed above, and in further detail in the Meyer Declaration, Tecumseh has a substantial interest in having the Debtor under the control of its principals perform under the Agreement.

17. Moreover, the Debtor is currently breaching the Agreement. The Agreement calls for the Debtor to provide services to Tecumseh, including the management and collection of outstanding receivables. The Debtor is no longer in business and is incapable of providing those services. The Chapter 7 Trustee is not in a position to provide the services and should not be expected to do so.

18. Nor could the ongoing breaches be cured. New contracts are not being acquired. Existing receivables are not being serviced. Plaintiff's lawyers seeking to negotiate payment terms have no one to speak with. The lack of servicing simply cannot be undone.

19. Additionally, the Agreements are not a source of potential value. Tecumseh has no obligation to purchase additional receivables from whomever may be found to assume the agreement. Moreover, Tecumseh does not owe anything under the Agreement for existing receivables.

20. Here, the Trustee has consented to the rejection of the Agreement. Thus, the Court should approve the rejection under Section 365(a). For these reasons, Trustee and Tecumseh request an order rejecting the Agreement.

## CONCLUSION

21. Trustee and Tecumseh respectfully request that this Court issue an Order under 11 U.S.C. § 365 rejecting the Sub-Advisory Agreement.

DATED: October 5, 2021.

        **AKERMAN LLP**

        */s/ Michael Napoli, Esq*
        ARIEL E. STERN, ESQ.
        Nevada Bar No. 8276
        1635 Village Center Circle, Suite 200
        Las Vegas, Nevada 89134

60280477;1

AKERMAN LLP
1635 VILLAGE CENTER CIRCLE, SUITE 200
LAS VEGAS< NEVADA 89134
TEL.: (702) 634-5000 – FAX: (702) 380-8572

MICHAEL D. NAPOLI, ESQ.
*PRO HAC VICE*
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201

*Attorneys for party in interest Tecumseh – Infinity Medical Receivables Fund, L.P.*


*/s/Robert E. Atkinson*
**ROBERT E. ATKINSON**
376 E WARM SPRINGS RD STE 130
LAS VEGAS, NV 89119
702 617-3200

*Trustee*

6

60280477;1