Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:   blarsen@shea.law
             kwyant@shea.law

*Attorneys for HASelect-Medical Receivables
Litigation Finance Fund International SP*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7<br><br>Hearing Date:   October 12, 2021<br>Hearing Time:   3:00 p.m. |

**SUPPLEMENT TO JOINT MOTION OF CHAPTER 7 TRUSTEE AND SECURED CREDITOR HASELECT-MEDICAL RECEIVABLES LITIGATION FUND INTERNATIONAL SP TO APPROVE ABANDONMENT OF COLLATERAL**

Chapter 7 Trustee Robert Atkinson (the "Trustee") and Creditor HASelect-Medical Receivables Litigation Finance Fund International SP ("HASelect"), by and through their respective undersigned counsel, hereby file this Supplement to Trustee and HASelect's Joint Motion for Abandonment of Collateral (the "Motion") filed on September 22, 2021 [ECF No. 12]. In support of this Supplement, the Trustee and HASelect respectfully represent as follows:

## POINTS AND AUTHORITIES

A.  **HASelect and the Trustee's Understanding of the Scope of the Collateral Was Incomplete at the Time the Motion was Filed.**

1.  In filing the Motion, HASelect and the Trustee represented to the Court that there was no equity in Debtor Infinity Capital Management, Inc.'s ("Debtor" or "Infinity") personal property above and beyond the indebtedness in excess of $14 million owed to HASelect under the

1. MLA[1]. Based on new information, HASelect and the Trustee now believe that the value of Infinity's personal property may, in fact, exceed the indebtedness owed under the MLA. Accordingly, it is necessary that the scope of the Collateral to be abandoned be defined more specifically than as originally set forth in the Motion.

2. At the time the Motion was filed, HASelect and the Trustee believed that the accounts receivable owned by Infinity as of the petition date were generally limited to the accounts receivable listed in a spreadsheet titled HASNonOverlapDumpWithIncome-Final.xlsx that Infinity's counsel provided to HASelect on September 21, 2021 and certain designated accounts receivable listed in a separate spreadsheet titled HASNonOverlapDumpWithIncome-Final.xlsx, which was also provided to HASelect on September 21, 2021[2] (together, the "Undisputed Accounts").

3. As explained in the Motion, the Undisputed Accounts were purchased by Infinity from various medical providers with proceeds advanced by HASelect pursuant to the MLA and are unequivocally included in HASelect's Collateral under the MLA.

4. Prior to the filing of the Motion, Infinity represented to both HASelect and the Trustee that the value of the Undisputed Accounts was less than $10 million.[3]

5. After the filing of the Motion, HASelect discovered documents and information establishing that, in addition to the Undisputed Accounts, Infinity purchased certain other accounts receivable from largely the same medical providers and that Infinity subsequently sold and assigned those accounts receivable (the "Assigned Accounts") to Tecumseh-Infinity Medical Receivables Fund, LP ("Tecumseh") through various Assignment and Bill of Sale agreements.

6. HASelect and the Trustee are informed and believe that the value of the Assigned Accounts is in excess of $22 million.

---

[1] Any terms otherwise not herein defined shall have the same meaning attributed to them in the Motion [ECF No. 12].

[2] Infinity's counsel later provided an updated version of the spreadsheet titled HASNonOverlapDumpWithIncome-Final.xlsx on September 24, 2021 that was titled HASOverlapDumpWithIncome-9-24-2021.xlsx.

[3] In its bankruptcy schedules filed on September 29, 2021 [ECF No. 47], Infinity represented that it owed accounts receivable with a value of $5,781,238.68.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

7. The Assigned Accounts, when purchased by Infinity, became Collateral in which HASelect held, and continues to hold, a perfected security interest under the MLA.

8. As such, any interest Tecumseh acquired in the Assigned Accounts from Infinity remains subordinate and subject to HASelect's prior, perfected security interest in the Collateral under the MLA.

9. Moreover, HASelect and the Trustee are informed and believe that Tecumseh did not perfect its purchase of the Assigned Accounts through the filing of any UCC-1 financing statement prior to the Petition Date.

10. Because Tecumseh did not perfect its purchase of the Assigned Accounts through the filing of a UCC-1 financing statement, the Trustee has the power pursuant to 11 U.S.C. § 544(a) to avoid any interest Tecumseh may hold in the Assigned Accounts.

11. Accordingly, to the extent the value of Assigned Accounts (together with the value of the Undisputed Accounts and other Collateral) exceeds the indebtedness owed by Infinity pursuant to the MLA, the Assigned Accounts constitute property of Infinity's bankruptcy estate.

12. The Motion does not seek authority to abandon the Assigned Accounts.

13. Through the Motion, HASelect and the Trustee seek authority for the Trustee to abandon only the Undisputed Accounts and other personal property of Infinity (exclusive of the Assigned Accounts) constituting Collateral, including all books and records and electronic data relating thereto.

