Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:   blarsen@shea.law
           kwyant@shea.law

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>INFINITY CAPITAL MANAGEMENT, INC.<br>Debtor. | Case No. 21-14486-abl<br>Chapter 7 |
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br><br>Plaintiff,<br><br>v.<br><br>TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Defendant. | Adversary Case No. |

## ADVERSARY COMPLAINT

Plaintiff HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP ("<u>Plaintiff</u>" or "<u>HASelect</u>"), by and through its counsel, Shea Larsen PC, hereby claims and alleges against Defendant TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP ("<u>Defendant</u>" or "<u>Tecumseh</u>") as follows:

## PARTIES

1. Plaintiff HASelect is, and was at all relevant times, a segregated portfolio company of HedgeACT International SPC Ltd., a Cayman Islands corporation, with its principal place of

business in Illinois.

2. On information and belief, Defendant Tecumseh is, and was at all relevant times, a Delaware limited partnership.

## JURISDICTION AND VENUE

3. This Adversary Complaint, and the claims herein, are brought pursuant to Bankruptcy Rule 7001 seeking an order, judgment, and decree from this Court determining the validity, priority, and extent of any lien claim asserted by Defendant against certain property of the Debtor's estate.

4. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 105 and 506. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL ALLEGATIONS

5. Beginning in February 2019, HASelect made several loans to Debtor Infinity Capital Management, Inc. ("Debtor" or "Infinity") that were document through various written loan agreements and promissory notes through which Infinity pledged all of its personal property to HASelect as collateral for such loans.

6. HASelect perfected its security interest in all of Infinity's personal property through the filing of a UCC-1 with the Nevada Secretary of State on February 19, 2019.

7. On or about December 18, 2019, HASelect, which was then doing business under the name HASelect-FTM Medical Receivables Litigation Finance Fund SP, and Infinity entered into a Second Amended & Restated Loan and Security Agreement and Promissory Note (together with all related loan documents, the "MLA").

8. The MLA superseded and restated all prior loans made by HASelect to Infinity as well as extended further credit to Infinity.

9. HASelect holds a perfected security interest in all of Infinity's personal property (as defined in § 4.1 of the MLA, the "Collateral"). Specifically, Section 4.1 of the MLA states:

> To secure the payment and performance when due of all of the Borrower's obligations hereunder and under the Note, Borrower hereby grants to Lender a security interest in the Receivables and the Alternative Receivables, and all of its other personal property, including without limitation, all of Borrower's interest in the

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

following, whether now owned or hereafter acquired, and wherever located, but excluding the Permitted Liens: All Goods, Inventory, Equipment, Fixtures, Accounts, General Intangibles, Instruments, Chattel Paper, Documents, Commercial Tort Claims, Investment Property, Letter of Credit Rights, Deposit Accounts, and all money, and all other property now or at any time in the future in Lender's possession (including claims and credit balances), and all proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties), all products and all books and records related to any of the foregoing (all of the foregoing, together with all other property in which Lender may now or in the future be granted a lien or security interest, is referred to herein, collectively, as the "Collateral").

10. Infinity used the proceeds of the loans it obtained from HASelect to purchase accounts receivable from medical providers.

11. Such accounts receivable generally arose from medical treatment provided to individuals who were injured in accidents and had asserted personal injury claims. These accounts receivable are generally secured by liens against these personal injury claims and are typically paid at the time the personal injury claims are settled.

12. HASelect holds a perfected security interest in all accounts receivable purchased by Infinity as Collateral for the indebtedness owed by Infinity under the MLA.

13. On or about June 18, 2020, Infinity entered into a Sub-Advisory Agreement with Defendant Tecumseh under which Infinity agreed, among other things, to "assist [Tecumseh] in acquiring an interest in medical receivables in connection with personal injury cases in the U.S." and to provide collection services related to such receivables.

14. HASelect is informed and believes that Tecumseh had actual knowledge of the MLA and of HASelect's security interest in the Collateral prior to the execution of the Sub-Advisory Agreement.

15. Subsequent to the execution of the Sub-Advisory Agreement, Infinity continued to purchase accounts receivable from various medical providers.

16. Subsequent to the execution of the Sub-Advisory Agreement, Infinity and Tecumseh entered into dozens of substantially similar Assignment and Bill of Sale agreements (the "Assignments") by which Infinity periodically sold and assigned to Tecumseh certain accounts receivable that Infinity had purchased from medical providers (the "Disputed Accounts").

