CLARISSE L. CRISOSTOMO, ESQ., Bar No. 15526
Email: clarisse@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E Warm Springs Rd, Suite 130
Las Vegas, NV 89119
Telephone: (702) 614-0600
*Attorney for Robert E. Atkinson, Trustee*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC. *dba* INFINITY HEALTH CONNECTIONS,<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7<br><br>**MOTION TO APPROVE SETTLEMENT** |

Chapter 7 trustee ROBERT E. ATKINSON ("***Trustee***"), by and through counsel, hereby moves this Court for an order approving a settlement agreement, pursuant to Fed. R. Bankr. P. 9019, by and between: the Trustee and above-captioned bankruptcy estate, on the one hand, and individuals OLIVER HEMMERS ("***Oliver***") and ANNE PANTELAS ("***Anne***"), on the other hand, resolving the two vehicles identified in the Debtor's schedules.

This motion is based on: the Memorandum of Points and Authorities contained herein; the pleadings and papers on file in this case; the attached exhibit; the supporting Declaration of Robert E. Atkinson ("***Trustee's Decl.***") filed contemporaneously herewith; and any oral arguments made at the time of hearing on this matter.

DATED: November 18, 2021            **ATKINSON LAW ASSOCIATES LTD.**

                                                 By:    /s/ Clarisse Crisostomo
                                                     CLARISSE L. CRISOSTOMO, ESQ.
                                                       Nevada Bar No. 15526
                                                       *Attorney for Robert E. Atkinson, Trustee*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND FACTS

1. On September 14, 2021 ("***Petition Date***"), Debtor filed a voluntary chapter 7 bankruptcy petition, initiating bankruptcy case no. 21-14486-abl (the "***Bankruptcy Case***") and creating the above-captioned bankruptcy estate (the "***Bankruptcy Estate***").  [DE #1.]

2. Debtor's schedules identify a 50% ownership interest in a 2016 Honda Odyssey (the "***Odyssey***"), and a 50% ownership interest in a 2011 Honda Pilot (the "***Pilot***") (collectively as the "***Vehicles***"), neither of which have a loan on them. [DE #1 at Schedule A/B.]

3. The Debtor provided to the Trustee copies of titles to the Vehicles, which show that title to the Vehicles are "Or"-type titles, i.e., the Odyssey is held in the name of INFINITY CAPITAL MANAGEMENT OR OLIVER HEMMERS, and title to the Pilot is held in the name of INFINITY CAPITAL MANAGEMENT OR ANNE PANTELAS. [Trustee's Decl. at ¶ 3.]

4. At the Section 341 meeting held in this case, Oliver and Anne acknowledge that the Debtor paid for Odyssey and the Pilot, but that these vehicle payments were part of fringe benefits to them paid for by the company and that the cars are in fact their personal cars. [Id. at ¶ 4.]

5. Oliver and Anne represent that the Pilot is not in good shape and is worth only approximately $1,000, but that the Odyssey is worth the Kelley Blue Book value ($19,570). [Id. at ¶ 5.]

6. After a review of their respective claims and defenses, the parties have agreed to resolve this matter in accordance with the terms of the settlement agreement described below.

### II.    TERMS OF THE SETTLEMENT

7. The parties have agreed to resolve their disputes.  The terms of that settlement are memorialized in a written settlement agreement (the "***Agreement***"), which is attached hereto as **EXHIBIT 1**.

8. A summary of the material terms of the Agreement agreed to by the parties thereto is:

    (a) **_Payment; Payment Terms_**. Oliver shall pay the Bankruptcy Estate $9,785.00 for the Odyssey and Anne shall pay $500.00 for the Pilot, totaling $10,285.00 (the "**_Settlement Funds_**").

    (b) **_Vesting of Title to Vehicles_**. Title to the Vehicles shall vest solely in the names of the individuals (i.e., Oliver for the Odyssey, and Anne for the Pilot).

9. The foregoing is merely a summary of certain of the material terms of the settlement and is qualified in its entirety by the Agreement itself, which contains many provisions, terms, and conditions.

### III.   LEGAL AUTHORITIES & ARGUMENT

10. Pursuant to Bankruptcy Rule 9019, the Court may approve a proposed compromise of a claim, after notice and a hearing. *See* Fed. R. Bankr. P. 9019(a).

