CLARISSE L. CRISOSTOMO, ESQ., Bar No. 15526
Email: clarisse@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E Warm Springs Rd, Suite 130
Las Vegas, NV 89119
Telephone:  (702) 614-0600
*Attorney for Robert E. Atkinson, Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.<br>*dba* INFINITY HEALTH CONNECTIONS,<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7<br><br>**MOTION TO: (I) APPROVE SALE OF CERTAIN ASSETS; (II) SET SALE/AUCTION PROCEDURES; AND (III) SET AUCTION HEARING DATE** |

ROBERT E. ATKINSON, the chapter 7 trustee of the above-captioned bankruptcy estate ("***Trustee***") hereby moves the Court for entry of an order (i) approving the sale of non-abandoned account receivables and related causes of action owned by the Bankruptcy Estate to creditor HASelect-Medical Receivables Litigation Finance Fund International SP ("***HASelect***"), subject to overbid at auction, (ii) setting the auction time of the sale, and (iii) establishing the procedures for such auction.

This Motion is based on: the Memorandum of Points and Authorities contained herein; the pleadings and papers on file in this case; the attached exhibits; the Declaration of Robert E. Atkinson ("***Trustee's Decl.***") filed contemporaneously herewith; and any oral arguments made of the time of hearing on this matter.

DATED:  December 3, 2021         **ATKINSON LAW ASSOCIATES LTD.**

                       By:      /s/ Clarisse Crisostomo
                       CLARISSE L. CRISOSTOMO, ESQ.
                       Nevada Bar No. 15526
                       *Attorney for Robert E. Atkinson, Trustee*

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    BACKGROUND

1.      On September 14, 2021 ("***Petition Date***"), Debtor filed a voluntary petition for chapter 7 bankruptcy relief in this district [DE #1], commencing this bankruptcy case ("***Bankruptcy Case***") and creating the associated bankruptcy estate ("***Bankruptcy Estate***").

2.      Pre-petition, debtor Infinity Capital Management Inc. ("***Debtor***") was engaged in the business of purchasing receivables from medical providers. [Trustee's Decl. at ¶ 4.]

3.      Creditor HASelect is a secured creditor of the Debtor.  Their pre-petition perfected security interest covers all assets of the Debtor. [Id. at ¶ 5.]

4.      On October 15, 2021, an order was entered in the Bankruptcy Case abandoning the Debtor's interest in certain of Debtor's collateral, which excluded the following portfolio:

- The Tecumseh Receivables as defined in Tecumseh – Infinity Medical Receivable Fund, LP's Objection to Joint Motion to Approve Abandonment of Collateral [ECF No. 82] and as identified in Exhibit A and, to the extent marked as assigned to Tecumseh, Exhibit B to the Meyer Declaration [ECF No. 59], as well as any records relating exclusively thereto or any proceeds thereof

 (hereinafter, the "***Tecumseh Receivables***"). [*See* DE #97.]

5.      Tecumseh – Infinity Medical Receivable Fund, LP ("***Tecumseh***") has asserted in this bankruptcy case that the Tecumseh Receivables are its property, not property of the Bankruptcy Estate. [Trustee's Decl. at ¶ 6.]

6.      On October 19, 2021, HASelect commenced an adversary proceeding against Tecumseh in the District of Nevada (adversary case no. 21-01167) (the "***AP Case***") seeking declaratory and injunctive relief regarding the Tecumseh Receivables.  On November 19, 2021, Tecumseh filed various counterclaims against HASelect and the Trustee in the AP Case seeking declaratory relief concerning ownership of the Tecumseh Receivables.

7.      The Tecumseh Receivables have been generating money.  The Trustee received the following funds from the Debtor's principal, which have been deposited into segregated estate bank accounts:

- A total of $75,402.85 in checks from certain of the Tecumseh Receivables (colloquially known as the "***TIF Checks***")

- A total of $13,400.00 in checks from certain other receivables that include Tecumseh Receivables (colloquially known as the "***TIF+HAS Checks***").

[Trustee's Decl. at ¶ 7.]

8.      The Trustee has agreed to sell the following assets (collectively, the "***Assets***") to HASelect, on the terms and conditions contained in the Asset Purchase Agreement attached hereto as **EXHIBIT 1** (the "***APA***"):

- Whatever interest the Bankruptcy Estate has (if any) in the Tecumseh Receivables (inclusive of the $75,402.85 in monies from the TIF Checks, and the $13,400.00 in monies from the TIF+HAS Checks), subject to the rights, title, and interests that Tecumseh may have in this property, if any.

