ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
**AKERMAN LLP**
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Telephone: (702) 634-5000
Facsimile:  (702) 380-8572
Email: ariel.stern@akerman.com

MICHAEL D. NAPOLI, ESQ.
*PRO HAC VICE*
**AKERMAN LLP**
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 720-4360
Facsimile:  (214) 720-8116

*Attorneys for party in interest Tecumseh – Infinity Medical Receivables Fund, L.P.*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC;<br>*dba* INFINITY HEALTH CONNECTIONS<br><br>Debtor. | Case No.:     21-14486-abl<br>Chapter     7<br><br>**Declaration of Michael Belotz in Support of Opposition to Trustee's Motion to Approve Sale of Certain Assets, Set Sale/Action Procedures, and Set Action Hearing Date**<br><br>Date:  December 22, 2021<br>Time: 3:00 p.m. |

I, Michael Belotz, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      My name is Michael Belotz. I am over the age of twenty one years, of sound mind, and fully competent to testify in this cause. I have personal knowledge of the facts stated herein, all of which are true and correct.

2.      I am a principal of Tecumseh Alternatives, LLC, the advisor to Tecumseh–Infinity Medical Receivable Fund, LP, ("Tecumseh"), a party interest, in the above referenced bankruptcy matter.

3.      In my role as a principal of Tecumseh, I am responsible for all aspects of Tecumseh's investments in medical receivables. Part of my duties require that I ensure the proper accounting and

61245855;2

1    reporting of funds flowing to and from Tecumseh. In order to do so, I review and manage

2    Tecumseh's banking records, financial records, contracts, and investments.

3        4.    As such, I was personally involved in the business of Tecumseh and Infinity Capital

4    Management, Inc. ("Debtor"). Particularly, the purchase of receivables pursuant to a sub-advisory

5    agreement entered with Debtor on June 18, 2020 (the "Sub-Advisory Agreement").

6        5.    To facilitate the purchase of receivables from medical service providers, Tecumseh,

7    opened a bank account with Bank of America, that account number ends in 8995 (the "BofA

8    Account") Tecumseh used this account to pay for the receivables that it purchased from medical

9    service providers and to receive the proceeds of the receivables that it purchased. As a general

10    matter, Tecumseh purchased receivables and paid medical service providers throughout the month.

11    In addition to the amounts that Tecumseh paid the medical service providers, Tecumseh paid the

12    Debtor a servicing fee for its work in locating and servicing the receivables. That fee was generally

13    20% of the amount that we paid the medical service providers and was paid monthly.

14        6.    Bank of America provided monthly bank statements reflecting all transactions (the

15    "Account Statements") in the BofA Account including all cancelled checks. Tecumseh stored these

16    records as part of its regular course of business.  I am the custodian of records for Tecumseh and I

17    am familiar with the manner in which Tecumseh maintains records in the regular course of its

18    business activities. A true, correct, and duplicate copy of Account Statements as transmitted by Bank

19    of America relating to October 2020-September 2021 are attached hereto as **Exhibit A.**

20        7.    In response to allegations that Infinity rather than Tecumseh had paid the medical

21    providers for the receivables that Tecumseh purchased, I and people working under my supervision

22    traced payments made by Tecumseh to medical service providers. To do so, we began with the two

23    spreadsheets provided by the Debtor -- TIFDumpWithIncomeFinal.xlsx and

24    ESDVerifiedHASOverlapDumpWithIncome.xlsx (collectively "the Debtor's spreadsheets") – and

25    compared the data entered by the Debtor in the  Provider's name, the BillID, the PaidCheckNo. and

26    the Bill Cost columns to the BofA Account Statements and cancelled checks. My understanding is

27    that these two spreadsheets have previously been filed with the Court as Exhibits A and B

28    respectively to the declaration of Chad Meyer (ECF # 59).

AKERMAN LLP
1635 VILLAGE CENTER CIRCLE, SUITE 200
LAS VEGAS, NEVADA 89134
TEL.: (702) 634-5000 – FAX: (702) 380-8572

61245855;2

**AKERMAN LLP**
1635 VILLAGE CENTER CIRCLE, SUITE 200
LAS VEGAS< NEVADA 89134
TEL.: (702) 634-5000 – FAX: (702) 380-8572

8.      So far as I can tell from my review of the Debtor's spreadsheets, the Debtor did not record the actual amount that Tecumseh paid the providers for receivables. For the Bill Cost data, the Debtor combined the actual amount that Tecumseh paid to the provider with an allocation of the fee that Tecumseh paid to the Debtor for its services. After backing out the Debtor's fee, we were able to tie cancelled checks and wire transfer confirmations in the account statements to individual receivables. We were also able to largely reconcile our bank records to the fees paid to the Debtor for its services. We summarized our reconciliation of the Debtor's spreadsheets to the BofA account statements in the schedules attached as **Exhibit B**.

9.      An example of this reconciliation is the purchase of four receivables from South Atlanta MUA Center on or about October 29, 2020 shown on Exhibit B at page 2. According to the Debtor's Spreadsheets, Tecumseh purchased four receivables (BillID Nos. 27183, 27278, 27292, 27293) with a total face amount of $115,108.00 from South Atlanta MUA Center. The Debtor recorded a BillCost for the four receivables of  $34,532.40. As discussed the BillCost is comprised of the amount that Tecumseh paid South Atlanta MUA Center and the fee paid to the Debtor. We reduced the BillCost by the 20% fee ($5,755.40) to obtain the actual amount that Tecumseh paid to South Atlanta MUA Center ($28,777.00). We then identified a wire transfer (No. 301693158) paid in that amount on October 29, 2020 to South Atlanta MUA Center in the BofA Account Statements.

10.     We used the same reconciliation process for all 4,190 receivables totaling $19,846,621.37 in face that we have been able to reconcile to date. After we obtain access to additional records from the Debtor related to the receivables that Tecumseh purchased, we hope to reconcile additional receivables.

I declare under penalty of perjury that the foregoing is true and correct.

Executed December 13, 2021

Michael Belotz

61245855;2