CLARISSE L. CRISOSTOMO, ESQ., Bar No. 15526
Email: clarisse@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E Warm Springs Rd, Suite 130
Las Vegas, NV 89119
Telephone:  (702) 614-0600
*Attorney for Robert E. Atkinson, Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC. *dba* INFINITY HEALTH CONNECTIONS,<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7<br><br>**REPLY** |

The Trustee hereby replies to the opposition [DE #155] ("***Opposition***") filed by creditor Tecumseh-Infinity Medical Receivable Fund, LP ("***Tecumseh***") to the Trustee's motion to sell and set procedures [DE #145] ("***Sale Procedures Motion***").  This Reply is supported by the Declaration of Robert Atkinson ("***Trustee's Decl. in Support of Reply***").

The Opposition argues that: (i) the Trustee is seeking to sell assets that are not property of the estate; (ii) the Trustee's proposed sale process is defective; (iii) Tecumseh is not adequately protected for its loss of property; and (iv) a finding of good faith is not warranted.  [*See generally* Opposition at pp. 11-19.]

For the reasons stated below, these arguments contain logical inconsistencies; and the case law cited is distinguishable from the present situation.

**I. In the Ninth Circuit, a Trustee Can Sell "Whatever Interest the Estate Has, If Any" in Property, Even if Title is In Dispute**

Section 363 of the Bankruptcy Code provides that a Trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). The Trustee adheres to this by seeking to convey "[w]hatever interest the Bankruptcy Estate has (if any) in the Tecumseh Receivables" subject to "the rights, title, and interests that Tecumseh may have in the Tecumseh Receivables, if any."  [Sale Procedures Motion at

-1-

Exhibit 1, pdf page 12 (Asset Purchase Agreement definition of the Assets being sold.] In short, the Sale Procedures Motion is not attempting to address or prove ownership of the Tecumseh Receivables; it is merely selling whatever interest it may have, if any. Moreover, the term 'Assets' includes three separate asset types, two of which do not directly relate to the ownership of the Tecumseh Receivables (namely, various claims and causes of action against a variety of third parties, and records in the Trustee's possession.) [*Id.*] Thus, if the first asset category (i.e., whatever interest the estate has in the Tecumseh Receivables, if any) turns out to be nothing, then the buyer has still acquired other assets for value.

Because the Sale Procedures Motion is not seeking a finding as to the ownership of the Tecumseh Receivables, all of the case law cited in Section II(B) of the Opposition is distinguishable.

In the 2005 case Darby v. Zimmerman (In re Popp), the plaintiff disputed the trustee's plan to sell the debtor's unimproved real property as property of the bankruptcy estate. Darby v. Zimmerman (In re Popp), 323 B.R. 260, 268-70 (B.A.P. 9th Cir. 2005). The debtor had conveyed his ownership interest in the real property to a partnership owned by his father and girlfriend, who then sold it to the plaintiff secured with a deed of trust. *Id.* at 262-63. The plaintiff transferred the property back to the partnership wherein the debtor completed the transaction on behalf of the partnership. *Id.* When the debtor filed for bankruptcy, the trustee filed an adversary proceeding against the partnership seeking a declaratory judgment that the partnership was the debtor's alter ego, thus making the real property an asset of the estate. *Id.* Before the adversary case concluded, the trustee filed a motion to sell the property ***free and clear of all liens***, ***including "a finding that the Property belonged to Popp's bankruptcy estate"***. *Id.* at 264. The plaintiff opposed the motion, stating the trustee could not sell the property free of the plaintiff's interest without rectifying the deed of trust. *Id.* The bankruptcy court granted the sale motion, finding that the property was part of the bankruptcy estate without concluding the adversary proceeding. *Id.* The BAP reversed, determining that the "stripping of a creditor's lien" was inappropriate, if title is in dispute:

> The relatively simple transaction present here, in which a buyer expressly took the risk of receiving less than marketable title, **coupled with the issues raised -- the sale of property and the stripping of a creditor's lien from the property without a proper determination of its ownership** -- compel reversal notwithstanding arguments of mootness.

