1 | Bart K. Larsen, Esq.
Nevada Bar No. 8538
2 | Kyle M. Wyant, Esq.
Nevada Bar No. 14652
3 | **SHEA LARSEN**
1731 Village Center Circle, Suite 150
4 | Las Vegas, Nevada 89134
Telephone: (702) 471-7432
5 | Fax: (702) 926-9683
Email:  blarsen@shea.law
6 |         kwyant@shea.law

7 | *Attorneys for HASelect-Medical Receivables*
*Litigation Finance Fund International SP*

8

9

10

11 | **UNITED STATES BANKRUPTCY COURT**

12 | **DISTRICT OF NEVADA**

13 | In re:

14 | INFINITY CAPITAL MANAGEMENT, INC.

15 | Debtor.

Case No. 21-14486-abl
Chapter 7

Hearing Date:   December 22, 2021
Hearing Time:  3:00 p.m.

**JOINDER TO CHAPTER 7 TRUSTEE'S REPLY IN SUPPORT OF MOTION TO SELL AND SET PROCEDURES**

HASelect-Medical Receivables Litigation Finance Fund International SP ("HASelect"), by and through its undersigned counsel, hereby joins in the *Reply* [ECF No. 163] filed by Chapter 7 Trustee Robert E. Atkinson (the "Trustee") in support of the *Motion to: (i) Approve Sale of Certain Assets; (ii) Set Sale/Auction Procedures; and (iii) Set Auction Hearing Date* [ECF No. 145] (the "Motion") and respectfully requests that the Court consider the following additional points.

**A.     Tecumseh's Claim to Ownership of the Disputed "Tecumseh Receivables" Is Unsupported.**

In the three months since this chapter 7 case was filed on September 14, 2021, Tecumseh – Infinity Medical Receivable Fund, LP ("Tecumseh") has filed multiple documents in which it claims

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

ownership of the disputed Tecumseh Receivables[1], including at least four declarations[2] from Tecumseh's principals through which various exhibits have been offered in support of Tecumseh's thin claim of ownership.   Notably, however, Tecumseh has yet to offer a single document demonstrating that any interest in any of the Tecumseh Receivables was ever assigned to Tecumseh, either by a medical provider from whom Infinity acquired a Tecumseh Receivable or by Infinity itself.  Infinity's principal has already acknowledged all of the Tecumseh Receivables were assigned to Infinity upon purchase, not Tecumseh.[3]  Without evidence of any corresponding assignment from Infinity to Tecumseh, both Tecumseh's claim to ownership and its arguments denying the estate's interest the Tecumseh Receivables are entirely unfounded.

Moreover, notwithstanding Tecumseh's odd silence on this point, HASelect is aware of several instances in which Infinity and Tecumseh entered into written assignment and bill of sale agreements by which Infinity, not any medical provider, purported to sell hundreds, if not thousands, of accounts in which HASelect held a prior perfected security interest to Tecumseh.  A redacted example of one such agreement, along with a check for payment from Tecumseh to Infinity, is attached hereto as Exhibit 2.  Tecumseh's failure to offer such documents as evidence in support of its claim to ownership of the Tecumseh Receivables must be construed for what it is – a glaring admission that Tecumseh's claim is not supported by the actual agreements through which it supposedly purchased the Tecumseh Receivables.  Rather, those documents – *the only known documents that evidence any actual assignment of any account to Tecumseh* – prove that Tecumseh's claim to ownership of the Tecumseh receivables is clearly subject to HASelect's perfected security

---

[1] Capitalized terms that are not expressly defined herein shall have the same meanings ascribed to such terms as in the Trustee's Motion.

[2] ECF Nos. 59, 62, 126, and 156.

[3] *See* Excerpts of Transcript of Rule 2004 Examination of Anne Pantelas attached hereto as Exhibit 1 ("Q: Was there any version of this form that you're aware of that was used in the last two years by Infinity in which, you know, Infinity was not identified as the party receiving the assignment?  A: No, no.").

interest[4] and avoidable pursuant to the Trustee's "strong arm" powers under 11 U.S.C. § 544(a).[5]

**B.    HASelect Is Entitled to Credit Bid.**

In stark contrast to Tecumseh's unconvincing claim to ownership of the Tecumseh Receivables, HASelect's rights as a secured creditor have been clearly established[6] and are beyond reasonable dispute.  In fact, Tecumseh does not dispute that HASelect holds a perfected security interest in substantially all of Infinity's personal property, including accounts.  Similarly, Tecumseh does dispute that the Tecumseh Receivables are accounts as that term is used under the UCC. Accordingly, to the extent the estate holds any interest in the Tecumseh Receivables, that interest undoubtedly falls under the umbrella of HASelect's perfected security interest.

