_____
Honorable August B. Landis
United States Bankruptcy Judge

Entered on Docket
February 11, 2022

CLARISSE L. CRISOSTOMO, ESQ., Bar No. 15526
Email: clarisse@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E Warm Springs Rd, Suite 130
Las Vegas, NV 89119
Telephone: (702) 614-0600
*Attorney for Robert E. Atkinson, Trustee*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.<br>*dba* INFINITY HEALTH CONNECTIONS,<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7<br><br>**ORDER APPROVING SALE**<br><br>Hearing Date: February 8, 2022<br>Hearing Time: 1:30 p.m. |

A sale/auction hearing came on before the Court on February 8, 2022 at 1:30 p.m. ("***Sale Hearing***"). Appearances at the Sale Hearing were as noted in the record.

The chapter 7 trustee ("***Trustee***") had sought approval of the sale of certain assets to buyer HASelect-Medical Receivables Litigation Finance Fund International SP ("***HASelect***") for $100,000.00 and on the other terms and conditions of the Asset Purchase agreement ("***APA***") attached as Exhibit 1 to the Trustee's motion to approve sale [DE #145] ("***Sale Motion***"), subject to overbid at auction pursuant to certain bid procedures ("***Procedures***").

-1-

The specific assets being sold hereunder are:

1) Whatever interest the Bankruptcy Estate has in the Tecumseh Receivables (inclusive of the monies from the TIF Checks, and the monies from the TIF+HAS Checks), if any, and subject to the rights, title, and interests that Tecumseh-Infinity Medical Receivables Fund, LP ("*Tecumseh*") may have in this property, if any.

2) All claims and causes of action that could be brought by the Trustee or the Bankruptcy Estate against any third party relating in any way to the Tecumseh Receivables, pursuant to (i) chapter five of title 11 of the United States Code, or (ii) all applicable or relevant state or federal laws (collectively, the "*Claims*").  For avoidance of doubt, the Claims include, but are not limited to, all causes of action that could be brought by the Trustee pursuant to Sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the United States Bankruptcy Code for any matter relating in any way to the Tecumseh Receivables.

3) All books and records related to the foregoing that the Bankruptcy Estate currently has in its possession, in whatever form and wherever located.

(collectively, the "*Assets*").[1]

The Sale Hearing was held pursuant to prior Court order entitled ORDER GRANTING IN PART, AND DENYING IN PART, THE TRUSTEE'S MOTION TO: (I) APPROVE SALE OF CERTAIN ASSETS; (II) SET SALE/AUCTION PROCEDURES; AND (III) SET AUCTION HEARING DATE [DE #175] ("*Sale Procedures Order*").

At the Sale Hearing, the Trustee informed the Court: (i) that a new servicer for the Tecumseh Receivables was now in place[2]; and (ii) that no overbidders had pre-qualified to bid

---

[1] The term "*Tecumseh Receivables*" is as defined in Tecumseh – Infinity Medical Receivable Fund, LP's Objection to Joint Motion to Approve Abandonment of Collateral [ECF No. 82] and as identified in Exhibit A and, to the extent marked as assigned to Tecumseh, Exhibit B to the Meyer Declaration [ECF No. 59], as well as any records relating exclusively thereto or any proceeds thereof.  The term "Tecumseh Receivables" shall also include any modification or substitution of that Exhibit A and Exhibit B allowed by the Court pursuant to Tecumseh's Motion to Allow Amendment of Declaration [DE #177]. The term "*TIF Checks*" shall include all funds received from checks from certain of the Tecumseh Receivables, and as deposited by the Trustee in a segregated estate account (ending x3146), currently in the amount of $115,842.90.  The term "*TIF + HAS Checks*" shall include all funds received from checks from certain other receivables that include Tecumseh Receivables, and as deposited by the Trustee in a segregated estate account (ending x3154), currently in the amount of $23,900.00.

[2] The accounts are being serviced by TPL Claims Management, LLC ("*Servicer*").

pursuant to the Procedures approved in the Sale Procedures Order. The Trustee observed that therefore no auction need be held, and that the APA could simply be approved by the Court. The Trustee also renewed his request to have HASelect be deemed a good-faith purchaser and be afforded the protections of 11 U.S.C. § 363(m) as part of any approved sale.