**B.     Tecumseh Holds Only an Avoidable, Unperfected Security Interest in the Assigned Accounts.**

14. Perfection of the purchase of an interest in accounts receivable requires the filing of a UCC financing statement. So far as HASelect and the Trustee can determine, no UCC financing statement was filed by Tecumseh in connection with its purchase of the Assigned Accounts from Infinity. Consequently, any interest Tecumseh may claim in the Assigned Accounts is subordinate and subject to HASelect's prior, perfected security interest under the MLA and can be avoided by the Trustee pursuant to § 544(a).

### i. The Assigned Accounts Are Accounts under the UCC.

15. The term "account" is defined broadly under Nevada's UCC to include a right to payment for property sold, leased or licensed, or services rendered. *See* NRS 104.9102(1)(b). The Assigned Accounts arose from services provided by various medical professions. Accordingly, the Assigned Accounts are "accounts" within the meaning of NRS 104.9102(1)(b).

### ii. Sales of Accounts Fall Plainly within the Scope of the UCC.

16. The term "security interest" includes the interest of an outright buyer of "accounts." *See* NRS 104.1201(ii)[4]; s*ee also Dellamargio v. B-Line, LLC (In re Barker)*, 306 B.R. 339, 349 (Bankr. E.D. Cal. 2004) ("The scope of Revised Article 9 extends to: 'A sale of accounts....'"). Dovetailing with the inclusive definition of "security interest," NRS 104.9102(1)(bb) defines "debtor" to include "[a] seller of accounts," while NRS 104.9102(1)(ttt) defines "secured party" to include "[a] person to which accounts ... have been sold." Likewise, "collateral" is defined in NRS 104.9102(1)(l) to include "[a]ccounts ... that have been sold," while NRS 104.9109(1), which sets forth the scope of Article 9, provides that "this Article applies to ...(3) [a] sale of accounts..." *See Netbank, FSB v. Kipperman (In re Commercial Money Center, Inc.)*, 350 B.R. 465, 475 (9th Cir. BAP 2006) ("[T]he UCC uses lending terminology in provisions that are applicable to sales.").

17. The definitions discussed above demonstrate that UCC Article 9 is equally applicable to the sale of accounts as to the use of accounts as security for repayment of an obligation. Any notion to the contrary is quickly dispelled by Assembly Committee Comment 5 to UCC § 9-109:

> [N]either this Division nor the definition of "security interest" in Section 1201 provides rules for distinguishing sales transactions from those that create a security interest securing an obligation. ***This Division applies to both types of transactions. The principal effect of this coverage is to apply this Division's perfection and priority rules to these sales transactions.*** Use of terminology such as "security interest," "debtor," and "collateral" is merely a drafting convention adopted to reach this end, and its use has no relevance to distinguishing sales from other transactions. (emphasis supplied)

---

[4] "'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. 'Security interest' includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible or a promissory note …" NRS 104.1201(ii).

18.     Thus, under the UCC, it makes no difference whether Infinity sold the Assigned Accounts to Tecumseh or pledged the Assigned Accounts as collateral. Both transactions are subject to the same perfection and priority requirements under the UCC. Moreover, the same consequences of failing to perfect apply regardless of Tecumseh's claimed purchase of Assigned Accounts.

### iii. Tecumseh Failed to Perfect Any Security Interest in the Assigned Accounts.

19.     Perfection of a security interest in accounts is governed by NRS 104.9310(1), which provides that "a financing statement must be filed to perfect all security interests" unless the transaction falls into one of the specific exceptions set forth in NRS 104.9310(2). None of those exceptions apply to the Assigned Accounts.

20.     So far as can be determined, Tecumseh did not file a UCC-1 Financing Statement referencing any of the Assigned Accounts. Consequently, any interest that Tecumseh may claim in the Assigned Accounts is unperfected, and, therefore, avoidable by the Trustee pursuant to 11 U.S.C. § 544(a).

### C.  The Trustee Has the Power to Avoid Tecumseh's Unperfected Interest in the Assigned Accounts.

21.     The Trustee's "strong arm" powers under 11 U.S.C. § 544(a) give the Trustee priority over and allow him to avoid Tecumseh's unperfected security interest in the Assigned Accounts:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1).

22.     As the Ninth Circuit Court of Appeals has explained, "[s]ection 544 of the Bankruptcy Code, the 'strong-arm clause,' grants a trustee in bankruptcy 'the rights and powers of a hypothetical creditor who obtained a judicial lien on all of the property in the estate at the date the petition in bankruptcy was filed.'" *Neilson v. Chang (In re First T.D. & Investment, Inc.)*, 253 F.3d

520, 526 (9th Cir. 2001) (citation omitted).  In particular, "[o]ne of these powers is the ability to take priority over or 'avoid' security interests that are unperfected under applicable state law ...." *Id*. (internal quotations and citations omitted).  By operation of § 544(a), the Trustee may avoid any unperfected security interest Tecumseh may claim or hold in the Assigned Accounts.