17. HASelect is informed and believes that the Disputed Accounts include approximately

19,000 accounts receivable that Infinity purchased at a cost of in excess of $10 million.

18. HASelect is informed and believes that, notwithstanding the sale and assignment of the Disputed Accounts to Tecumseh, Infinity did not provide any notice of such sale and assignment to any of the obligors responsible for payment of the Disputed Accounts and continues to collect payment on the Disputed Accounts in its own name.

19. HASelect is informed and believes that, upon collection of payment on the Disputed Accounts, Infinity deposits such payments directly to a bank account held in the name of Tecumseh.

20. HASelect is informed and believes that Infinity has, to date, collected in excess of $1,200,000 on the Disputed Accounts and has transferred such funds to Tecumseh.

21. HASelect is informed and believes that the current value of the uncollected Disputed Accounts is in excess of $22 million.

22. HASelect holds a perfected security interest in all of the Disputed Accounts and all proceeds of the Disputed Accounts as Collateral for the indebtedness owed by Infinity under the MLA.

23. The Disputed Accounts constitute "accounts" as that term is defined under the Uniform Commercial Code as adopted in Nevada (and elsewhere) (the "UCC") and as specifically set forth at NRS 104.9102(1)(b).

24. The term "security interest" as defined under the UCC and as specifically set forth at NRS 104.91201(ii) includes "any interest of … a buyer of accounts".

25. The term "debtor" as defined under the UCC and as specifically set forth at NRS 104.9102(1)(bb) includes a "seller of accounts".

26. The term "collateral" as defined under the UCC and as specifically set forth at NRS 104.9102(1)(l) includes "[a]ccounts … that have been sold".

27. To perfect any interest it claims in the Disputed Accounts, Tecumseh was required, pursuant to NRS 104.9910(1), to file a UCC-1 financing statement.

28. Tecumseh did not file any UCC-1 financing statement to perfect any interest it claims in the Disputed Accounts.

29. On September 14, 2021 (the "Petition Date"), Infinity filed a voluntary Chapter 7 bankruptcy petition with this Court, commencing Bankruptcy Case No. 21-14486-abl.

30. Because Tecumseh did not perfect any interest it claims in the Disputed Accounts through the filing of a UCC-1 financing statement, the Disputed Accounts remain property of Infinity's bankruptcy estate pursuant to NRS 104.9318(2), which provides that "[f]or purposes of determining the rights of creditors of, and purchasers for value of an account or chattel paper from, a debtor that has sold an account or chattel paper, while the buyer's security interest is unperfected, the debtor has rights and title to the account or chattel paper identical to those the debtor sold."

31. Any interest Tecumseh claims in any of the Disputed Accounts is subordinate and subject to HASelect's prior, perfected security interest in the Disputed Accounts.

32. HASelect did not consent to or receive notice of Infinity's sale and assignment of the Disputed Accounts to Tecumseh.

33. The sale and assignment of the Disputed Accounts to Tecumseh was done in violation of HASelect's prior, perfected security interest in the Disputed Accounts and HASelect's rights under the MLA.

34. As of the Petition Date, Infinity owed total indebtedness in excess of $14 million to HASelect pursuant to the MLA. Moreover, the total indebtedness owed pursuant to the MLA continues to increase as additional interest, default interest, late fees, and other amounts owed pursuant to the MLA accrue.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

35. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

36. A dispute exists between HASelect and Tecumseh that is ripe for adjudication as to the priority of their respective claimed interests in the Disputed Accounts.

37. HASelect is entitled to a declaration that (i) it holds a perfected security interest in the Disputed Accounts pursuant to the MLA, (ii) any interest Tecumseh claims in any of the Disputed

Accounts is subordinate and subject to HASelect's prior, perfected security interest in the Disputed Accounts, (iii) any interest Tecumseh claims in any of the Disputed Accounts was unperfected as of the Petition Date, and (iv) HASelect is entitled to immediate possession of the Disputed Accounts and all proceeds thereof.

38. HASelect has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorney fees, and interest.

## SECOND CAUSE OF ACTION

### (Injunctive Relief)

39. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

40. HASelect is informed and believes Defendant Tecumseh is in possession of or is exercising control over the Disputed Accounts.

41. The Disputed Accounts constitute Collateral under the MLA in which HASelect holds a first-priority security interest that is superior to any interest Tecumseh may hold in the Disputed Accounts.