11. The Bankruptcy Court is afforded great latitude in approving compromise agreements. However, the Court's discretion is not unlimited; compromises must also be fair and equitable. Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*,* 839 F.2d 610, 620 (9th Cir. 1988). Such agreements must also be reasonable under the particular circumstances of the case, and in the estate's best interests. In re Mickey Thompson Entertainment Group, Inc., 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003).

12. In reviewing proposed compromises, "courts need not rule upon disputed facts and questions of law, but rather only canvass the issues. A mini trial on the merits is not required." Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (9th Cir. B.A.P. 1997); *see also* In re Hyloft Inc., 451 B.R. 104, 109 (Bankr.Nev., 2011).

13. In deciding whether to approve a proposed settlement, the bankruptcy court must make an informed decision; the court must independently make a finding that the compromise is reasonable, fair and equitable. Hyloft, 451 B.R. at 109.

14. In determining the whether a proposed compromise is fair and reasonable, the Court should consider the following four factors (each, an "**_A&C Factor_**"):

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Martin v. Kane (In re A & C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986); *see also* Woodson, 839 F.2d at 620; Mickey Thompson, 292 B.R. 415 at 420.

15. Overall, the A&C Factors favor approval of the proposed compromise. Each are analyzed below.

### A. Probability of Success in the Litigation

16. As discussed above, the "Or" nature of the title creates a significant complexity, namely, that the legal title to the Vehicles could be deemed to be either Debtor, or the individual. A half-half interpretation is also possible.

17. The equity in the Vehicles was paid for by Debtor, however, Oliver or Anne argue that those payments were a fringe benefit for their full enjoyment. If this matter were litigated, the Trustee would struggle to prove otherwise, because Oliver and Anne are essentially the only fact witnesses and so the Trustee would have to depend more on circumstantial evidence.

18. The Trustee believes that the settlement is an excellent tradeoff that benefits the estate without having to expose the estate to the vagaries of litigation on low-value assets, and also the money paid is within the range of reasonable outcomes if this matter were litigated.

19. Therefore, the first A&C Factor favors approval of the settlement.

### B. Difficulties in Collection

20. Because the Agreement relates to two vehicles, collection is not an issue except for turnover issues: the Court would have to decide whether Oliver and Anne could keep driving the Vehicles while this matter were litigated. Accordingly, the second A&C Factor is either slightly in favor of the settlement, or not relevant for this particular settlement.

**C. Complexity, Expense, Delay, and Inconvenience of the Litigation**

21.   Pursuing and litigating the title dispute would be time-consuming and costly to all sides, relative to the value of the Vehicles. Adjudication of this issue would require an adversary proceeding against Oliver and Anne.  In contrast, approval of this motion would mean that the Trustee can quickly and efficiently liquidate the Bankruptcy Estate's interest in the Property for the benefit of the estate and creditors with significantly lower costs. Accordingly, the third A&C Factor considerably favors approval of the settlement.

**D. Interests of the Creditors**

22.   The proposed settlement is in the best interests of the creditors because it maximizes the return to creditors.  As noted above, if active litigation occurs, then the costs of litigating may quickly escalate, and in such instance the ***net*** recovery to unsecured creditors will be much smaller than they will receive if the settlement is approved; indeed, if the Trustee were to litigate and win, the net recovery might be less than zero, after factoring in litigation costs, storage costs, insurance, auction fees, etc.

23.   The Trustee thus believes settlement results in a quick, fair, and reasonable recovery for the general unsecured creditors of the estate, factoring in the overall recovery, the expectations for collection, and, most importantly, the significant relative cost associated with trying to litigate the issues raised regarding the Vehicles outside of this settlement. [Trustee's Decl. at ¶ 6.]

24.   Accordingly, the proposed compromise is in the best interest of the creditors of the Bankruptcy Estate, and that the fourth A&C Factor favors settlement.

**E. Conclusion**

25.   For the reasons stated above, the Trustee, in his business judgment: (i) asserts that he has made an informed decision in entering into the Agreement; (ii) believes that the settlement between the parties (as evidenced by the Agreement) is fair, equitable, and reasonable; and (iii) believes that approval of the Agreement is in the best interests of the Bankruptcy Estate and its creditors.  [Id. at ¶ 7.]