- All claims and causes of action that could be brought by the Trustee or the Bankruptcy Estate against any third party relating in any way to the Tecumseh Receivables, pursuant to (i) chapter five of title 11 of the United States Code, or (ii) all applicable or relevant state or federal laws (collectively, the "Claims").  For avoidance of doubt, the Claims include, but are not limited to, all causes of action that could be brought by the Trustee pursuant to Sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the United States Bankruptcy Code for any matter relating in any way to the Tecumseh Receivables.

- All books and records related to the foregoing that the Bankruptcy Estate currently has in its possession.

[Trustee's Decl. at ¶ 8.]

9.      The APA is contingent upon Bankruptcy Court approval.  [Id. at ¶ 9.]

10.      The purchase price for the Assets is $100,000.00 ("***Initial Purchase Price***"). That amount is subject to overbid at auction, to be held by the Bankruptcy Court.  HASelect is aware that an auction will be held to identify any possible overbids.  [Id. at ¶ 10.]

11.      The sale is subject to an auction to be held by the Bankruptcy Court.  HASelect is aware that an auction will be held to identify any possible overbids.  [Id. at ¶ 11.]

## II.    ASSETS TO BE SOLD

12.    The bankruptcy estate will sell the Assets at auction, on the terms and conditions stated above, and in accordance with the auction procedures to be set by the court.

13.    **<u>As-Is Condition; No Warranties</u>**.  The Assets shall be sold in an "as-is" condition, pursuant to the following terms and conditions. All bidders and the winning buyer are hereby notified of the following:

- The Assets will be sold subject to HASelect's lien, and also whatever rights, title, and interests that Tecumseh may have in the Tecumseh Receivables, if any.  Both HASelect's and Tecumseh's interests in the Assets that existed as of the Petition Date shall remain unaffected by the Sale.

- Other than HASelect and Tecumseh, the Trustee is unaware of any interest of any other third party in the Assets.  As such, the Trustee agrees to sell the Assets pursuant to Section 363(f) of the Bankruptcy Code excluding these two parties, i.e., the Sale of the Assets shall be made free and clear of the liens, claims, and encumbrances of any third party other than HASelect and Tecumseh.

- HASelect waives all further due diligence in the Assets.

- HASelect is in possession of certain books and records of the Debtor relating to the Tecumseh Receivables, including computer records and paper records.  The Trustee only has a list of the Tecumseh Receivables, as found in Court records.  Upon Court approval of the Sale, all books and records of the Debtor pertaining to the Tecumseh Receivables, wherever located and in any form, shall be turned over to HASelect, and HASelect shall be empowered to enforce said turnover against any party.

- The Trustee makes no representations or warranties to HASelect whatsoever, express or implied, regarding the Assets, including but not limited to the condition, value, title, or collectability of the Tecumseh Receivables or the Claims.

- HASelect expressly understands and agrees that:

  o   The Assets being sold include whatever interest the Bankruptcy Estate has in the Tecumseh Receivables (inclusive of the funds from the TIF Checks and TIF+HAS Checks), if any, and that litigation is required to determine what interest (if any) the Bankruptcy Estate had in such Assets as of the Petition Date; and

o The Bankruptcy Estate may not have any right, title, or interest in the Tecumseh Receivables.

- HASelect, not the Bankruptcy Estate or the Trustee, shall be responsible for and shall bear all fees, costs, and expenses to obtain clear title on the Assets, to service and monetize the Assets, and to prosecute the Claims purchased herein (which shall be prosecuted in HASelect's name, as successor-in-interest to the Claims).

- Upon Court approval of the Sale, the Assets shall no longer be property of the Bankruptcy Estate and neither the Trustee nor the Bankruptcy Estate shall have any obligation whatsoever regarding the Assets. **For avoidance of doubt, litigation of the dispute in the AP Case as to whether the Assets are property of the Bankruptcy Estate is <u>not</u> resolved by the Sale.** HASelect's claims and causes of action relating to the Tecumseh Receivables in the AP Case, along with any related counterclaims of Tecumseh regarding title to the Assets on the Petition Date, shall survive the Sale. After the Sale is consummated, neither the Trustee nor the Bankruptcy Estate shall have any obligation to prosecute or defend any dispute (in the AP Case or otherwise) regarding title to the Assets on the Petition Date.

- HASelect expressly understands and agrees that the Bankruptcy Case has not been designated an operating chapter 7 case, and that the Tecumseh Receivables have not been serviced by the Debtor or the Bankruptcy Estate since the Petition Date, and hereby waives any and all claims against the Estate and the Trustee relating to this non-servicing and any diminishment of the Assets that may have occurred prior to the Sale, if any.

### III.    PROPOSED AUCTION PROCEDURES

14.    To provide an adequate auction for the Tecumseh Receivables, the Trustee proposes the following procedures (the "***Procedures***") for determining the appropriate auction for the sale:

a.  <u>**Pre-Qualification of Bidders**</u>.