*Id.* at 272 (emphasis added).

Notably, the BAP did not take issue with the trustee selling an asset with less than marketable title. The core issue in Popp warranting reversal was (i) a finding that the estate did have an interest in the property sufficient to sell deed title (as opposed to a quitclaim), and (ii) because the Trustee attempted to couple the sale with the stripping of the deed of trust. Popp is therefore distinguishable from the APA and the Sale Procedures Motion, because the Trustee is not seeking a finding that the Tecumseh Receivables are property of the Infinity bankruptcy estate, and the sale is not stripping Tecumseh's interests in the Tecumseh Receivables, if any so exists.

The Opposition cites to Rodeo, another case heavily referenced in Popp. In the Rodeo case, the trustee also sought to sell real property free and clear under Section 363(f), when the property was subject to an adversary proceeding to determine estate ownership. Warnick v. Yassian (In re Rodeo Canon Dev. Corp.), 362 F.3d 603, 606 (9th Cir. 2004). The bankruptcy court approved a 363(f) sale free and clear, finding that the bankruptcy estate assumed a minimum ownership interest. *Id*. The Ninth Circuit reversed, holding that a bankruptcy court could not authorize a sale under section 363 until the court determined whether the estate had an ownership interest in the property to be sold. *Id*. at 608. However, **the Ninth Circuit withdrew that opinion** on March 8, 2005, and is no longer good law. In re Rodeo Canon Dev. Corp., 2005 WL 663421, Nos. 02-56999, 02-57203 (9th Cir. March 8, 2005).[1]

Instead, the current standard rule is that a bankruptcy trustee definitely can sell whatever interest an estate has in property, even if that interest is nothing, to a fully-

---

[1] Also found at https://www.courtlistener.com/opinion/3030727/yassian-v-warnick/

informed buyer. Specifically, in the Ninth Circuit BAP case In re Global Reach Inv. Corp., the court opined:

> "Kwai alternatively contends that the safe harbor protections of section 363(m) cannot apply to a sale to which section 363 does not apply. See In re Popp, 323 B.R. 260 (reversing approval of a sale of real property under section 363 where the bankruptcy court made a determination that the estate was authorized to sell the property while litigation over ownership was pending). Kwai asserts that because ownership of the Starble stock was in dispute, it was unclear whether the stock even constituted property of the estate to which section 363 could apply.
>
> Following In re Popp, Kwai argues that the bankruptcy court should have waited until ownership of the Starble stock was finally determined in the state court action before proceeding with a sale under section 363(b).
>
> In response, the Trustee asserts that In re Popp is inapplicable for two reasons: (1) the Trustee was selling only whatever interest the estate owned (i.e., quitclaiming the estate's interest, if any, to the potential buyer); and (2) the Debtor specifically listed 100% ownership interest in the Starble stock on its bankruptcy schedules and never disclosed a dispute over ownership until the Trustee sought to sell the stock.
>
> **The Trustee's arguments are more persuasive**. This case is distinguishable from In re Popp. In In re Popp, the chapter 7 trustee **sought to convey fee title** in real property while title was held in a non-debtor third party's name, and there was pending litigation as to whether the real property was property of the estate. Here, the Trustee seeks only to sell whatever interest, if any, the Debtor may own in the Starble stock. Although several parties have sued the Debtor over ownership of the stock, the Debtor unambiguously listed in Schedule B under the subheading "Stock and interests in incorporated and unincorporated businesses" that it "owns 500 shares of common stock [in Starble International Ltd.], representing a 100% interest in Starble . . . ."
>
> Chan Investment knew of the pending ownership dispute, knew the sale terms, knew it would receive the Starble stock by quitclaim deed and knew the Debtor could possibly have no ownership interest in the stock. The bankruptcy court's order simply authorized the Trustee to sell whatever interest the estate had - even if that interest was nothing - to a buyer with full knowledge of the situation. Nothing in In re Popp precludes such an order.