Accordingly, HASelect is entitled to credit bid for the estate's interest in the Tecumseh Receivables as proposed in the Motion pursuant to Section 363(k).  Tecumseh asks the Court to find cause to preclude HASelect from credit bidding but makes no effort to establish that cause exists beyond vaguely referencing the substantial amount of the unpaid secured indebtedness owed to HASelect.  There is no basis for the Court to find such cause in this case.  There will obviously be no successful reorganization of the chapter 7 debtor, and there is no reason to believe that allowing HASelect to credit bid would discourage would-be buyers from bidding.  As the Trustee acknowledges in his Reply, there are only two logical buyers in this case – HASelect and Tecumseh. It is incredibly unlikely that any other person would be willing to pay any substantial amount to take the Tecumseh Receivables subject to the claims of both HASelect and Tecumseh.  Finally, there is no suggestion by Tecumseh that HASelect has engaged in any inequitable contract that might justify

---

[4] Additionally, Infinity has confessed to knowingly selling accounts to Tecumseh in 2020 despite the fact that those accounts were acquired with HASelect loan proceeds and were subject to HASelect perfected security interest.  *See* Excerpts of Transcript of Rule 2004 Examination of Oliver Hemmers attached hereto as Exhibit 3 ("Q: And it may have not been clear earlier, but I believe I asked you if any accounts in which HASelect held a security interest were sold to any other party, and I thought you had told me no. So just -- A: Under the blanket UCC[?]  Q: Yes, under the blanket UCC.  A: Yeah.  In that case the Tecumseh receivables were the only ones that fall in that category.").

[5] *See* NRS 104.9318(2) ("For purposes of determining the rights of creditors of ... a debtor that has sold an account ..., while the buyer's security interest is unperfected, the debtor is deemed to have rights and title to the account ... identical to those the debtor sold.")  Further explanation as to why Tecumseh's claim to ownership of the Tecumseh's receivables is subject to HASelect's perfected security interest and avoidable pursuant to the Trustee's "strong arm" powers under 11 U.S.C. § 544(a) can be found at ECF No. 64.

[6] *See* ECF No. 18.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

limiting its right to credit bid.  HASelect should be allowed to credit bid as proposed.  Tecumseh's arguments to the contrary are not persuasive.

DATED this 20th day of December 2021.

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**CERTIFICATE OF SERVICE**

1.      On December 20, 2021, I served the following document(s): JOINDER TO CHAPTER 7 TRUSTEE'S REPLY IN SUPPORT OF MOTION TO SELL AND SET PROCEDURES.

2.      I served the above document(s) by the following means to the persons as listed below:

☒       a.      ECF System:

ROBERT E. ATKINSON
Robert@ch7.vegas, TrusteeECF@ch7.vegas;ecf.alert+atkinson@titlexi.com

CLARISSE L. CRISOSTOMO on behalf of Trustee ROBERT E. ATKINSON
clarisse@nv-lawfirm.com, bknotices@nv-lawfirm.com

GERALD M GORDON on behalf of Creditor TECUMSEH - INFINITY MEDICAL
RECEIVABLES FUND, LP
ggordon@gtg.legal, bknotices@gtg.legal

GABRIELLE A. HAMM on behalf of Creditor TECUMSEH - INFINITY MEDICAL
RECEIVABLES FUND, LP
ghamm@Gtg.legal, bknotices@gtg.legal

BRADFORD IRELAN on behalf of Creditor HEALTHPLUS IMAGINING OF TEXAS,
LLC
birelan@imtexaslaw.com,
jstephens@imtexaslaw.com;dhall@imtexaslaw.com;ynguyen@imtexaslaw.com

DAVID MINCIN on behalf of Creditor HEALTHPLUS IMAGINING OF TEXAS, LLC
dmincin@mincinlaw.com, cburke@mincinlaw.com

MICHAEL D. NAPOLI on behalf of Creditor TECUMSEH - INFINITY MEDICAL
RECEIVABLES FUND, LP
michael.napoli@akerman.com,
cindy.ferguson@akerman.com;catherine.kretzschmar@akerman.com;laura.taveras@akerman.com;masterdocketlit@akerman.com;teresa.barrera@akerman.com

TRENT L. RICHARDS on behalf of Creditor THE INJURY SPECIALISTS
trichards@sagebrushlawyers.com

ARIEL E. STERN on behalf of Creditor TECUMSEH - INFINITY MEDICAL
RECEIVABLES FUND, LP
ariel.stern@akerman.com, akermanlas@akerman.com

U.S. TRUSTEE - LV - 7
USTPRegion17.LV.ECF@usdoj.gov

MATTHEW C. ZIRZOW on behalf of Debtor INFINITY CAPITAL MANAGEMENT,
INC.
mzirzow@lzlawnv.com;
carey@lzlawnv.com;trish@lzlawnv.com;jennifer@lzlawnv.com;zirzow.matthewc.r99681@notify.bestcase.com

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

☐    b.    United States mail, postage fully prepaid:

☐    c.    Personal Service:

I personally delivered the document(s) to the persons at these addresses:

☐    For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐    For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐    d.    By direct email (as opposed to through the ECF System): Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐    e.    By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐    f.    By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 20, 2021.