The Court determined that, in the absence of any qualified bidder other than HASelect, no auction was necessary and that approval of the APA was in the best interests of the estate. The Court expressly found that HASelect is a good-faith purchaser of the Assets, and therefore entitled to the protections of Section 363(m).  All other findings of fact and conclusions of law orally stated by the Court at the February 8, 2022 hearing are incorporated herein pursuant to Fed. R. Civ. P. 52, as made applicable to these proceedings via Fed. R. Bankr. P. 9014(c) and 7052.  For the reasons stated by the Court on the record at the hearing,

**IT IS HEREBY ORDERED:**

1. The APA (attached hereto as **Exhibit 1**) is approved on a final basis, and the sale of the Assets to HASelect for $100,000.00 is approved.  HASelect shall promptly remit the entire purchase price to the Trustee.

2. For avoidance of doubt, the following term contained in Section 1.04 of the APA is expressly incorporated in this order:

- Upon Court approval of the Sale, all books and records of the Debtor pertaining to the Tecumseh Receivables, wherever located and in any form, shall be turned over to HASelect, and HASelect shall be empowered to enforce said turnover against any party.

3. For avoidance of doubt, the following sale terms previously approved in the Sale Procedures Order are restated and incorporated herein:

- The sale of the Assets is free and clear of all liens, claims, and encumbrances of any third party other than HASelect and Tecumseh. The Assets are sold subject to whatever rights, title, interests, and encumbrances HASelect and Tecumseh may have in the Tecumseh Receivables. Both HASelect's and Tecumseh's interests in the Assets that existed as of the Petition Date shall remain unaffected by the sale.

- HASelect shall take the Assets in an "as-is" condition, and HASelect shall be subject to and bound by the terms found in paragraph 13 of the Sale Motion. Such terms are incorporated herein by reference.

4. The Trustee is authorized and instructed to remit the following funds to the Servicer:

- $115,842.90 in funds from the TIF Checks, as currently held in estate bank account ending x3146;

- $23,900.00 in funds from the TIF + HAS Checks, as currently held in estate bank account ending x3154; and

- Any checks or funds relating to the Tecumseh Receivables that may be received by the Trustee in the future, from any source.

Such funds are no longer property of the estate, to any extent that they ever were.

5. HASelect is hereby afforded the protections found in 11 U.S.C. § 363(m).

6. Entry of this Order on the docket of the bankruptcy case shall be sufficient evidence of the transfer of title of the Assets to HASelect. The Trustee is also authorized and empowered to execute a bill of sale or any other document consistent with this Order that may be reasonably appropriate to evidence its consummation.

7. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

**IT IS SO ORDERED.**

# # # # #

Respectfully submitted by:

   /s/ Clarisse Crisostomo
CLARISSE L. CRISOSTOMO, ESQ.
Nevada Bar No. 15526
*Attorney for Robert E. Atkinson, Trustee*

## **CERTIFICATION re: RULE 9021**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirements set forth in LR 9021(b)(1).

☐ No other party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Gabrielle A. Hamm, Esq. (*counsel for Tecumseh*) – APPROVED
Bart Larsen, Esq. (*counsel for HASelect*) – APPROVED

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # # # #

# EXHIBIT 1

# to

# ORDER

# ASSET PURCHASE AGREEMENT

This asset purchase agreement ("*Agreement*"), is made by and between seller THE BANKRUPTCY ESTATE OF INFINITY CAPITAL MANAGEMENT, INC. *dba* INFINITY HEALTH CONNECTIONS, by and through chapter 7 trustee Robert E. Atkinson ("*Bankruptcy Estate*" or "*Seller*") arising from Nevada chapter 7 bankruptcy case no. 21-14486-abl (the "*Bankruptcy Case*"), and buyer HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP, a segregated portfolio company of HedgeACT International SPC Ltd., a Cayman Islands corporation ("*HASelect*"). Together, HASelect and Seller may be referred to hereafter individually as a "*Party*" or collectively as the "*Parties*".