23. Nev. Rev. Stat. § 104.9317(1)(b) likewise confirms that the Trustee takes priority over Tecumseh's unperfected interest in the Assigned Accounts: "[a] security interest ... is subordinate to the rights of ... a person that becomes a lien creditor before ... the time the security interest ... is perfected...."  The term "lien creditor" is defined in Nev. Rev. Stat. § 104.9102(1)(yy) to include "[a] trustee in bankruptcy from the date of the filing of the petition."  The Trustee, on behalf of Debtor, obviously qualifies as a "lien creditor" under this subsection.

24. Tecumseh's purchase of the Assigned Accounts is irrelevant.  *See* NRS 104.9318(2) ("For purposes of determining the rights of creditors of ... a debtor that has sold an account ..., while the buyer's security interest is unperfected, the debtor is deemed to have rights and title to the account ... identical to those the debtor sold.").  *See also, In re Vigil Bros. Construction, Inc.*, 193 B.R. 513 (9th Cir. B.A.P. 1996) (holding that position of unperfected buyer of accounts was subordinate to subsequent chapter 7 trustee's position as lien creditor); *In re Cripps*, 31 B.R. 541 (Bankr. W.D. Okla. 1983) (same).

25. As a matter of law, Tecumseh's unperfected interest in the Assigned Accounts is subordinate to both HASelect's position as a perfected secured creditor and the Trustee's position as a "lien creditor" under § 544(a).

## CONCLUSION

The foregoing analysis regarding the Assigned Accounts is provided for informational purposes and to clarify both the scope of the Collateral that the Trustee seeks authority to abandon and the scope of the estate's interest in the Assigned Accounts that will not be abandoned pursuant to the Motion.  The Motion does not seek any relief relating to the Assigned Accounts.  As such, any disputes pertaining to the Assigned Accounts can be addressed separate and apart from the limited relief sought through the Motion.

Accordingly, the Trustee and HASelect respectfully request only that the Court enter an order authorizing the Trustee to abandon the Undisputed Accounts and other personal property of Infinity (exclusive of the Assigned Accounts) constituting Collateral, including all books and records and electronic data relating thereto.

DATED this 6th day of October 2021.

| SHEA LARSEN | CHAPTER 7 TRUSTEE |
|---|---|
| /s/ *Bart K. Larsen, Esq.*<br>Bart K. Larsen, Esq.<br>Nevada Bar No. 8538<br>1731 Village Center Circle, Suite 150<br>Las Vegas, Nevada 89134 | /s/ *Robert E. Atkinson, Esq.*<br>Robert E. Atkinson, Esq.<br>Nevada Bar No. 9958<br>376 E. Warm Springs Road, Suite 130<br>Las Vegas, Nevada 89119 |
| *Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP* | *Chapter 7 Trustee* |

**CERTIFICATE OF SERVICE**

1. On October 6, 2021, I served the following document(s):

    SUPPLEMENT TO JOINT MOTION OF CHAPTER 7 TRUSTEE AND SECURED CREDITOR HASELECT-MEDICAL RECEIVABLES LITIGATION FUND INTERNATIONAL SP TO APPROVE ABANDONMENT OF COLLATERAL

2. I served the above document(s) by the following means to the persons as listed below:

    ☒ a. ECF System:

    MATTHEW C. ZIRZOW on behalf of Debtor INFINITY CAPITAL MANAGEMENT, INC.
    mzirzow@lzlawnv.com; carey@lzlawnv.com; trish@lzlawnv.com; allison@lzlawnv.com; zirzow.matthewc.r99681@notify.bestcase.com

    ROBERT E. ATKINSON, Chapter 7 Trustee
    Robert@ch7.vegas; TrusteeECF@ch7.vegas; ecf.alert+atkinson@titlexi.com

    CLARISSE L. CRISOSTOMO on behalf of Trustee ROBERT E. ATKINSON
    clarisse@nv-lawfirm.com, bknotices@nv-lawfirm.com

    MICHAEL D. NAPOLI on behalf of Creditor TECUMSEH - INFINITY MEDICAL RECEIVABLES FUND, LP
    michael.napoli@akerman.com

    ARIEL E. STERN on behalf of Creditor TECUMSEH - INFINITY MEDICAL RECEIVABLES FUND, LP
    ariel.stern@akerman.com, akermanlas@akerman.com

    U.S. TRUSTEE – LV – 7, U.S. Trustee
    USTPRegion17.LV.ECF@usdoj.gov

    ☐ b. United States mail, postage fully prepaid:

    ☐ c. Personal Service:

    I personally delivered the document(s) to the persons at these addresses:

    ☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

    ☐ For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

    ☐ d. By direct email (as opposed to through the ECF System):
    Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was

unsuccessful.

☐     e.     By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐     f.     By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 6, 2021.

By: /s/ *Bart K. Larsen, Esq,*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432