42. HASelect has a substantial likelihood of success on the merits of its declaratory relief claim against Defendant Tecumseh.

43. HASelect will suffer irreparable harm in the event Tecumseh is permitted to collect, transfer, or otherwise dispose of the Disputed Accounts prior to the adjudication of HASelect's claim for declaratory relief.

44. The threatened harm to HASelect if Defendant Tecumseh is permitted to collect, transfer, or otherwise dispose outweighs any potential harm to Tecumseh that may result from the entry of a preliminary injunction prohibiting Tecumseh from collecting, transferring, or otherwise disposing of the Disputed Accounts.

45. Public policy supports granting injunctive relief to protect the rights of a secured creditor with a prior, perfected security interest, such as HASelect, over the rights of a secured creditor, such as Tecumseh.

46. HASelect is entitled to entry of a preliminary injunction prohibiting Tecumseh from collecting, transferring, or otherwise disposing of the Disputed Accounts.

47. HASelect has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorney fees, and interest.

## REQUEST FOR RELIEF

WHEREFORE, HASelect respectfully requests that the Court grant the following relief:

1. Entry of a declaratory judgment determining that (i) HASelect holds a perfected security interest in the Disputed Accounts pursuant to the MLA, (ii) any interest Tecumseh claims in any of the Disputed Accounts is subordinate and subject to HASelect's prior, perfected security interest in the Disputed Accounts, (iii) any interest Tecumseh claims in any of the Disputed Accounts was unperfected as of the Petition Date, and (iv) HASelect is entitled to immediate possession of the Disputed Accounts and all proceeds thereof;

2. Entry of a preliminary injunction prohibiting Tecumseh from collecting, transferring, or otherwise disposing of the Disputed Accounts;

3. Entry of judgment awarding HASelect its reasonable attorney fees and costs incurred in bringing this action; and

4. Entry of orders providing such other and further relief as the Court deems just and proper.

Dated this 19th day of October 2021.

**SHEA LARSEN**

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

# CERTIFICATE OF SERVICE

1. On October 19, 2021, I served the following document(s): **ADVERSARY COMPLAINT**

2. I served the above document(s) by the following means to the persons as listed below:

   ☒ a. ECF System:

   ROBERT E. ATKINSON
   Robert@ch7.vegas, TrusteeECF@ch7.vegas;ecf.alert+atkinson@titlexi.com

   CLARISSE L. CRISOSTOMO on behalf of Trustee ROBERT E. ATKINSON
   clarisse@nv-lawfirm.com, bknotices@nv-lawfirm.com

   BRADFORD IRELAN on behalf of Creditor HEALTHPLUS IMAGING OF TEXAS, LLC
   birelan@imtexaslaw.com,
   jstephens@imtexaslaw.com;dhall@imtexaslaw.com;ynguyen@imtexaslaw.com

   DAVID MINCIN on behalf of Creditor HEALTHPLUS IMAGING OF TEXAS, LLC
   dmincin@mincinlaw.com, cburke@mincinlaw.com

   MICHAEL D. NAPOLI on behalf of Creditor TECUMSEH - INFINITY MEDICAL RECEIVABLES FUND, LP
   michael.napoli@akerman.com,
   cindy.ferguson@akerman.com;catherine.kretzschmar@akerman.com;masterdocketlit@akerman.com

   TRENT L. RICHARDS on behalf of Creditor THE INJURY SPECIALISTS
   trichards@sagebrushlawyers.com

   ARIEL E. STERN on behalf of Creditor TECUMSEH - INFINITY MEDICAL RECEIVABLES FUND, LP
   ariel.stern@akerman.com, akermanlas@akerman.com

   U.S. TRUSTEE - LV - 7
   USTPRegion17.LV.ECF@usdoj.gov

   MATTHEW C. ZIRZOW on behalf of Debtor INFINITY CAPITAL MANAGEMENT, INC.
   mzirzow@lzlawnv.com,
   carey@lzlawnv.com;trish@lzlawnv.com;jennifer@lzlawnv.com;zirzow.matthewc.r99681@notify.bestcase.com

   ☐ b. United States mail, postage fully prepaid:

   ☐ c. Personal Service:

   I personally delivered the document(s) to the persons at these addresses:

   ☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place

1  in the office.

2  ☐  For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐  d.  By direct email (as opposed to through the ECF System): Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐  e.  By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐  f.  By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 19, 2021.

By: /s/ *Bart K. Larsen, Esq,*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432