## IV. RELIEF REQUESTED

26. The Trustee respectfully requests that the Court approve the Agreement, pursuant to Bankruptcy Rule 9019, the A&C Factors, and other applicable law as discussed above.

# # # # #

DATED: November 18, 2021              **ATKINSON LAW ASSOCIATES LTD.**

By: _____/s/ Clarisse Crisostomo_____
CLARISSE L. CRISOSTOMO, ESQ.
Nevada Bar No. 15526
*Attorney for Robert E. Atkinson, Trustee*

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("***Agreement***") is entered into by and between THE BANKRUPTCY ESTATE OF INFINITY CAPITAL MANAGEMENT, INC., Nevada chapter 7 bankruptcy case 21-14486-abl ("***Bankruptcy Estate***"), on the one hand, and individuals OLIVER HEMMERS ("***Oliver***") and ANNE PANTELAS ("***Anne***"); on the other hand. Each party may hereinafter be referred to as a "***Party***," or collectively as the "***Parties***."

## RECITALS

WHEREAS, on September 14, 2021 ("***Petition Date***"), INFINITY CAPITAL MANAGEMENT, INC. ("***Debtor***") filed a voluntary chapter 7 bankruptcy petition in the District of Nevada, initiating bankruptcy case 21-14486-abl (the "***Bankruptcy Case***") and thereby creating the Bankruptcy Estate; and

WHEREAS, Robert E. Atkinson ("***Trustee***") is the appointed chapter 7 trustee for the Bankruptcy Estate; and

WHEREAS, the Debtor's schedules identify a 50% ownership interest in a 2016 Honda Odyssey (the "***Odyssey***"), and a 50% ownership interest in a 2011 Honda Pilot (the "***Pilot***") (collectively as the "***Vehicles***"), neither of which have a loan on them; and

WHEREAS, the Debtor provided to the Trustee copies of titles to the Vehicles, which show that title to eth Vehicles are "Or"-type titles, i.e., the Odyssey is held in the name of INFINITY CAPITAL MANAGEMENT OR OLIVER HEMMERS, and title to the Pilot is held in the name of INFINITY CAPITAL MANAGEMENT OR ANNE PANTELAS; and

WHEREAS, at the Section 341 meeting held in this case, Oliver and Anne acknowledge that the Debtor paid for Odyssey and the Pilot, but that these vehicle payments were part of fringe benefits to them paid for by the company and that the cars really are their personal cars; and

WHEREAS, Oliver and Anne represent that the Pilot is not in good shape and is worth only approximately $1,000, but that the Odyssey is worth the Kelley Blue Book value ($19,570); and

WHEREAS, the Parties hereto have reviewed their respective claims and defenses, and have arrived at a settlement between them, and agree to be bound by the terms and obligations of this Agreement, and do so freely and voluntarily, after having had the opportunity to seek the advice of counsel;

NOW, THEREFORE, in consideration of the promises, covenants, warranties, and representations set forth herein, the Parties agree as follows:

## TERMS OF THE AGREEMENT

1. **Contingent on Bankruptcy Court Approval**.  The Parties acknowledge that this Agreement, and all obligations contained herein, are contingent upon Bankruptcy Court

approval. The Trustee shall prepare and file a motion to obtain such approval (the "***Motion to Approve***"). Debtor agrees not to directly or indirectly oppose the Motion to Approve, or appeal or seek to stay any order substantially approving this Agreement. If the Bankruptcy Court does not substantially approve this Agreement, then this Agreement, and all of the obligations contained herein, shall be null and void.

2. **Effective Date**. The effective date of this Agreement (the "***Effective Date***") shall be the date when the Bankruptcy Court enters a final order which has not been appealed or stayed approving this Agreement. All obligations contained herein shall become effective only on the Effective Date. All Parties hereto agree not to appeal, or file a motion to stay, any order substantially approving this Agreement.

3. **Consideration**. The Parties agree as follows:

(a) ***Payment; Payment Terms***. Oliver shall pay the Bankruptcy Estate $9,785.00 for the Odyssey and Anne shall pay $500.00 for the Pilot, totaling to $10,285.00 (the "***Settlement Funds***"). These funds shall be paid to the Trustee at the time Oliver and Anne execute this Agreement. Payment shall be by check, made payable to "Robert E. Atkinson, Trustee" and delivered to his office at 376 E Warm Springs Rd Suite 130, Las Vegas, Nevada 89119. The Trustee shall hold the Settlement Funds in trust pending the hearing on the Motion to Approve, and the Effective Date.