- HASelect is pre-qualified to bid at the Auction.

- All other prospective bidders must deliver a $100,000 earnest money deposit ("***EMD***") to the Trustee in good funds at least one business day prior to the Auction. These funds must be delivered either in a cashier's check made payable to "Robert E. Atkinson, Trustee" and delivered to his office, or wired to an estate bank account. The Trustee has the discretion to accept cash, personal checks or money orders.

- If a bidder is not the Winning Bidder (as defined below), then the Trustee shall return the EMD to that party within seven business days, and may do so without further court order required.

b. **Bidding.**

- Only qualified bidders shall be permitted to bid.

- The initial overbid shall be at least $110,000.  All subsequent overbids shall be at least $10,000 higher than the prior bid, as a minimum increment.

- HASelect shall be permitted to credit bid on the amounts of any of its bids in excess of the Initial Purchase Price, up to the total amount owed shown on a proof of claim filed by HASelect in the Bankruptcy Case.

c. **Determination of Winning Bidder.**

- If no bid is placed in excess of $100,000, then the buyer of the Assets shall be HASelect, and the APA shall be approved in all respects.

- If bids occur at the Auction, then the highest bidder shall be the winning bidder ("***Winning Bidder***").  The earnest money deposit held by the Trustee from that party shall be applied towards the winning purchase price.

  - If the highest bidder is HASelect, then HASelect shall promptly amend its proof of claim to reduce it by the amount of its credit bid.

  - If the highest bidder is not HASelect, then that entity shall have five (5) business days to transfer the remaining portion of the winning purchase price to the Trustee, in good funds in United States currency.

- If the highest bidder fails to timely transfer the remaining portion of the winning purchase price to the Trustee (unless that time period is extended by the Trustee, in his sole discretion), then in such instance: (i) the sale to that party shall be annulled, with no further obligation to the Trustee to consummate the sale to that non-timely-performing party; (ii) that party's EMD shall be non-refundable as liquidated damages; and (iii) the next-highest bidder shall be the Winning Bidder, and that party shall be subject to this subsection.

- If HASelect is not the winning bidder at the Sale, then the Trustee shall promptly remit the Initial Purchase Price back to HASelect.

### d. Disposition of the Funds from the TIF and TIF+HAS Check.

- Within fifteen (15) business days after Sale consummation, if not stayed, the Trustee shall remit the funds in his possession from the TIF Checks and TIF+HAS Checks to the Winning Bidder, without further court order required.

- Debtor (inclusive of Debtor's principals) shall have a continuing obligation to remit any funds that it may possess arising from the Tecumseh Receivables, or come into possession of at any time in the future, to the Winning Bidder.

## IV.    LEGAL AUTHORITIES & ARGUMENT

### A. Section 363(b) Sale in Sound Judgment and Good Faith

15.    Section 363 of the Bankruptcy Code provides that a Trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. §363(b).  A proposed sale may be approved by the Court if the sale is a sound exercise of the Trustee's business judgment and is proposed in good faith and for fair value.  In re Air Beds, Inc., 92 B.R. 419 (9th Cir. B.A.P. 1998).

16.    The general terms of the sale are as follows: the Trustee shall sell the Assets by auction to the highest bidder in a hearing set for one week after this motion's hearing. The sale is subject to Court approval.

17.    The Trustee, in his business judgment, believes (i) that the terms of the sale, as set forth in the APA and via the auction, constitute a fair and reasonable deal for the Bankruptcy Estate; and (ii) consummation of a sale of the purchased assets is in the best interest of the Bankruptcy Estate and its creditors. [Trustee's Decl. at ¶ 12.]

18.    For the reasons stated above, the proposed auction of the Assets should be approved as a sale being made in the Trustee's sound judgment and in good faith. Accordingly, the Trustee also requests that the Court deem the sale to be made in good faith, and that the buyer be afforded the protections found in 11 U.S.C. § 363(m).

**B. Free and Clear of All Liens, Claims, and Encumbrances Except for those of HASelect and Tecumseh**

19.     Section 363(f) of the Bankruptcy Code permits the sale of assets free and clear of all liens, claims, and encumbrances.

20.     Other than HASelect and Tecumseh, the Trustee is unaware of any interest of any other third party in the Assets. [Id. at ¶ 13.]

21.     The Trustee, therefore, seeks authority to sell the Assets pursuant to Section 363(f) of the Bankruptcy Code excluding these two parties, i.e., the Sale of the Assets shall be made free and clear of the liens, claims, and encumbrances of any third party other than HASelect and Tecumseh.

**C. Relief Under Bankruptcy Rule 6004(h) is Requested and Appropriate**

22.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

23.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Bankruptcy Rule 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should 'order otherwise' and eliminate or reduce the 14-day stay, Collier on Bankruptcy suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy, § 6004.10 (15th rev.).