VI. CONCLUSION

> For the reasons set forth above, **the bankruptcy court did not err in finding Chan Investment a good faith purchaser subject to the protections of section 363(m) and authorizing the sale** of the Starble stock accordingly. We AFFIRM."
>
> Kwai v. Wirum (In re Global Reach Inv. Corp.) (Bankr. N.D. Cal. 2012), aff'd, 570 F. App'x 723 (9th Cir. 2014).[2]

Because of the Ninth Circuit's 2014 affirmation of the BAP opinion in Global Reach, a trustee can sell whatever interest in property that an estate may have to an informed buyer, and have that buyer be afforded the protections of Section 363(m).

The APA and the Sale Procedures Motion clearly inform prospective bidders several times that: (i) the estate may have no interest at all in the Tecumseh Receivables, (ii) the winning buyer will be purchasing it subject to HASelect's lien; (iii) the winning buyer will be purchasing it subject to whatever rights, title, and interest that Tecumseh has in the Tecumseh Receivables, if any; (iv) that litigation (via the AP Case) is required to obtain clear title, and (v) prosecution of the AP Case will be at the sole cost of the buyer.  [Motion at ¶¶ 8, 13, 24; APA at Recitals and Section 1.04.]  The Motion and APA also make it clear that no title dispute is resolved by the sale.  [Motion at ¶ 13; APA at Section 1.04 ("**For avoidance of doubt, litigation of the dispute in the AP Case as to whether the Assets are property of the Bankruptcy Estate is not resolved by the Sale.**") (emphasis in original).]

The Opposition cites several other out-of-circuit cases to support a need for a court to resolve whether the bankruptcy estate has an interest in an asset the trustee is trying to sell under Section 363.  However, those cases are out of circuit (and thus not applicable given the Global Reach decision), but also are distinguishable fact sets.

In In re Coburn (Bankr. M.D. Fla. 1999), the trustee sought to sell the debtor's pickup truck free and clear via a 363 sale.  The debtor's father objected, but court found that the debtor's father had no "judicially recognizable claim" of ownership to the truck because he

---

[2] *See also* Stokes v. Duncan (In re Stokes), 2013 WL 5313412 (9th Cir. BAP Sept. 23, 2013), an opinion in which the BAP approved of a trustee's sale of "the estate's interest, if any" in the subject property, with no representations or warranties regarding that property, including whether it was property of the estate.

failed to properly register his ownership in it, and permitted the sale. This case provides no insight to the Court in the present case regarding the Opposition. Similarly, the Robertson case cited in the Opposition is inapplicable and distinguishable because the court in that case determined as part of the sale motion that no ownership dispute actually existed. In Robertson, the debtor transferred his family residence to his former spouse by divorce, making it her separate property. Anderson v. Conine (In re Robertson), 203 F.3d 855, 858 (5th Cir. 2000). When the debtor filed for bankruptcy years later, the trustee filed a complaint to sell the family residence as property of the estate. *Id*. Because a prior consent judgment acted to partition the couple's former community property, the residence was not community property at the commencement of the bankruptcy. *Id.* at 860-861. Thus, the court ruled that the trustee lacked authority to sell the house as property of the estate under section 363. *Id.* at 863. Robertson is distinguishable because it is clear from the bankruptcy's beginning that the family home did not belong to the debtor at the onset of bankruptcy. In the divorce, the former spouse gained it as her separate property with no qualms from the debtor. If the ownership of the Tecumseh Receivables was clear cut on the Petition Date, the AP Case would not exist. However, that is not the situation. The ownership of that asset has been in dispute from the Petition Date, and the Trustee only seeks to sell whatever interest the bankruptcy estate may have in that asset, if any. No final determination on the AP Case's central issue of asset ownership is necessary for the court to grant the Sale Procedures Motion.

Because all the cases cited in the Opposition are distinguishable, or have been withdrawn, or have been superseded by subsequent Ninth Circuit opinions, the Trustee can proceed with the Sale given his authority to do so under Global Reach.

**II. The Sale Process is Not Defective**

Tecumseh argues that the proposed procedures provide for no marketing. In reality, it is obvious to everyone that there are really only two potential bidders for the Assets: HASelect and Tecumseh. The proposed sale procedures will determine a market price.