By: /s/ *Bart K. Larsen, Esq,*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

# EXHIBIT 1

Anne Pantelas                                          In re: Infinity Capital Management, Inc.

Page 1

1                    UNITED STATES BANKRUPTCY COURT

2                        DISTRICT OF NEVADA

3

4

5
     In re:                              )
6                                        )
          INFINITY CAPITAL MANAGEMENT, INC.  )    Case No.
7                                        )    21-14486-abl
                              Debtor.    )    Chapter 7
8    _____)

9

10

11

12

13

14              RULE 2004 EXAMINATION OF ANNE PANTELAS

15                          Volume I

16                 [via web videoconference]

17

18              Taken on Tuesday, November 9, 2021
                  by a Certified Court Reporter
                        At 10:44 a.m.
19                 Held in Las Vegas, Nevada

20

21

22

23

24

25          Reported by:  Ellen A. Goldstein, CCR 829

Anne Pantelas                                                    In re: Infinity Capital Management, Inc.

```
                                                                    Page 2
 1    A P P E A R A N C E S (via web videoconference):

 2
           For the Debtor INFINITY CAPITAL MANAGEMENT, INC.:
 3
                    MATTHEW C. ZIRZOW, ESQ.
 4                  LARSON & ZIRZOW
                    850 East Bonneville Avenue
 5                  Las Vegas, Nevada  89101
                    (702)382-1170
 6                  mzirzow@lzlawnv.com

 7         For HASELECT - MEDICAL RECEIVABLES LITIGATION
                    FINANCE FUND INTERNATIONAL SP:
 8
                    BART K. LARSEN, ESQ.
 9                  SHEA LARSEN
                    1731 Village Center Circle
10                  Suite 150
                    Las Vegas, Nevada  89134
11                  (702)471-7432
                    blarsen@shea.law
12
          For TECUMSEH - INFINITY MEDICAL RECEIVABLES
13                  FUND, LP:

14                  MICHAEL D. NAPOLI, ESQ.
                    AKERMAN, LLP
15                  2001 Ross Avenue
                    Suite 3600
16                  Dallas, Texas  75201
                    (214)720-4300
17                  michael.napoli@akerman.com

18         For HEALTHPLUS IMAGING OF TEXAS, LLC:

19                  JACOB M. STEPHENS, ESQ.
                    IRELAN MC DANIEL
20                  2520 Caroline Street
                    Second floor
21                  Houston, Texas  77004
                    (713)222-7666
22                  jstephens@imtexaslaw.com

23         Also present:

24                  Igor Shleypak, Mike Griffin, Debra
                    Griffin, James Gallagher, Christopher
25                  Stewart, Oliver Hemmers
```

Anne Pantelas                                    In re: Infinity Capital Management, Inc.

```
                                                              Page  3
   1                      I N D E X

   2

   3    WITNESS                                                  PAGE

   4    ANNE PANTELAS

   5         Examination by MR. LARSEN                              5

   6

   7

   8
                         E X H I B I T S
   9

  10    NUMBER           DESCRIPTION                             PAGE

  11    Exhibit 1        Infinity Capital Management             24
                         bankruptcy schedules
  12
        Exhibit 2        Account Register Printable View         34
  13                     for business checking account
                         xxxxx6375
  14
        Exhibit 4        April 2019 email chain                  38
  15
        Exhibit 5        7-13-21 Wire Detail Report -            36
  16                     Infinity Capital Management

  17    Exhibit 6        Balance Sheet of Infinity               44
                         Capital Management as of
  18                     12-31-20

  19    Exhibit 7        September 2021 email chain with         66
                         attachments
  20
        Exhibit 8        12-26-19 email with attachment          75
  21                     (CONFIDENTIAL INFINITY 002678
                          to 002679)
  22
        Exhibit 10       3-18-20 email with attachment           68
  23                     (CONFIDENTIAL INFINITY 002402
                          to 002404)
  24

  25
```

Anne Pantelas                                              In re: Infinity Capital Management, Inc.

Page 4

1    I N D E X   (continued)

2    NUMBER          DESCRIPTION                        PAGE

3    Exhibit 12      Emails among Anne Pantelas,         104
                     Oliver Hemmers, and Stephen
4                    Hodgkinson

5    Exhibit 13      8-23-19 email with attachments      108
                     (CONFIDENTIAL INFINITY 003491
6                     to 003503)

7    Exhibit 14      6-30-21 letter from Bradford         90
                     Irelan to Dan McNutt
8
     Exhibit 15      7-9-20 email with attachment        100
9                    (CONFIDENTIAL INFINITY 000984
                      to 000987)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OASIS
REPORTING SERVICES

Anne Pantelas                                    In re: Infinity Capital Management, Inc.