## RECITALS

WHEREAS, Seller is a bankruptcy estate formed by the filing of the Bankruptcy Case on September 14, 2021 ("*Petition Date*"); and

WHEREAS, Robert E. Atkinson ("*Trustee*") is the appointed chapter 7 trustee for the Bankruptcy Estate; and

WHEREAS, pre-petition, debtor Infinity Capital Management Inc. ("*Debtor*") was engaged in the business of purchasing receivables from medical providers; and

WHEREAS, HASelect is a secured creditor of the Debtor and holds a perfected security interest in substantially all personal property owned by the Debtor; and

WHEREAS, on October 15, 2021, an order was entered in the Bankruptcy Case [ECF No. 97] abandoning the Debtor's interest in certain of Debtor's collateral, which excluded the following portfolio:

- The Tecumseh Receivables as defined in Tecumseh – Infinity Medical Receivable Fund, LP's Objection to Joint Motion to Approve Abandonment of Collateral [ECF No. 82] and as identified in Exhibit A and, to the extent marked as assigned to Tecumseh, Exhibit B to the Meyer Declaration [ECF No. 59], as well as any records relating exclusively thereto or any proceeds thereof

(hereinafter, the "*Tecumseh Receivables*"); and

WHEREAS, on October 19, 2021, HASelect commenced an adversary proceeding against Tecumseh in the District of Nevada (adversary case no. 21-01167) (the "*AP Case*") seeking declaratory and injunctive relief regarding the Tecumseh Receivables; and

WHEREAS, the Trustee received from the Debtor's principal, and on October 26, 2021 were deposited into segregated estate bank accounts:

- A total of $75,402.85 in checks from certain of the Tecumseh Receivables (the "*TIF Checks*")
- A total of $13,400.00 in checks from certain other receivables that include Tecumseh Receivables (the "*TIF+HAS Checks*");

and

WHEREAS, Seller has agreed to sell the following assets to HASelect (collectively, the "*Assets*"), on the terms and conditions herein:

1) Whatever interest the Bankruptcy Estate has in the Tecumseh Receivables (inclusive of the $75,402.85 in monies from the TIF Checks, and the $13,400.00 in monies from the TIF+HAS Checks), if any, and subject to the rights, title, and interests that Tecumseh-Infinity Medical Receivables Fund, LP ("*Tecumseh*") may have in this property, if any.

2) All claims and causes of action that could be brought by the Trustee or the Bankruptcy Estate against any third party relating in any way to the Tecumseh Receivables, pursuant to (i) chapter five of title 11 of the United States Code, or (ii) all applicable or relevant state or federal laws (collectively, the "*Claims*"). For avoidance of doubt, the Claims include, but are not limited to, all causes of action that could be brought by the Trustee pursuant to Sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the United States Bankruptcy Code for any matter relating in any way to the Tecumseh Receivables.

3) All books and records related to the foregoing that the Bankruptcy Estate currently has in its possession, in whatever form and wherever located.

NOW, THEREFORE, the Parties, intending to be legally bound, do hereby agree as follows:

### ARTICLE I. SALE AND PURCHASE

Section 1.01 **Bankruptcy Court Approval Required**. The Parties acknowledge and agree that this Agreement, inclusive of the sale contemplated herein, is contingent upon Bankruptcy Court approval and may be terminated without cause by any Party at any time prior to the hearing on the Sale Motion. The Trustee shall prepare and file a motion to obtain approval of this sale, inclusive of auction procedures (the "*Sale Motion*"), and shall seek to have the Sale Motion heard on shortened time.

Section 1.02 **Purchase and Sale**. Subject to overbid at auction and all other terms and conditions of this Agreement, Seller hereby sells, assigns, and transfers the Assets to HASelect, as follows:

    a. **Purchase Price**. The purchase price for the Assets ("*Purchase Price*") is $100,000.00.

- The Purchase Price shall be new money to the estate, unsecured, and shall be available for the Trustee to use for payment of allowed administrative expenses and general unsecured claims in the Bankruptcy Case.

- The Purchase Price shall be subject to overbid, in accordance with the terms of this Agreement and any procedures that may be established by the Court.