(b) ***Vesting of Title to Vehicles***. On the Effective Date, title to the Vehicles shall vest solely in the names of the individuals (i.e., Oliver for the Odyssey, and Anne for the Pilot). At any point in the future when the Vehicles are sold or transferred, Oliver and Anne shall have the authority to sign the Debtor's name on the title as Seller in order to effectuate that transaction.

4. **Attorneys' Fees**. With respect to all matters in the Bankruptcy Case, each Party shall bear its own attorneys' fees and costs.

5. **Governing Law; Jurisdiction**. This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada. The U.S. Bankruptcy Court, District of Nevada shall retain jurisdiction over performance of, enforcement of, or any disputes arising from or related to, this Agreement.

6. **Authority**. Each Party represents, warrants and covenants that the undersigned signatories for such Party have the full legal right, power and authority to bind that Party to this Agreement. Each of the Parties represent that they have received independent legal advice, or have had the opportunity to receive independent legal advice, with respect to the terms of and advisability of executing this Agreement.

7. **Severability**. This Agreement shall be enforced to the maximum extent permitted by law. In the event that any one or more of the phrases, sentences, sections, or paragraphs contained in this Agreement shall be declared invalid or unenforceable by order, decree or judgment of any court having competent jurisdiction, or shall be or become invalid or

unenforceable by virtue of any applicable law, the remainder of this Agreement shall be construed as if such phrases, sentences, sections, paragraphs or sections had not been inserted except when such construction shall constitute a substantial deviation from the general intent and purposes of the Parties as reflected in this Agreement.

8. **Entire Agreement**. This Agreement embodies the entire agreement and understanding by and between the Bankruptcy Estate, on the one hand, and Debtor, Frank, and Andrea, on the other hand. This Agreement supersedes any and all prior or concurrent agreements, negotiations, understandings, statements, assurances, assumptions, premises, promises, agreements, discussions or representations, oral or written, relating to the foregoing matters, including oral agreements or representations, if any. This Agreement is a fully-integrated document, and no Party has made any representations upon which the other Party has relied that are not contained in this Agreement relating to the foregoing matters. No Party is relying on an unstated assumption, premise or condition not contained in this Agreement relating to the foregoing matters.

9. **No Modification, Waiver, or Amendment**. No modification, waiver, or amendment of any of the terms of this Agreement shall be valid unless in writing and executed by all Parties and approved by the Bankruptcy Court. No waiver of any breach hereof or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar or dissimilar nature. No course of dealing or course of conduct shall be effective to amend, modify or change any provision of this Agreement.

10. **Counterparts**. The Parties agree that this Agreement may be executed in counterparts, and may furthermore be executed by a Party on a scan of a counterpart executed by another Party. The Parties agree to cause their counsel to retain the originals of signed counterparts until 15 days after the Effective Date, after which they may be disposed of without notice.

11. **No Assignment.** No Party may transfer or assign any of their rights, remedies or obligations under this Agreement.

12. **Successors**. This Agreement shall be binding upon and inure to the benefit of the Parties and to their successors-in-interest.

13. **Further Assurances**. The Parties shall take, or cause to be taken, all actions and shall do, or cause to be done, all things necessary, proper or advisable to consummate each of the agreements, promises, covenants, and obligations of such Party under this Agreement.

[*Continued on Next Page*]

14. **No Third Party Beneficiaries**. Except as expressly stated in this Agreement, this Agreement shall not confer any rights or remedies on any person or entity other than the Parties and their respective successors and assigns.

# # # # #

**AGREED:**

**THE BANKRUPTCY ESTATE OF INFINITY CAPITAL MANAGEMENT, INC. dba INFINITY HEALTH CONNECTIONS, Nevada bankruptcy case no. 21-14486-abl:**

_____

Robert E. Atkinson, *in his capacity as chapter 7 trustee*

**OLIVER HEMMERS:**

By: _____
Oliver Hemmers

**ANNE PANTELAS:**

By: _____
Anne Pantelas