### V.     RELIEF REQUESTED

24.     A proposed form of order is attached hereto as **EXHIBIT 2.** By this Motion, the Trustee seeks the entry of an order:

- Approving the sale of the Assets at auction, free and clear of all liens, claims, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code, except for those of HASelect and Tecumseh;

- Approving the Procedures for the Auction;

- Setting a date and time for the Auction;

- Allowing the winning bidder the protections found in 11 U.S.C. § 363(m);

- A waiver of the 14-day stay of Rule 6004(h); and

- All other relief sought in the proposed form of order.

# # # # #

DATED: December 3, 2021                    **ATKINSON LAW ASSOCIATES LTD.**

By: _____ /s/ Clarisse Crisostomo ___
CLARISSE L. CRISOSTOMO, ESQ.
Nevada Bar No. 15526
*Attorney for Robert E. Atkinson, Trustee*

# EXHIBIT 1

# ASSET PURCHASE AGREEMENT

This asset purchase agreement ("***Agreement***"), is made by and between seller THE BANKRUPTCY ESTATE OF INFINITY CAPITAL MANAGEMENT, INC. *dba* INFINITY HEALTH CONNECTIONS, by and through chapter 7 trustee Robert E. Atkinson ("***Bankruptcy Estate***" or "***Seller***") arising from Nevada chapter 7 bankruptcy case no. 21-14486-abl (the "***Bankruptcy Case***"), and buyer HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP, a segregated portfolio company of HedgeACT International SPC Ltd., a Cayman Islands corporation ("***HASelect***"). Together, HASelect and Seller may be referred to hereafter individually as a "***Party***" or collectively as the "***Parties***".

## RECITALS

WHEREAS, Seller is a bankruptcy estate formed by the filing of the Bankruptcy Case on September 14, 2021 ("***Petition Date***"); and

WHEREAS, Robert E. Atkinson ("***Trustee***") is the appointed chapter 7 trustee for the Bankruptcy Estate; and

WHEREAS, pre-petition, debtor Infinity Capital Management Inc. ("***Debtor***") was engaged in the business of purchasing receivables from medical providers; and

WHEREAS, HASelect is a secured creditor of the Debtor and holds a perfected security interest in substantially all personal property owned by the Debtor; and

WHEREAS, on October 15, 2021, an order was entered in the Bankruptcy Case [ECF No. 97] abandoning the Debtor's interest in certain of Debtor's collateral, which excluded the following portfolio:

- The Tecumseh Receivables as defined in Tecumseh – Infinity Medical Receivable Fund, LP's Objection to Joint Motion to Approve Abandonment of Collateral [ECF No. 82] and as identified in Exhibit A and, to the extent marked as assigned to Tecumseh, Exhibit B to the Meyer Declaration [ECF No. 59], as well as any records relating exclusively thereto or any proceeds thereof

(hereinafter, the "***Tecumseh Receivables***"); and

WHEREAS, on October 19, 2021, HASelect commenced an adversary proceeding against Tecumseh in the District of Nevada (adversary case no. 21-01167) (the "***AP Case***") seeking declaratory and injunctive relief regarding the Tecumseh Receivables; and

WHEREAS, the Trustee received from the Debtor's principal, and on October 26, 2021 were deposited into segregated estate bank accounts:

- A total of $75,402.85 in checks from certain of the Tecumseh Receivables (the "***TIF Checks***")
- A total of $13,400.00 in checks from certain other receivables that include Tecumseh Receivables (the "***TIF+HAS Checks***");

and

Doc ID: 4c38b2ce62a53868d9b4859730e6170ce02193fb

WHEREAS, Seller has agreed to sell the following assets to HASelect (collectively, the "***Assets***"), on the terms and conditions herein:

1) Whatever interest the Bankruptcy Estate has in the Tecumseh Receivables (inclusive of the $75,402.85 in monies from the TIF Checks, and the $13,400.00 in monies from the TIF+HAS Checks), if any, and subject to the rights, title, and interests that Tecumseh-Infinity Medical Receivables Fund, LP ("***Tecumseh***") may have in this property, if any.

2) All claims and causes of action that could be brought by the Trustee or the Bankruptcy Estate against any third party relating in any way to the Tecumseh Receivables, pursuant to (i) chapter five of title 11 of the United States Code, or (ii) all applicable or relevant state or federal laws (collectively, the "***Claims***"). For avoidance of doubt, the Claims include, but are not limited to, all causes of action that could be brought by the Trustee pursuant to Sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the United States Bankruptcy Code for any matter relating in any way to the Tecumseh Receivables.

3) All books and records related to the foregoing that the Bankruptcy Estate currently has in its possession, in whatever form and wherever located.