Tecumseh is a natural potential bidder, and the Trustee is fascinated to find out whether Tecumseh will actually bid, because if it does then it provides insight as to how strongly it believes its own assertions that the Tecumseh Receivables are its property. If Tecumseh truly believes that the Tecumseh Receivables are its property, then it should truly believe that they will prevail in the AP Case, and thus not care that the Trustee is selling "whatever interest the estate may have, if any" in the receivables. The fact that the Opposition was filed provides an indication that Tecumseh privately is concerned that its claim of ownership is not nearly as strong as it asserts in public.

As secured lender, HASelect is the other natural bidder. No one doubts that HASelect holds a properly-perfected all-asset security interest in the assets of the Debtor. The Debtor scheduled HASelect's claim as being $14,126,860.00, with assets totaling only $5,872,767.98. That would make them undersecured by over $8 million. Any buyer would be taking the Tecumseh Receivables subject to *both* HASelect's lien and Tecumseh's claim of ownership. Expecting a new third-party bidder to show up on the scene with over $8 million in new cash is unrealistic, and the sole beneficiary of that scenario (HASelect) is not requesting that the Trustee market the sale.

Accordingly, the Opposition's observation that there is no "real" description of the assets being sold, or a due diligence period, is irrelevant. Tecumseh and HASelect are fully informed parties that do not need due diligence, and they both are in possession of the spreadsheets (as provided by Debtor's counsel) as to the nature of the Tecumseh Receivables.

Regarding the avoidance claims being sold, the asset description is sufficient: "any and all claims relating in any way to the Tecumseh Receivables that the Trustee has under (i) chapter five of title 11 of the United States Code, or (ii) all applicable or relevant state or federal laws." This asset is a natural fit with the sale, so that the buyer can prosecute those claims in the AP Case, thereby fully removing the Trustee from being a party to that adversary case.

Similarly, the $75,402.85 in monies from the TIF Checks, and the $13,400.00 in monies from the TIF+HAS Checks, are a natural fit with the sale. The Trustee is currently

in possession of those funds, which are monies received by Debtor after the Petition Date on the Tecumseh Receivables. After the sale, these monies will be transferred to buyer, subject to HASelect's lien and whatever interest that Tecumseh has in those monies. In short, this money is simply the beginning of the liquidation of the Tecumseh Receivables, and are being sold instead of having the Trustee hold onto them for the duration of the AP Case.

**III.  Adequate Protection to Tecumseh is Fully Provided**

The Court has the power to ensure that a party with an interest in property being sold is adequately protected. 11 U.S.C. § 363(e). If Tecumseh does not have any ownership interest in the Tecumseh Receivables, then this section does not apply. If Tecumseh does have ownership of the Tecumseh Receivables, then its interests are fully protected because the Assets are expressly being sold "subject to the rights, title, and interests that Tecumseh may have in this property, if any." [Motion at ¶ 8; APA at Recitals.]

The Opposition makes the curious argument that Tecumseh will have "no remedy" after the sale. [Opposition at p. 17, ll. 25-26.] That argument is specious. Their rights are completely unaffected by the sale.

The Opposition also oddly argues that the Trustee "failed to service" the Tecumseh Receivables, just a few paragraphs after it vehemently asserts that the estate has no interest in the Tecumseh Receivables. Tecumseh should be judicially estopped from arguing that the Trustee should or could service the receivables, when their own core argument is that the receivables are not property of the estate. Tecumseh cannot have it both ways.[3]

A major development, curiously not mentioned by the Opposition and yet highly relevant to this topic, is that HASelect and Tecumseh have been cooperating for weeks now to identify a servicer for the Tecumseh Receivables, including a tacit agreement to set aside

---

[3] The Trustee also objects to the Opposition's statement "there is little question that the Trustee failed to carefully preserve the estate's assets from deterioration or dissipation in this case." [Opposition at p. 19, lines 12-13.] That is a baseless attack founded on the premise that the Tecumseh Receivables are property of the estate. Tecumseh is judicially estopped from arguing that the Tecumseh Receivables are property of the estate, and therefore has no standing to object to the release negotiated with HASelect in the APA.