Page 66

1    it on the screen.  This is Exhibit 7 from the Dropbox

2    folder, and I'll represent to you this is just one of

3    hundreds of similar emails that were included in the

4    out-box folder we received for your Infinity email

5    account.  I've redacted the name of the patient and taken

6    out some pages that were related to medical records just

7    to avoid putting that information out there.  What I

8    wanted you to look at, if we go to the final few pages

9    here, we have an Assignment of Benefits/Medical Lien and

10   Security Agreement.  Can you see that document?

11        A    Yes.

12        Q    And is this a document that Infinity would

13   require be executed in connection with all of the

14   accounts or treatments that it purchased?

15        A    Yes.  There was always a letter of protection

16   that needed to be executed, you know, for any date of

17   accident.

18        Q    Okay.  So this particular assignment would

19   relate to -- would it relate to multiple treatments

20   relating to the same patient or would a separate one be

21   signed for each treatment?

22        A    In the majority of cases, it would relate to

23   multiple providers.

24        Q    This particular one references an accident that

25   occurred, it looks like, on May 22nd of 2021.  Is that



Anne Pantelas                                    In re: Infinity Capital Management, Inc.

Page 67

1    correct?

2        A    It looks like it, yes.

3        Q    Was this a standard form that Infinity was

4    using at that time to document these agreements?

5        A    Yes, it was a standard-form letter of

6    protection.

7        Q    To your knowledge, is there any variation of

8    this form that was used within the last, say, two years

9    by Infinity to document these agreements?

10        A    For the most part it was similar.  I don't know

11    if there was slight variations, but overall.

12        Q    Was there any version of this form that you're

13    aware of that was used in the last two years by Infinity

14    in which, you know, Infinity was not identified as the

15    party receiving the assignment?

16        A    No, no.

17        Q    Who at Infinity was responsible for making sure

18    that this document was signed when an account was

19    purchased?

20        A    One of the intake team that worked for

21    Infinity.

22        Q    Would the signed versions of these agreements

23    all be saved within the case-management software you

24    mentioned earlier?

25        A    Yes, and physically and on the computers

Anne Pantelas                                      In re: Infinity Capital Management, Inc.

Page 68

1   digitally.

2        Q     I'm going to put another document up on the

3   screen.  It's Exhibit 10 from the Dropbox folder.  We

4   have an email from Oliver to Bill at FTM Investments

5   referencing a spreadsheet that identifies what is owed to

6   FTM for expired Promissory Notes.  Do you see that?

7        A     Yes, I see the email.

8        Q     And if we go to the second page -- let me see

9   if I can make that a little smaller -- we have a list of

10  notes here, various amounts.  With respect to the first

11  seven, there's a reference to Coastal on the right-hand

12  side of the page.  Do you see that?

13       A     Uh-huh, yes.

14       Q     Would those be those notes we referenced

15  earlier, or that you referenced earlier, where FTM would

16  advance funds to Coastal to be loaned to Infinity?

17       A     To the best of my knowledge, yes.

18       Q     And then the final item there, No. 8,

19  references "Class CFM - Nevada," and there, rather than

20  Coastal, there's a reference to Infinity.  Do you know

21  what that relates to?

22       A     No, I don't.

23       Q     If you look down below, there's a statement

24  there that the $253,700 did not go through Coastal

25  Investments.



—

Anne Pantelas                                          In re: Infinity Capital Management, Inc.

Page 116

1                    REPORTER'S CERTIFICATE

2

3            I, Ellen A. Goldstein, a duly certified court
reporter in and for the County of Clark, State of Nevada,
4    do hereby certify:

5            That I reported the taking of the Rule 2004
Examination of ANNE PANTELAS at the time and place
6    aforesaid;

7            That prior to being examined, the witness was
by me duly sworn to testify to the truth, the whole truth
8    and nothing but the truth;

9            That the witness did not request, nor was it
requested on her behalf, to read and sign the transcript
10   herewith;

11           That I thereafter transcribed my shorthand
notes into typewriting and that the typed transcript of
12   said Rule 2004 Examination is a complete, true and
accurate transcription of my shorthand notes taken down
13   at the proceedings.

14           I further certify that I am not a relative or
employee of an attorney or counsel of any of the parties,
15   nor a relative or employee of any attorney or counsel
involved in said action, nor a person financially
16   interested in the action.

17           IN WITNESS THEREOF, I have hereunto set my hand
in the County of Clark, State of Nevada, this 17th day of
18   November 2021.

19

20   _____
     Ellen A. Goldstein, CCR No. 829
21

22

23

24

25

# **EXHIBIT 2**

## ASSIGNMENT AND BILL OF SALE

THIS ASSIGNMENT AND BILL OF SALE ("Assignment") is made as of the 30 day of September 2020, by the undersigned ("Seller"), in favor **Tecumseh-Infinity Medical Receivables Fund, LP**, a Delaware limited partnership ("Tecumseh"). Any reference to the "Parties" shall mean both Seller and Tecumseh.

### RECITALS

A.     Seller purchased certain accounts receivable on behalf of Tecumseh and in reliance to Tecumseh providing assurance it would purchase said Accounts Receivable from Seller. Such accounts receivable are listed on Exhibit "A" attached hereto and made part hereof ("Accounts Receivable").