- The Purchase Price shall be remitted to the Trustee in good funds prior to the hearing on the Motion to Sell or at such other time as the Trustee and HASelect may agree. The Trustee shall hold the funds in trust in a segregated estate account, pending final approval of the Sale.

- If HASelect is not the winning bidder at the Sale, then the Trustee shall promptly remit the Purchase Price back to HASelect.

b. **Auction**. The sale contemplated herein (the "**Sale**") shall be confirmed by the Bankruptcy Court via an auction, to be held at a date and time set by the Bankruptcy Court (the "**Auction**"). At the Auction, the Bankruptcy Court will call for overbids, in an auction format, pursuant to any procedures that may be set by the Court. An authorized representative of HASelect should attend the Auction and be prepared to overbid.

c. **Credit Bid**. Contingent upon any auction procedures that may be entered by the Court, HASelect shall be permitted to credit bid on the amounts of any of its bids in excess of the Purchase Price, up to the total amount owed shown on a proof of claim filed by HASelect in the Bankruptcy Case.

- For avoidance of doubt, if HASelect enters a bid of $150,000 and that is the winning bid, then that amount shall consist of the $100,000 Purchase Price previously remitted to the Trustee, plus a $50,000 credit bid.

- If HASelect is the winning bidder at the Auction, HASelect shall amend its proof of claim to adjust it for any portion of the winning bid that is a credit bid.

- If, at the Auction, HASelect bids more than its available credit bid, then any portion of its winning bid in excess of its available credit bid shall require the payment of new funds to the Bankruptcy Estate.

Section 1.03  **Transfer of Ownership Only Upon Court Approval of Sale**. The Sale contemplated herein shall consummate only after the Auction is held, and a court order approving the Sale to HASelect is entered on the docket of the Bankruptcy Case.

Section 1.04  **Modified Section 363(f) Sale; No Warranties**. HASelect has had an opportunity to investigate the Tecumseh Receivables and the other Assets, and agrees to purchase the Assets subject to the conditions below.

- The Assets will be sold subject to HASelect's lien, **and also** whatever rights, title, and interests that Tecumseh has in the Tecumseh Receivables, if any. Both HASelect's and Tecumseh's interests in the Assets that existed as of the Petition Date shall remain unaffected by the Sale.

- Other than HASelect and Tecumseh, the Trustee is unaware of any interest of any other third party in the Assets. As such, the Trustee agrees to sell the Assets pursuant to Section 363(f) of the Bankruptcy Code excluding these two parties, i.e., the Sale of the Assets shall be made free and clear of the liens, claims, and encumbrances of any third party other than HASelect and Tecumseh.

- HASelect waives all further due diligence in the Assets.

- HASelect is in possession of certain books and records of the Debtor relating to the Tecumseh Receivables, including computer records and paper records. The Trustee only has a list of the Tecumseh Receivables, as found in Court records. Upon Court approval of the Sale, all books and records of the Debtor pertaining to the Tecumseh Receivables, wherever located and in any form, shall be turned over to HASelect, and HASelect shall be empowered to enforce said turnover against any party.

- Seller makes no representations or warranties to HASelect whatsoever, express or

Doc ID: 4c38b2ce62a53868d9b4859730e6170ce02193fb

implied, regarding the Assets, including but not limited to the condition, value, title, or collectability of the Tecumseh Receivables.

- HASelect expressly understands and agrees that:

    (i) the Assets being sold include whatever interest the Bankruptcy Estate has in the Tecumseh Receivables (inclusive of the funds from the TIF Checks and TIF+HAS Checks), if any, and that litigation is required to determine what interest the Bankruptcy Estate had in such Assets as of the Petition Date; and

    (ii) the Bankruptcy Estate may not have any right, title, or interest in the Tecumseh Receivables.

- HASelect, not the Bankruptcy Estate or the Trustee, shall be responsible for and shall bear all fees, costs, and expenses to obtain clear title on the Assets, to service and monetize the Assets, and to prosecute the Claims purchased herein (which shall be prosecuted in HASelect's name, as successor-in-interest to the Claims).