NOW, THEREFORE, the Parties, intending to be legally bound, do hereby agree as follows:

## ARTICLE I. SALE AND PURCHASE

Section 1.01 **Bankruptcy Court Approval Required**. The Parties acknowledge and agree that this Agreement, inclusive of the sale contemplated herein, is contingent upon Bankruptcy Court approval and may be terminated without cause by any Party at any time prior to the hearing on the Sale Motion. The Trustee shall prepare and file a motion to obtain approval of this sale, inclusive of auction procedures (the "***Sale Motion***"), and shall seek to have the Sale Motion heard on shortened time.

Section 1.02 **Purchase and Sale**. Subject to overbid at auction and all other terms and conditions of this Agreement, Seller hereby sells, assigns, and transfers the Assets to HASelect, as follows:

    a. **Purchase Price**. The purchase price for the Assets ("***Purchase Price***") is $100,000.00.

- The Purchase Price shall be new money to the estate, unsecured, and shall be available for the Trustee to use for payment of allowed administrative expenses and general unsecured claims in the Bankruptcy Case.

- The Purchase Price shall be subject to overbid, in accordance with the terms of this Agreement and any procedures that may be established by the Court.

- The Purchase Price shall be remitted to the Trustee in good funds prior to the hearing on the Motion to Sell or at such other time as the Trustee and HASelect may agree. The Trustee shall hold the funds in trust in a segregated estate account, pending final approval of the Sale.

- If HASelect is not the winning bidder at the Sale, then the Trustee shall promptly remit the Purchase Price back to HASelect.

Doc ID: 4c38b2ce62a53868d9b4859730e6170ce02193fb

b. **Auction**.   The sale contemplated herein (the "**_Sale_**") shall be confirmed by the Bankruptcy Court via an auction, to be held at a date and time set by the Bankruptcy Court (the "**_Auction_**").  At the Auction, the Bankruptcy Court will call for overbids, in an auction format, pursuant to any procedures that may be set by the Court. An authorized representative of HASelect should attend the Auction and be prepared to overbid.

c. **Credit Bid**.  Contingent upon any auction procedures that may be entered by the Court, HASelect shall be permitted to credit bid on the amounts of any of its bids in excess of the Purchase Price, up to the total amount owed shown on a proof of claim filed by HASelect in the Bankruptcy Case.

- For avoidance of doubt, if HASelect enters a bid of $150,000 and that is the winning bid, then that amount shall consist of the $100,000 Purchase Price previously remitted to the Trustee, plus a $50,000 credit bid.

- If HASelect is the winning bidder at the Auction, HASelect shall amend its proof of claim to adjust it for any portion of the winning bid that is a credit bid.

- If, at the Auction, HASelect bids more than its available credit bid, then any portion of its winning bid in excess of its available credit bid shall require the payment of new funds to the Bankruptcy Estate.

Section 1.03   **Transfer of Ownership Only Upon Court Approval of Sale**.  The Sale contemplated herein shall consummate only after the Auction is held, and a court order approving the Sale to HASelect is entered on the docket of the Bankruptcy Case.

Section 1.04   **Modified Section 363(f) Sale; No Warranties**.  HASelect has had an opportunity to investigate the Tecumseh Receivables and the other Assets, and agrees to purchase the Assets subject to the conditions below.

- The Assets will be sold subject to HASelect's lien, **and also** whatever rights, title, and interests that Tecumseh has in the Tecumseh Receivables, if any.  Both HASelect's and Tecumseh's interests in the Assets that existed as of the Petition Date shall remain unaffected by the Sale.

- Other than HASelect and Tecumseh, the Trustee is unaware of any interest of any other third party in the Assets.  As such, the Trustee agrees to sell the Assets pursuant to Section 363(f) of the Bankruptcy Code excluding these two parties, i.e., the Sale of the Assets shall be made free and clear of the liens, claims, and encumbrances of any third party other than HASelect and Tecumseh.

- HASelect waives all further due diligence in the Assets.

- HASelect is in possession of certain books and records of the Debtor relating to the Tecumseh Receivables, including computer records and paper records.  The Trustee only has a list of the Tecumseh Receivables, as found in Court records. Upon Court approval of the Sale, all books and records of the Debtor pertaining to the Tecumseh Receivables, wherever located and in any form, shall be turned over to HASelect, and HASelect shall be empowered to enforce said turnover against any party.

- Seller makes no representations or warranties to HASelect whatsoever, express or

Doc ID: 4c38b2ce62a53868d9b4859730e6170ce02193fb

implied, regarding the Assets, including but not limited to the condition, value, title, or collectability of the Tecumseh Receivables.