-8-

all recoveries pending the outcome of the AP Case, via escrow or some other mechanism. [Trustee's Decl. in Support of Reply at ¶ 3.] A proposal from a servicer dated October 2021 was circulated by HASelect's counsel to Tecumseh's counsel on November 19, 2021. That proposal included a one-time up-front fee of $30,000. [*Id.*] As noted in prior pleadings, this is not an operating chapter 7 case, and neither the Trustee nor Tecumseh nor HA Select have filed a motion for this bankruptcy case to become one.

HASelect has expressly represented to the Trustee that if they are the winning bidder, they will set aside all recoveries (after the costs of a servicer are deducted), pending the outcome of the AP Case.[4] [*Id*. at 4.] Outside of Court, Tecumseh has been acting as if this will be the path forward, so it's a bit disingenuous for the Opposition to not mention it to the Court. In short, Tecumseh (and HASelect) are large, sophisticated investors in the market space of medical liens, and are fully capable of looking out for their own interests, and both are adequately protected by the sale.

**IV.  A Finding of Good Faith is Warranted, as is Section 363(m) Protection**

In the Ninth Circuit, the following factors are relevant to a good faith determination under 363(m): (1) compliance with approved sale procedures; (2) arms-length negotiations, leading to a sale reflecting a purchase price at or near the market value of the property; (3) opportunity for competitive bidding; (4) knowledge in advance of the sale of who the proposed purchaser is; and (5) the absence of any evidence of fraud, collusion or grossly unfair advantage over other bidders. *See* In re M Capital Corp., 290 B.R. at 746-49; *see also* Zuercher Trust of 1999 v. Kravitz (In re Zuercher Trust of 1999), 2014 WL 7191348 (Mem. Dec.) (9th Cir. BAP Dec. 17, 2014); *see also* Global Reach at *2-3.

All five factors are present, or will be by the time the sale is held:

- The sale procedures order will set forth the sale procedures, which will be followed at the auction;

---

[4] Such set-aside should also encompass the monies from the TIF Checks and the TIF+HAS Checks. The Trustee has no issue with the Court making this set-aside a condition of the sale, to address any lingering/latent adequate protection issues.

- The APA was negotiated between the Trustee and HASelect at arms-length with lots of back-and-forth regarding terms, and an auction sale will determine market value of the property;

- The sale procedures provide an opportunity for competitive bidding;

- HASelect, as stalking horse bidder, is known in advance of the sale; and

- There has not been any fraud or collusion, and HASelect does not have a grossly unfair advantage over other bidders.[5]

[Trustee's Decl. in Support of Reply at ¶ 5.]

As shown above in the Global Reach case, a 363(m) good-faith finding is perfectly fine in an asset sale of "whatever interest the estate has, if any". For these reasons, the Court can find that the buyer at the sale is a good faith buyer, and afforded Section 363(m) protection.

**V. Conclusion**

Frankly, the proposed sale brings in much-needed $100,000 to the estate, in a situation in which the estate otherwise would have a long, expensive, and very difficult time liquidating the Tecumseh Receivables for a net benefit to the estate. The Court has already disapproved abandonment of the Tecumseh Receivables [DE #133], so if the sale is not approved, then the only clear path forward is to litigate the AP Case. In the Trustee's business judgment, the Sale Procedures Order should be approved.

The Trustee thus requests entry of an order similar to the one proposed as Exhibit 2 to the Sale Procedures Motion.

# # # # #

DATED:  December 20, 2021                **ATKINSON LAW ASSOCIATES LTD.**

By:  _____/s/ Clarisse L. Crisostomo_____
CLARISSE L. CRISOSTOMO, ESQ.
Nevada Bar No. 15526
*Attorney for Robert E. Atkinson, Trustee*

---

[5] It does have a substantial credit bid available, but the Opposition is not arguing that every bankruptcy sale featuring the existence of a credit bid is "grossly unfair" to other bidders.