B.     Seller is currently in possession of said Accounts Receivable and desires to transfer to Tecumseh said Accounts Receivable upon payment of same from Tecumseh.

C.     Tecumseh desires to receive said Accounts Receivable from Seller and pay Seller for same.

D.     Pursuant to this Assignment and Bill of Sale and prior agreements of the Parties, Seller hereby agrees to sell, transfer, convey and assign to Tecumseh all of Seller's right, title and interest in and to the Accounts Receivable pursuant to the terms of this Assignment and Bill of Sale.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller agrees as follows:

1.     Tecumseh agrees to pay to Seller the amount of **$46,291.50** which equals the consideration paid by Seller for said Accounts Receivable (the "Purchase Price").

2.     At such time as Seller receives the Purchase Price paid in immediately available funds, Seller agrees to immediately assign, give, grant, bargain, sell, transfer, set over, convey, and deliver to Tecumseh, free and clear of all liens and encumbrances, all of the Accounts Receivable.

3.     Seller hereby agrees to assign to Tecumseh all of Seller's right, title and interest in and to all Seller's rights to any warranties and indemnities received by Seller from third parties affecting the Accounts Receivable transferred to Tecumseh pursuant to this Assignment and Bill of Sale.

4.     Seller covenants that Seller shall, at any time and from time to time upon written request therefor, execute and deliver to Tecumseh such documents and instruments as Tecumseh may reasonably request in order to fully assign, transfer and vest the Accounts Receivable in Tecumseh.

5.     This Assignment and Bill of Sale shall be binding upon and inure to the benefit of the successors and assigns of Tecumseh and Seller.

**CONFIDENTIAL INFINITY000364**



6.    The covenants, warranties and agreements of Seller contained herein shall survive this Assignment and Bill of Sale.

7.    This Assignment and Bill of Sale shall be governed by, interpreted under, and construed in accordance with, the laws of the State of Nevada and the County of Clark, shall be the exclusive venue for any action brought by Tecumseh or Seller in any way connected with or related to this Assignment and Bill of Sale.

8.    This Assignment and Bill of Sale may be signed in counterparts with each being deemed an original.

IN WITNESS WHEREOF, the Parties have executed and delivered this Assignment and Bill of Sale to as of the date first set forth above.

SELLER:                                                     TECUMSEH:

INFINITY CAPITAL MANAGEMENT, INC.,         TECUMSEH-INFINITY MEDICAL
a Nevada corporation                                   RECEIVABLES FUND, LP,
                                                              a Delaware limited partnership

By: _____              By: _____
     Anne Pantelas, President                            _____, its _____

STATE OF NEVADA         )
                                    )SS
COUNTY OF CLARK          )

TONI LAIRD-WISE
Notary Public - State of Nevada
County of Clark
APPT. NO. 15-3393-1
My App. Expires Nov. 20, 2023

          This instrument was acknowledged before me on  October 2, 2020  , by Anne
Pantelas as President of Infinity Capital Management, Inc.

                                                    _____
                                                    NOTARY PUBLIC

STATE OF _____         )
                                    )SS
COUNTY OF _____          )

          This instrument was acknowledged before me on _____, by
_____ as _____ of Tecumseh-Infinity Medical Receivables Fund,
LP, a Delaware limited partnership.

                                                    _____
                                                    NOTARY PUBLIC

CONFIDENTIAL INFINITY000365



Exhibit "A"

Accounts Receivable

CONFIDENTIAL INFINITY000366





CONFIDENTIAL INFINITY000367



**TECUMSEH**

> ## RECEIVABLES PURCHASE ORDER

> **PO #: 1-RO-9-16**

## TECUMSEH – Infinity Medical Receivables Fund, LP

DATE: 30 September 2020

> ## To: Infinity Capital Management

Reference: Series #1 – Roll Over Funding

| Qty. - USD | Description |
|---|---|
| | STANDING PURCHASE ORDER for September 2020 |
| 46,291.50 | Medical receivables to be purchased using rolled over funds |
| | |
| 9258.30 | Acquisition/Service fees |
| | |
| | |
| | |
| $55,549.80 | **TOTAL** |

*Michael Belotz*

Signature

**CONFIDENTIAL INFINITY000368**





**TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP**
5888 MORRIS HUNT DR
FORT MILL SC 29708-6571

1001
66-19/530 IIC
03700

DATE 09.30.2020

PAY TO THE ORDER OF _Infinity Capital Management_  $ 55,549.80

_Fifty-five thousand five hundred forty nine_ 80/100 DOLLARS

BANK OF AMERICA
ACH R/T 053000198

FOR _Tecumseh Batch G._



## NEVADA STATE BANK
THE DOOR TO YOUR FUTURE

Home Financing*
Credit Cards*
Loans & Credit Lines*
Business Lending*

Equal Housing Lender
Zions Bancorporation, N.A. NMLS# 467014
A division of Zions Bancorporation, N.A. Member FDIC
*Upon approved credit, restrictions apply.