- Upon Court approval of the Sale, the Assets shall no longer be property of the Bankruptcy Estate and neither the Trustee nor the Bankruptcy Estate shall have any obligation whatsoever regarding the Assets. **For avoidance of doubt, litigation of the dispute in the AP Case as to whether the Assets are property of the Bankruptcy Estate is not resolved by the Sale**. HASelect's claims and causes of action relating to the Tecumseh Receivables in the AP Case, along with any related counterclaims of Tecumseh regarding title to the Assets on the Petition Date, shall survive the Sale. After the Sale is consummated, neither the Trustee nor the Bankruptcy Estate shall have any obligation to prosecute or defend any dispute (in the AP Case or otherwise) regarding title to the Assets on the Petition Date.

- HASelect expressly understands and agrees that the Bankruptcy Case has not been designated an operating chapter 7 case, and that the Tecumseh Receivables have not been serviced by the Debtor or the Bankruptcy Estate since the Petition Date, and hereby waives any and all claims against the Estate and the Trustee relating to this non-servicing and any diminishment of the Assets that may have occurred prior to the Sale, if any.

### ARTICLE II. GENERAL PROVISIONS

Section 2.01  **Limitation of Liability**. Neither Party will be liable to the other for losses or damages (including special or consequential damages such as lost profits or loss of use) arising from any cause of action related to this Agreement, whether in contract, tort, or otherwise.

Section 2.02  **Assignment and Succession**. This Agreement is binding on and enforceable by each Party's successors and assignees. If HASelect is the winning bidder at the Auction, then after the Sale is consummated it may freely assign its rights and interests in and to the Assets to a third party, without further court order required.

Section 2.03  **Governing Law**. Any disputes between the Parties relating to or arising from this Agreement, of any kind or nature, shall be determined in the Bankruptcy Court, District of

Nevada, and the parties do consent to personal jurisdiction of such court.

Section 2.04    **Severability**.  If any court determines that any provision of this agreement is invalid or unenforceable, any invalidity or unenforceability will affect only that provision and will not make any other provision of this agreement invalid or unenforceable.

Section 2.05    **Full Integration**.  The Parties actively negotiated the terms of this Agreement.  This Agreement sets forth the entire agreement of the Parties as to the Receivables and the Sale.  It replaces and supersedes any and all oral agreements or statements made between the Parties relating to the Assets and the Sale, as well as any prior writings.  There are no side agreements or other agreements or contracts, oral or otherwise, between the Parties relating to the subject matter of this Agreement.  HASelect has relied solely on its own investigation and not on any oral or written information provided by Seller or its attorneys.  Neither Party have relied upon any statements other than those specifically contained in this Agreement.

Section 2.06    **Authority**.  The signatory below for each Party has the authority to bind that Party.  Both Parties have had the full opportunity to have their own legal counsel review the terms and conditions of this Agreement.

Section 2.07    **Modification**.  This Agreement may be modified only by a writing signed by all Parties.  After Bankruptcy Court approval of this Agreement, if cannot be modified without Bankruptcy Court approval of such modification.

Section 2.08    **Counterparts**.  This Agreement may be executed in a number of counterparts, each of which shall be deemed an original and all of which together shall constitute the same document.  Delivery by facsimile or email of an executed counterpart shall have the same force and effect as a delivery in person of that document.

Section 2.09    **Further Assurances**.  Each Party shall use all reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Parties in doing, all things necessary, proper or advisable to carry out the intent and purposes of this Agreement.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**THE BANKRUPTCY ESTATE OF INFINITY CAPITAL MANAGEMENT, INC. dba INFINITY HEALTH CONNECTIONS**

_[signature]_

Robert E. Atkinson, *in his capacity as chapter 7 Trustee of the Bankruptcy Estate of INFINITY CAPITAL MANAGEMENT, INC. dba INFINITY HEALTH CONNECTIONS, a Nevada corporation, Nevada Bankruptcy Case No. 21-14486-abl*

HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE
FUND INTERNATIONAL SP

By: _____/s/ Michael E Griffin_____

Printed Name: __Michael E Griffin_____

Its: __Director_____

Doc ID: 4c38b2ce62a53868d9b4859730e6170ce02193fb