- HASelect expressly understands and agrees that:

  (i) the Assets being sold include whatever interest the Bankruptcy Estate has in the Tecumseh Receivables (inclusive of the funds from the TIF Checks and TIF+HAS Checks), if any, and that litigation is required to determine what interest the Bankruptcy Estate had in such Assets as of the Petition Date; and

  (ii) the Bankruptcy Estate may not have any right, title, or interest in the Tecumseh Receivables.

- HASelect, not the Bankruptcy Estate or the Trustee, shall be responsible for and shall bear all fees, costs, and expenses to obtain clear title on the Assets, to service and monetize the Assets, and to prosecute the Claims purchased herein (which shall be prosecuted in HASelect's name, as successor-in-interest to the Claims).

- Upon Court approval of the Sale, the Assets shall no longer be property of the Bankruptcy Estate and neither the Trustee nor the Bankruptcy Estate shall have any obligation whatsoever regarding the Assets. **For avoidance of doubt, litigation of the dispute in the AP Case as to whether the Assets are property of the Bankruptcy Estate is <u>not</u> resolved by the Sale.** HASelect's claims and causes of action relating to the Tecumseh Receivables in the AP Case, along with any related counterclaims of Tecumseh regarding title to the Assets on the Petition Date, shall survive the Sale. After the Sale is consummated, neither the Trustee nor the Bankruptcy Estate shall have any obligation to prosecute or defend any dispute (in the AP Case or otherwise) regarding title to the Assets on the Petition Date.

- HASelect expressly understands and agrees that the Bankruptcy Case has not been designated an operating chapter 7 case, and that the Tecumseh Receivables have not been serviced by the Debtor or the Bankruptcy Estate since the Petition Date, and hereby waives any and all claims against the Estate and the Trustee relating to this non-servicing and any diminishment of the Assets that may have occurred prior to the Sale, if any.

## ARTICLE II. <u>GENERAL PROVISIONS</u>

Section 2.01    <u>**Limitation of Liability**</u>.  Neither Party will be liable to the other for losses or damages (including special or consequential damages such as lost profits or loss of use) arising from any cause of action related to this Agreement, whether in contract, tort, or otherwise.

Section 2.02    <u>**Assignment and Succession**</u>.  This Agreement is binding on and enforceable by each Party's successors and assignees.  If HASelect is the winning bidder at the Auction, then after the Sale is consummated it may freely assign its rights and interests in and to the Assets to a third party, without further court order required.

Section 2.03    <u>**Governing Law**</u>.  Any disputes between the Parties relating to or arising from this Agreement, of any kind or nature, shall be determined in the Bankruptcy Court, District of

Doc ID: 4c38b2ce62a53868d9b4859730e6170ce02193fb

Nevada, and the parties do consent to personal jurisdiction of such court.

Section 2.04    **Severability**.  If any court determines that any provision of this agreement is invalid or unenforceable, any invalidity or unenforceability will affect only that provision and will not make any other provision of this agreement invalid or unenforceable.

Section 2.05    **Full Integration**.  The Parties actively negotiated the terms of this Agreement.  This Agreement sets forth the entire agreement of the Parties as to the Receivables and the Sale. It replaces and supersedes any and all oral agreements or statements made between the Parties relating to the Assets and the Sale, as well as any prior writings.  There are no side agreements or other agreements or contracts, oral or otherwise, between the Parties relating to the subject matter of this Agreement.  HASelect has relied solely on its own investigation and not on any oral or written information provided by Seller or its attorneys.  Neither Party have relied upon any statements other than those specifically contained in this Agreement.

Section 2.06    **Authority**.  The signatory below for each Party has the authority to bind that Party.  Both Parties have had the full opportunity to have their own legal counsel review the terms and conditions of this Agreement.

Section 2.07    **Modification**.  This Agreement may be modified only by a writing signed by all Parties. After Bankruptcy Court approval of this Agreement, if cannot be modified without Bankruptcy Court approval of such modification.

Section 2.08    **Counterparts**.  This Agreement may be executed in a number of counterparts, each of which shall be deemed an original and all of which together shall constitute the same document.  Delivery by facsimile or email of an executed counterpart shall have the same force and effect as a delivery in person of that document.