| DDA Deposit | 6375 09/30/20 | C |
| Deposit Amt. | $55,549.80 | |
| Cash In Amt | | $0.00 |
| Cash Out Amt | | $0.00 |
| 904 04 | 4559 12:27 | |

The amount reflected on this transaction receipt is subject to verification. TEL 0002 (02/20)

**CONFIDENTIAL INFINITY000369**



# EXHIBIT 3

Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

Page 1

1                  UNITED STATES BANKRUPTCY COURT

2                       DISTRICT OF NEVADA

3

4

5
     In re:                                   )
6                                             )
           INFINITY CAPITAL MANAGEMENT, INC.  )     Case No.
7                                             )     21-14486-abl
                               Debtor.        )     Chapter 7
8    _____)

9

10

11

12

13

14          RULE 2004 EXAMINATION OF OLIVER HEMMERS

15                        Volume I

16               [via web videoconference]

17

18          Taken on Wednesday, November 10, 2021
                 by a Certified Court Reporter
                      At 9:03 a.m.
19               Held in Las Vegas, Nevada

20

21

22

23

24

25          Reported by:  Ellen A. Goldstein, CCR 829

OASIS
REPORTING SERVICES

Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

```
                                                                Page 2
 1    A P P E A R A N C E S (via web videoconference):

 2

 3          For the Debtor INFINITY CAPITAL MANAGEMENT, INC.:

 4                    MATTHEW C. ZIRZOW, ESQ.
                      LARSON & ZIRZOW
 5                    850 East Bonneville Avenue
                      Las Vegas, Nevada  89101
 6                    (702)382-1170
                      mzirzow@lzlawnv.com
 7
            For HA SELECT - MEDICAL RECEIVABLES LITIGATION
 8                    FINANCE FUND INTERNATIONAL SP:

 9                    BART K. LARSEN, ESQ.
                      SHEA LARSEN
10                    1731 Village Center Circle
                      Suite 150
11                    Las Vegas, Nevada  89134
                      (702)471-7432
12                    blarsen@shea.law

13           For TECUMSEH - INFINITY MEDICAL RECEIVABLES
                      FUND, LP:
14
                      MICHAEL D. NAPOLI, ESQ.
15                    AKERMAN, LLP
                      2001 Ross Avenue
16                    Suite 3600
                      Dallas, Texas  75201
17                    (214)720-4300
                      michael.napoli@akerman.com
18
            For HEALTHPLUS IMAGING OF TEXAS, LLC:
19
                      JACOB M. STEPHENS, ESQ.
20                    IRELAN MC DANIEL
                      2520 Caroline Street
21                    Second floor
                      Houston, Texas  77004
22                    (713)222-7666
                      jstephens@imtexaslaw.com
23
            Also present:
24
                      Igor Shleypak, Mike Griffin, Debra
25                    Griffin, James Gallagher, Christopher
                      Stewart
```

Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

Page 3

```
 1                    I N D E X

 2

 3   WITNESS                                              PAGE

 4   OLIVER HEMMERS

 5        Examination by MR. LARSEN                          6

 6

 7

 8                    E X H I B I T S
 9

10   NUMBER           DESCRIPTION                        PAGE

11   Exhibit 1        Infinity Capital Management          78
                      bankruptcy schedules
12
     Exhibit 2        Account Register Printable View      83
13                    for business checking account
                      xxxxx6375
14
     Exhibit 6        Balance Sheet of Infinity            92
15                    Capital Management as of
                      12-31-20
16
     Exhibit 8        12-26-19 email with attachment       70
17                    (CONFIDENTIAL INFINITY 002678
                       to 002679)
18
     Exhibit 11       6-2-20 email chain                   97
19                    (CONFIDENTIAL INFINITY 001602)

20   Exhibit 13       8-23-19 email with attachments       18
                      (CONFIDENTIAL INFINITY 003491
21                     to 003503)

22   Exhibit 15       7-9-20 email with attachment         16
                      (CONFIDENTIAL INFINITY 000984
23                     to 000987)

24   Exhibit 16       11-14-19 Purchase and Sale           64
                      Agreement
25
```

Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

```
                                                              Page  4
   1      I N D E X   (continued)

   2

   3      NUMBER              DESCRIPTION                        PAGE

   4      Exhibit 17    6-18-20 Sub-advisory Agreement            102
                        Tecumseh - Infinity Medical
   5                    Receivables Fund, LP
                        (TIF_0000334 to TIF_0000341)
   6
          Exhibit 18    2-26-19 email chain                       108
   7                    (CONFIDENTIAL INFINITY 004704)

   8      Exhibit 19    7-19-21 email                             143

   9      Exhibit 20    6-27-21 email                             135

  10      Exhibit 21    4-19-21 email                             133

  11      Exhibit 22    6-17-21 email                             141

  12      Exhibit 23    6-27-21 email                             140

  13      Exhibit 24    10-22-20 email chain                      120
                        (CONFIDENTIAL INFINITY 002766
  14                     to 002767)

  15      Exhibit 25    6-23-20 email chain                       110
                        (CONFIDENTIAL INFINITY 001134
  16                     to 001135)

  17      Exhibit 26    12-10-20 email with attachment            127
                        (CONFIDENTIAL INFINITY 000038
  18                     to 000058)

  19      Exhibit 27    11-6-20 email  (CONFIDENTIAL              132
                        INFINITY 000162)
  20
          Exhibit 28    12-13-20 email with attachment            129
  21                    (CONFIDENTIAL INFINITY 000024
                         to 000026)
  22
          Exhibit 29    9-2-20 email chain                        125
  23                    (CONFIDENTIAL INFINITY 000438
                         to 000440)
  24

  25
```

Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

Page 108

1    information necessary to do that accounting as of

2    September 14th of 2021?

3         A    Yes.

4         Q    So even if you couldn't personally do it,

5    somebody at Infinity or an accountant on behalf of

6    Infinity could have used the books and records that it

7    had in its possession at that time and arrived at that

8    number?

9         A    Yeah.  I think Infinity probably was the best

10   to determine that number for that particular amount, but

11   I don't think anybody did it.

12        Q    Let's look at another document.  This document

13   is in the Dropbox as Exhibit 18.  It's a series of emails

14   that were exchanged between you and Endre at FTM.  This

15   was around the inception of the dividing relationship

16   between Infinity and HASelect.  It's referencing, you

17   know, placing stamps on certain documents.  Can you tell

18   me what that relates to?

19        A    Yes.  It was agreed on putting electronic

20   stamps, using mostly Adobe Acrobat stamping features, on

21   the liens that were related to the receivables that

22   Infinity purchased and that was a collateral of the

23   HedgeACT loans.  So this way, on the collection, it would

24   be immediately visible that those liens were funded -- or

25   the receivables under those liens were funded -- by



Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

Page 109

1    HedgeACT.

2         Q    Were the documents that were stamped, or were

3    contemplated being stamped, documents that would have

4    been retained by Infinity or are they documents that

5    would have been shared with third parties?

6         A    Well, those documents were all retained by

7    Infinity in the database; right?  It was -- usually it

8    did not really need to share any documents with attorneys

9    that had outstanding liens.  They would know, "Okay, we

10   have this with Infinity."  They would contact Infinity

11   and say, "What is the outstanding amount," and there

12   would be effectively a simple communication.  Now that we

13   had all the supporting documents and they needed that

14   maybe for the court dockets, we could provide those to

15   them when they needed to go to court so they could

16   prewrite the package, but on a lot of cases they didn't

17   require any documents.

18        Q    And it looks, based on the top email here, that

19   there was an agreement that electronic stamps could be

20   used.  Is that correct?

21        A    Yes.  We kind of discussed that for a while if

22   we do that with an ink stamp or electronic, and it was

23   decided to go with an electronic stamp that Infinity

24   designed.  We sent that to everybody and HedgeACT, and

25   they looked at it and approved that; and moving forward,



Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

Page 110

1    the liens that were related to funded receivables were

2    kind of stamped with that.

3         Q    And as I understand it, that stamp was

4    primarily intended as a sort of an internal control to

5    let Infinity employees know where payment needed to be

6    directed when it came in.  Is that correct?

7         A    Yeah, it was a control, but it -- you know, in

8    the end, when a check came in, we used the database to

9    effectively do all the calculations and nobody looked at

10   the liens at that point; right?  Like I said, the

11   liens -- that would be only necessary if you would kind

12   of want to now take all documents and you want to find,

13   okay, which page has a lien and a stamp and put that on

14   piles; right?  That's kind of -- from the work flow, it

15   didn't really make a difference.

16        Q    Let me put up another document here.  It's

17   Exhibit 25 from the Dropbox.  It's another series of

18   emails between you and Endre, it appears.  These are from

19   June of 2020, and these seem to reference removing stamps

20   from documents.  Do you see these emails?

21        A    Yeah.

22        Q    Do these emails relate to the same stamps that

23   were referenced in the prior email we looked at?

24        A    Yeah.  That was -- that was from the time when

25   we had the transition, because they would only actually



Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

Page 111

1    get stamped when the funding was used from HASelect to

2    purchase those related receivables.  By June 2020 we had

3    a whole bunch of receivables that Infinity was holding

4    that was not related to any loans from HASelect and that

5    those were effectively -- had stamps on them because

6    people who processed it in Infinity put those on

7    automatically, but it was not part of any of the draws or

8    collateral to any of those draws, and therefore we were

9    discussing removing those stamps again.

10        Q    And when you say it's not collateral, did you

11   understand at that time in June of 2020 that HASelect

12   held a security interest in all of the accounts

13   receivable owned by Infinity regardless whether they were

14   tied to any particular draw or not?

15        A    Well, we kind of -- I was under the impression

16   not -- we kind of got some advice from a couple of

17   attorneys and they thought that should not be an issue.