Section 2.09    **Further Assurances**.  Each Party shall use all reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Parties in doing, all things necessary, proper or advisable to carry out the intent and purposes of this Agreement.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**THE BANKRUPTCY ESTATE OF INFINITY CAPITAL MANAGEMENT, INC. dba INFINITY HEALTH CONNECTIONS**

Robert E. Atkinson, *in his capacity as chapter 7 Trustee of the Bankruptcy Estate of INFINITY CAPITAL MANAGEMENT, INC. dba INFINITY HEALTH CONNECTIONS, a Nevada corporation, Nevada Bankruptcy Case No. 21-14486-abl*

Page 5 of 6

**HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE
FUND INTERNATIONAL SP**

By: _____

Printed Name: Michael E Griffin
_____

Its: Director
_____

# EXHIBIT 2

CLARISSE L. CRISOSTOMO, ESQ., Bar No. 15526
Email: clarisse@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E Warm Springs Rd, Suite 130
Las Vegas, NV 89119
Telephone: (702) 614-0600
*Attorney for Robert E. Atkinson, Trustee*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC. *dba* INFINITY HEALTH CONNECTIONS,<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7<br><br>**ORDER APPROVING MOTION TO: (I) APPROVE SALE OF CERTAIN ASSETS; (II) SET SALE/AUCTION PROCEDURES; AND (III) SET AUCTION HEARING DATE**<br><br>Hearing Date: _____, 2021<br>Hearing Time: _____ a.m./p.m.<br><br><br>**<u>AUCTION INFORMATION</u>**<br>**<u>(Telephonic Only):</u>**<br><br>Auction Sale Date:<br><br>Auction Time:<br><br>Call-In Number:    (888) 684-8852<br>Access Code:        8242009# |

The Trustee's motion entitled MOTION TO: (I) APPROVE SALE OF CERTAIN ASSETS; (II) SET SALE/AUCTION PROCEDURES; AND (III) SET AUCTION HEARING DATE [DE #____ ] ("***Motion***") came on for a hearing before this Court.  Appearances were as noted in the record.

The Motion sought the following relief: (i) approving the sale of non-abandoned accounts receivable owned by the Bankruptcy Estate to creditor HASelect-Medical Receivables Litigation Finance Fund International SP ("***HASelect***"), subject to overbid at auction; (ii) setting the auction time of the sale; and (iii) establishing the procedures for such auction.

The Trustee entered into a sale agreement ("***APA***") with HASelect, to sell the Receivables to that entity for $100,000.00, subject to overbid at the auction.

All findings of fact and conclusions of law orally stated by the Court at the hearing are incorporated herein pursuant to Fed. R. Civ. P. 52, as made applicable to these proceedings via Fed. R. Bankr. P. 9014(c) and 7052.

For the reasons provided by the Court on the record at the hearing,

**IT IS ORDERED** that the relief requested in the Motion is hereby GRANTED in all respects.

**IT IS FURTHER ORDERED** that:

1.    The Asset Purchase Agreement, attached as Exhibit 1 to the Motion (the "***APA***"), is approved, contingent upon possible overbid at auction.  If HASelect is not the Winning Bidder (as that term is defined below), then the APA shall be of no force or effect.

2.    An auction to sell the Assets (the "***Auction***") shall be held before this Court at the time and date found in the caption to this Order.  The Auction shall be held telephonically. The call-in number and passcode are found in the caption to this order.

3.    The procedures for the Auction are as follows:

      a.    **Pre-Qualification of Bidders**.

- HASelect is pre-qualified to bid at the Auction.

-2-

- All other prospective bidders must deliver a $100,000 earnest money deposit ("EMD") to the Trustee in good funds at least one business day prior to the Auction. These funds must be delivered either in a cashier's check made payable to "Robert E. Atkinson, Trustee" and delivered to his office, or wired to an estate bank account. The Trustee has the discretion to accept cash, personal checks or money orders.

- If a bidder is not the Winning Bidder (as defined below), then the Trustee shall return the EMD to that party within seven business days, and may do so without further court order required.

b. **Bidding**.

- Only qualified bidders shall be permitted to bid at the Auction.

- The initial overbid shall be at least $110,000. All subsequent overbids shall be at least $10,000 higher than the prior bid, as a minimum increment.

- HASelect shall be permitted to credit bid on the amounts of any of its bids in excess of the Initial Purchase Price, up to the total amount owed shown on a proof of claim filed by HASelect in the Bankruptcy Case.

c. **Determination of Winning Bidder**.

- If no bid is placed in excess of $100,000, then the buyer of the Assets shall be HASelect, and the APA shall be approved in all respects.

- If bids occur at the Auction, then the highest bidder shall be the winning bidder ("***Winning Bidder***"). The earnest money deposit held by the Trustee from that party shall be applied towards the winning purchase price.

  - If the highest bidder is HASelect, then HASelect shall promptly amend its proof of claim to reduce it by the amount of its credit bid.

  - If the highest bidder is not HASelect, then that entity shall have five (5) business days to transfer the remaining portion of the winning purchase price to the Trustee, in good funds in United States currency.

-3-

- If the highest bidder fails to timely transfer the remaining portion of the winning purchase price to the Trustee (unless that time period is extended by the Trustee, in his sole discretion), then in such instance: (i) the sale to that party shall be annulled, with no further obligation to the Trustee to consummate the sale to that non-timely-performing party; (ii) that party's EMD shall be non-refundable as liquidated damages; and (iii) the next-highest bidder shall be the Winning Bidder, and that party shall be subject to this subsection

- If HASelect is not the winning bidder at the Sale, then the Trustee shall promptly remit the Initial Purchase Price back to HASelect.