18   But I'm not an attorney.  I can only kind of take advice,

19   and I knew about the blanket UCC and the current

20   situation and that HedgeACT was not providing any funding

21   for loans on receivables.  So that's why we decided to

22   have Tecumseh purchase those.

23        Q    So these are receivables that were already held

24   by Infinity that you believed had been somehow released

25   from HASelect's security interest that were then sold to



Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

Page 112

1    Tecumseh?  Do I have that right?

2        A    That was at the time the process, yeah, in June

3    of 2020.

4        Q    Okay.  And I mean would it be reflected

5    anywhere in Infinity's books and records which particular

6    accounts were sold to Tecumseh at that time?

7        A    It should be.  Should be in the accounting

8    software and in the database.

9        Q    And it may have not been clear earlier, but I

10   believe I asked you if any accounts in which HASelect

11   held a security interest were sold to any other party,

12   and I thought you had told me no.  So just --

13       A    Under the blanket UCC.

14       Q    Yes, under the blanket UCC.

15       A    Yeah.  In that case the Tecumseh receivables

16   were the only ones that fall in that category.

17       Q    Do you have any recollection of the approximate

18   amount that Infinity received from the sale of those

19   receivables?

20       A    It was the 20 percent fee on top of the cost

21   that -- effectively the amount paid to the medical

22   providers.

23       Q    Was there any overhead or brokerage fee built

24   into that?

25       A    Yeah.  The 20 percent included all that.



Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

Page 113

1     Q    Where did Infinity get the money to purchase

2  those accounts before they were sold to Tecumseh?

3     A    They were paid from -- paid from the overhead

4  account, to the best of my knowledge.

5     Q    The overhead account, is that the Nevada State

6  Bank account that we've been talking about, the one that

7  has the 6375?

8     A    Yeah.  And you have to look at it more like as

9  a process.  At the time Infinity received receivables to

10  review and fund on a daily basis, maybe 20 receivables

11  let's say, and Infinity was always paying for those in

12  advance.  At the end of the month we would then receive

13  the loan on the next draw from HASelect.  So Infinity

14  was always prepaying all the receivables, then HASelect

15  gave us the loan from that month's draw at the end of the

16  month, and after that we kind of started to do the next

17  month.  We did that for 22 months and HASelect issued a

18  Notice of Default and stopped funding us in May of 2020.

19          So now we're sitting on a bunch of receivables

20  that we would not get any more loans from or the next

21  draw from HASelect, and according to the agreement, they

22  had the first right of refusal and we could get other

23  funding if we choose to when they refuse.  That's how I

24  understood that loan agreement and it was confirmed by

25  our attorneys.  And so we didn't see anything wrong in

OASIS
REPORTING SERVICES

Oliver Hemmers                                    In re: Infinity Capital Management, Inc.

Page 114

1    proceeding and taking the money and selling it

2    effectively off to Tecumseh.

3        Q    These were receivables that were already owned

4    by Infinity, not new receivables being purchased with

5    Tecumseh's money; correct?

6        A    Yes.

7        Q    And you understood that HAS was not going to

8    release another draw and advance additional funding based

9    on receivables that Infinity already owned; correct?

10        A    Usually they gave us every month at the end of

11    the month forward.  We owned money; right?  That was kind

12    of the process.  Now instead of money, we received a

13    Notice of Default that effectively would stop funding for

14    May, and so we could not -- you know, we tried to resolve

15    that and in June Tecumseh offered to buy receivables from

16    us.

17        Q    By that point you had been discussing a

18    relationship with Tecumseh for several months already;

19    correct?

20        A    We discussed a new structure, yeah, since -- I

21    don't know -- February or March; right?  They kind of --

22    it always takes a while to build up new relationships and

23    see if anything would work, but we did not sign anything

24    with them beyond discussing things with them until almost

25    a month after we received the Notice of Default from



Oliver Hemmers                                          In re: Infinity Capital Management, Inc.

Page 162

1                          REPORTER'S CERTIFICATE

2

3              I, Ellen A. Goldstein, a duly certified court
reporter in and for the County of Clark, State of Nevada,
4   do hereby certify:

5              That I reported the taking of the Rule 2004
examination of OLIVER HEMMERS at the time and place
6   aforesaid;

7              That prior to being examined, the witness was
by me duly sworn to testify to the truth, the whole truth
8   and nothing but the truth;

9              That the witness did not request, nor was it
requested on his behalf, to read and sign the transcript
10  herewith;

11             That I thereafter transcribed my shorthand
notes into typewriting and that the typed transcript of
12  said Rule 2004 examination is a complete, true and
accurate transcription of my shorthand notes taken down
13  at the proceedings.

14             I further certify that I am not a relative or
employee of an attorney or counsel of any of the parties,
15  nor a relative or employee of any attorney or counsel
involved in said action, nor a person financially
16  interested in the action.

17             IN WITNESS THEREOF, I have hereunto set my hand
in the County of Clark, State of Nevada, this 20th day of
18  November 2021.

19

20  _____
    Ellen A. Goldstein, CCR No. 829

21

22

23

24

25