### d. **Disposition of the Funds from the TIF and TIF+HAS Check.**

- Within fifteen (15) business days after Sale consummation, if not stayed, the Trustee shall remit the funds in his possession from the TIF Checks and TIF+HAS Checks, to the Winning Bidder, without further court order required.

- Debtor (inclusive of Debtor's principals) shall have a continuing obligation to promptly remit any and all funds arising from the Tecumseh Receivables to the Winning Bidder, including any such funds that it may come into possession of at any time in the future.

4.    The Winning Bidder is hereby afforded the protections found in 11 U.S.C. § 363(m), to the maximum extent possible under law.

5.    The Assets shall pass to the Winning Bidder only after the Auction is held and the entire auction purchase price is received by the Trustee in good funds.

6.    The Winning Bidder shall take the Assets in an "as-is" condition, pursuant to the following terms and conditions.  All bidders and the Winning Bidder are hereby notified of the following:

- The Assets will be sold subject to HASelect's lien, and also whatever rights, title, and interests that Tecumseh may have in the Tecumseh Receivables, if any.  Both HASelect's and Tecumseh's interests in the Assets that existed as of the Petition Date shall remain unaffected by the Sale.

- The Assets are being sold pursuant to Section 363(f) of the Bankruptcy Code excluding HASelect and Tecumseh, i.e., the Sale of the Assets shall be made free and clear of the liens, claims, and encumbrances of any third party other than HASelect and Tecumseh.

- No due diligence in the Assets is permitted after the Auction.

- HASelect is in possession of certain books and records of the Debtor relating to the Tecumseh Receivables, including computer records and paper records. The Trustee only has a list of the Tecumseh Receivables, as found in Court records. Upon Court approval of the Sale, all books and records of the Debtor pertaining to the Tecumseh Receivables, wherever located and in any form, shall be turned over to HASelect, and HASelect shall be empowered to enforce said turnover against any party.

- The Trustee makes no representations or warranties whatsoever, express or implied, regarding the Assets, including but not limited to the condition, value, title, or collectability of the Tecumseh Receivables or the Claims.

- The Winning Bidder shall take the Assets with actual knowledge that:

    - The Assets being sold include whatever interest the Bankruptcy Estate has in the Tecumseh Receivables (inclusive of the funds from the TIF Checks and TIF+HAS Checks), if any, and that litigation is required to determine what interest (if any) the Bankruptcy Estate had in that property as of the Petition Date; and

    - The Bankruptcy Estate may not have any right, title, or interest in the Tecumseh Receivables.

- The Winning Bidder, not the Bankruptcy Estate or the Trustee, shall be responsible for and shall bear all fees, costs, and expenses to obtain clear title on the Assets, to service and monetize the Assets, and to prosecute the Claims purchased herein (which shall be prosecuted in the the Winning Bidder's name, as successor-in-interest to the Claims).

- Upon Court approval of the Sale, the Assets shall no longer be property of the Bankruptcy Estate and neither the Trustee nor the Bankruptcy Estate shall have any obligation whatsoever regarding the Assets. **For avoidance of doubt, litigation of whether the Assets are property of the Bankruptcy Estate is <u>not</u> resolved by the Sale.** HASelect's claims and causes of action relating to the Tecumseh Receivables in the AP Case, along with any related counterclaims of Tecumseh regarding title to the Assets on the Petition Date, shall survive the Sale. After the Sale is consummated, neither the Trustee nor the Bankruptcy Estate shall have any

obligation to prosecute or defend any dispute (in the AP Case or otherwise) regarding title to the Assets on the Petition Date.

- The Bankruptcy Case has not been designated an operating chapter 7 case, and that the Tecumseh Receivables have not been serviced by the Debtor or the Bankruptcy Estate since the Petition Date. The Winning Bidder shall be deemed to waive any and all claims against the Estate and the Trustee relating to this non-servicing and any diminishment of the Assets that may have occurred prior to the Sale, if any.

7.    The 14-day stay otherwise imposed by Bankruptcy Rule 6004(h) is hereby waived.

**IT IS SO ORDERED.**

# # # # #

Respectfully submitted by:

_____/s/ Clarisse Crisostomo_____
CLARISSE L. CRISOSTOMO, ESQ.
Nevada Bar No. 15526
*Attorney for Robert E. Atkinson, Trustee*

## <u>CERTIFICATION re: RULE 9021</u>

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirements set forth in LR 9021(b)(1).

☐ No other party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☒ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # # # #

-6-