GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
GABRIELLE A. HAMM
Nevada Bar No. 11588
E-mail: ghamm@gtg.legal
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000 / Fax: (725) 777-3112

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC. dba INFINITY HEALTH CONNECTIONS,<br><br>Debtor. | Case No.: 21-14486-abl<br>Chapter 7<br><br>Hearing Date: June 16, 2022<br>Hearing Time: 9:30 a.m. |

### TECUMSEH – INFINITY MEDICAL RECEIVABLE FUND, LP'S RESPONSE IN OPPOSITION TO MOTION TO COMPEL

Tecumseh – Infinity Medical Receivable Fund, LP ("**Tecumseh**") files its Response in Opposition (the "**Opposition**") to HASelect-Medical Receivables Litigation Finance Fund International LP's ("**HASelect**") Motion to Enforce Court Orders and to Compel Surrender [ECF No. 210] (the "**Motion to Compel**"). In support of its Opposition, Tecumseh states as follows:

### PRELIMINARY STATEMENT

As of the filing of this Opposition, there exists one dispute, and one dispute only: the methodology by which TPL (defined below) should allocate proceeds collected from a discrete portion of the Overlap Receivables (defined below) from receivables that, while they may belong to HASelect, also include Tecumseh Receivables (defined below). This approximately $30,000 dispute, pertaining to the proper allocation of proceeds of receivables that are no longer property of the bankruptcy estate, is <u>not</u> something this Court can or should decide.

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

63917223;3

# BACKGROUND

1. On September 22, 2021, HASelect, together with the Chapter 7 Trustee, filed a Joint Motion to Abandon Real/Personal Property [ECF No. 12]. Also on September 22, 2021, HAS filed its Motion for Relief from Stay [ECF No. 17].

2. On October 15, 2021 and October 21, 2021, the Court entered an order approving the abandonment ("**Abandonment Order**") and an order terminating the automatic stay ("**Lift Stay Order**"), respectively. [ECF Nos. 97 & 106]

3. The Abandonment Order did not alter Tecumseh's interest in the Tecumseh Receivables.[1] The Court explicitly excluded the following from abandonment:

> [t]he Tecumseh Receivables as defined in Tecumseh – Infinity Medical Receivable Fund, LP's Objection to Joint Motion to Approve Abandonment of Collateral [ECF No. 82] and as identified in Exhibit A and, to the extent marked as assigned to Tecumseh, Exhibit B to the Meyer Declaration [ECF No. 59], as well as any records relating exclusively thereto or any proceeds thereof.

Abandonment Order at ¶ 4.

4. Nor did the Lift Stay Order alter or amend Tecumseh's interest in the Tecumseh Receivables. The Lift Stay Order provides, in relevant part:

> The termination of the automatic stay ordered and directed and the relief granted herein shall specifically exclude the Tecumseh Receivables as defined in Party in Interest Tecumseh – Infinity Medical Receivable Fund, LP's ("Tecumseh") *Objection to Joint Motion to Approve Abandonment of Collateral* [ECF No. 82] ("Tecumseh Objection") and as identified in Exhibit A and, to the extent marked as assigned to Tecumseh, Exhibit B to the Meyer Declaration [ECF No. 59] as well as any records relating exclusively thereto or any proceeds thereof, and, to the extent that there are records that relate both to the [HAS] Collateral and to the Tecumseh Receivables, the Trustee will retain a copy of such records pending further order of this Court.

Lift Stay Order at ¶ 4.

5. On December 3, 2021, the Trustee filed a Motion to (I) Approve Sale of Certain Assets; (II) Set Sale/Action Procedures; and (III) Set Auction Hearing Date [ECF No. 145] in

---

[1] The term "***Tecumseh Receivables***" is as defined in Tecumseh's Objection to Joint Motion to Approve Abandonment of Collateral [ECF No. 82] and as identified in Exhibit A and, to the extent marked as assigned to Tecumseh, Exhibit B to the Meyer Declaration [ECF No. 59], as well as any records relating exclusively thereto or any proceeds thereof. The term "Tecumseh Receivables" shall also include any modification or substitution of that Exhibit A and Exhibit B allowed by the Court pursuant to Tecumseh's Motion to Allow Amendment of Declaration [ECF No. 177].

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

63917223;3

2

which the Trustee sought to sell the bankruptcy estate's right, title, and interest to the Tecumseh Receivables to HASelect (the "**Sale**").

6. The Court's Order Approving Sale [ECF No. 184] (the "**Sale Order**"), approved HASelect's purchase of "whatever interest the Bankruptcy Estate has in the Tecumseh Receivables" subject to any rights, title or interest held by Tecumseh. Sale Order at 2. In so doing, the Court made clear that no person, other than HASelect or Tecumseh (including the Trustee and the bankruptcy estate) had any further interest in the Tecumseh Receivables following the Sale:

> The sale of the Assets is free and clear of all liens, claims, and encumbrances of any third party other than HASelect and Tecumseh. The Assets are sold subject to whatever rights, title, interests, and encumbrances HASelect and Tecumseh may have in the Tecumseh Receivables. Both HASelect's and Tecumseh's interests in the Assets that existed as of the Petition Date shall remain unaffected by the sale.

*Id*. at 3.

7. To preserve the rights of HASelect and Tecumseh in the Tecumseh Receivables pending resolution of the adversary proceeding between them, the Sale was subject to the parties agreeing to retain a third party to service the Tecumseh Receivables and to escrow the proceeds thereof. *See* Court's Order Granting in Part, and Denying in Part, Trustee's Motion to: (i) Approve Sale of Certain Assets; (ii) Set Sale/Auction Procedures; and (iii) Set Auction Hearing Date [ECF No. 175] (the "**Sale Procedures Order**") at 2.

8. In compliance with the Sales Procedures Order, HASelect and Tecumseh entered into Servicing Agreement and an Escrow Agreement on or about January 31, 2022 with TPL Claims Management, LLC ("**TPL**") which provided that TPL was to service and collect the Tecumseh Receivables and to hold any proceeds thereof in escrow pending final resolution of the pending adversary proceeding. *See* Motion to Compel, Ex. 1 (Servicing Agreement). Neither the Trustee nor the bankruptcy estate was a party to the Servicing Agreement or the Escrow Agreement. Nor could they have been, as the Trustee sold whatever interest the bankruptcy estate possessed in the Tecumseh Receivables to HASelect. *See* Trustee's Report of Sale [ECF No. 191].

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

63917223;3

3

**THE DISPUTE OVER OVERLAP RECEIVABLES**

9.  The Servicing Agreement, the terms of which HASelect ostensibly seeks to enforce in its Motion to Compel,[2] is a contractual agreement entered into by and between third parties, HASelect, Tecumseh, and TPL. The Trustee is not a party to the Servicing Agreement (nor could he have been), and, as such, the agreement was not subject to Bankruptcy Court approval.

10. There is thus no retention of Bankruptcy Court jurisdiction in the Servicing Agreement. Instead, when entering into the Servicing Agreement, HASelect, Tecumseh, and TPL agreed that "any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with this Agreement may be brought exclusively in the State and United States Federal Courts located in Clark County, Nevada." Servicing Agreement at ¶ 17.

11. The Servicing Agreement further provides that TPL will only collect those receivables in the "Portfolio," which is defined in the Servicing Agreement as the Tecumseh Receivables. Servicing Agreement, at p. 1. The Portfolio includes approximately 485 Overlap Receivables with a face value of approximately $1.3 million. Servicing Agreement, Schedule 3.1(a). The dispute at issue involves proceeds collected by TPL in relation to a minute portion of the Overlap Receivables, and the source of dispute arises from simple TPL error.

12. TPL failed to strictly adhere to the terms of the Servicing Agreement and the Escrow Agreement. First, TPL collected upon receivables associated with two patients not included in the Portfolio. Tecumseh acknowledges that TPL should <u>only</u> be servicing the agreed upon Portfolio, and that TPL should immediately remit all proceeds derived from these receivables to HASelect's servicer, Gain, as provided for in the Servicing Agreement and Escrow Agreement. Tecumseh has communicated this position to both TPL and HASelect.[3] Second, TPL accepted payment in the form of one check on behalf of receivables for four

---

[2] HASelect's Motion to Compel cites to provisions of the Servicing Agreement not intended to deal with intermingled proceeds.

[3] See email correspondence attached hereto and incorporated herein as <u>Composite Exhibit A</u>.

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

63917223;3

4

patients on whom both HASelect and Tecumseh claim receivables. TPL should not have done so. Instead, it should have accepted a check only for the Portfolio receivables.

13. The dispute, therefore, pertains only to the methodology by which TPL should allocate the funds it received. Tecumseh asserts the industry standard supports allocation based upon actual cost (Bill Cost) of the receivable. HASelect believes it more appropriate to allocate based upon the face value (Bill GFB) of the receivable. Tecumseh has requested back-up documentation and clarification from TPL in support of HASelect's valuation position.[4] Tecumseh has likewise attempted (unsuccessfully thus far) to broker a settlement with HASelect, and will continue to do so.

## ARGUMENT

**A.    Tecumseh is Not in Violation of this Court's Orders Requiring Surrender of Collateral to HASelect.**

14. The Abandonment Order provides that "[a]ny person that is or may come into possession of any of the Collateral is hereby authorized and directed to turnover such Collateral to HASelect." Abandonment Order at ¶ 8. The Lift Stay Order contains an identical provision. Lift Stay Order at ¶ 8.

15. Tecumseh is not in possession of any Collateral. This fact is undisputed. Indeed, it is TPL who possesses (in error) intermingled proceeds from receivables that constitute both Collateral and Overlap Receivables. Tecumseh simply possesses a differing opinion from HASelect as to the methodology by which TPL should allocate said proceeds. This approximately $30,000 dispute, pertaining to the proper allocation of proceeds of receivables that are undisputedly no longer property of the bankruptcy estate, was not addressed by the Bankruptcy Court in either the Abandonment Order or the Lift Stay Order. The Servicing Agreement and Escrow Agreement are likewise silent on the issue, likely because this problem was unanticipated as TPL was not supposed to collect upon anything other than the Portfolio.

16. Furthermore, both the Abandonment and the Lift Stay Order expressly exclude the Tecumseh Receivables (and therefore the Overlap Receivables) from the relief granted

---

[4] See email correspondence attached hereto and incorporated herein as Composite Exhibit B.

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

63917223;3

5

therein. And it is the Overlap Receivables, and the proper amount that should allocated on their behalf which is driving the dispute—not Tecumseh or TPL's refusal to turnover HASelect's collateral (the proceeds of which have been escrowed by TPL pending resolution of valuation dispute).

**B.      The Bankruptcy Court lacks subject matter jurisdiction to adjudicate this dispute.**

17.     HASelect correctly asserts that bankruptcy courts retain jurisdiction to interpret and enforce their prior orders. In support of its position, HASelect relies upon *Travelers Indemnity Company v. Bailey*, 557 U.S. 137, 151 (2009), in which the Supreme Court found that the Bankruptcy Court possessed not only ancillary jurisdiction to interpret and enforce its own prior orders post-confirmation, but also that it explicitly retained jurisdiction in its approval order over the matter in question.

18.     The facts in *Travelers*, however, are fundamentally different than those before this Court. The movant in *Travelers* was attempting to enforce an order enjoining causes of action against insurers; the Supreme Court agreed with the Second Circuit that the litigation at issue was enjoined by virtue of the language of the bankruptcy court order injunction, which covered "claims, demands, allegations, duties, liabilities and obligations" against Travelers, known or unknown at the time, "based upon, arising out of or relating to" Travelers' insurance coverage of the debtor. *Id.* at 148.

19.     Here, the Servicing Agreement, the terms of which HASelect ostensibly seeks to enforce in its Motion to Compel, is a contractual agreement entered into by and between third parties, HASelect, Tecumseh, and TPL. The Trustee is <u>not</u> a party to the Servicing Agreement (nor could he have been), and, as such, the agreement was not brought before this Court for its review and approval. There is, therefore, no retention of Bankruptcy Court jurisdiction in any order approving the Servicing Agreement.

20.     Moreover, it is evident from the language of the Abandonment Order and the Lift Stay Order relied upon by HASelect, *i.e.* that "[a]ny person that is or may come into possession of any of the Collateral is hereby authorized and directed to turnover such Collateral to HASelect," that Tecumseh's actions do <u>not</u> violate this Court's orders. As further detailed above,

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

63917223;3

6

Tecumseh does not possess any of HASelect's Collateral, and the relief afforded by the Abandonment Order and the Lift Stay Order does not extend to Bankruptcy Court adjudication of disputes arising over valuation of intermingled proceeds from both HASelect Collateral and Overlap Receivables. Accordingly, this Court lacks ancillary jurisdiction to consider this issue.

21.   Nor does the Court have jurisdiction to consider the dispute pursuant to 28 U.S.C. §§ 157 and 1334, as also alleged by HASelect. *See* Motion to Compel, ¶ 1. 28 U.S.C. § 1334(b) provides that federal courts shall have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11." *In Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), the Supreme Court described the scope of "related to" jurisdiction under § 1334(b):

> Proceedings "related to" the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate.... The first type of "related to" proceeding involves a claim like the state-law breach of contract action at issue in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

*Id.* at 307, 115 S.Ct. 1493 n. 5 (internal citation omitted).

22.   Where "the cause of action is not of the first type of proceeding identified in *Celotex*—owned by the debtor which becomes property of the estate in bankruptcy—courts are concerned with the closeness of the relationship between the proceeding and the bankruptcy estate." *Vacation Village, Inc. v. Clark County, Nev*, 497 F.3d 902, 911 (9th Cir. 2007); *see also Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (1984) (holding that where the cause of action is between third parties, the test for "whether a civil proceeding is related to bankruptcy *is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*") (emphasis added).

23.   HASelect has failed to identify any outcome whereby resolution of this dispute may have an effect on Infinity's bankruptcy estate, likely because the dispute, involving only third parties HASelect, Tecumseh, and TPL, could not conceivably have any effect on the administration of Infinity's bankruptcy estate. The Servicing Agreement is a contractual

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

63917223;3

7

agreement entered into by and between third parties. The Trustee is not a party to the agreement, nor could he have been, because he abandoned all of HASelect's Collateral, and has sold whatever right, title, and interest the bankruptcy estate might have in the Tecumseh Receivables to HASelect, subject to the pending adversary proceeding.

24. Finally, the Servicing Agreement itself provides that "any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with this Agreement may be brought exclusively in the State and United States Federal Courts located in Clark County, Nevada." Servicing Agreement at ¶ 17

**C.  Sanctions are Inappropriate.**

25. Civil contempt "consists of a party's disobedience to a **specific and definite court order** by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993) (emphasis added). As further detailed above, Tecumseh has not disobeyed the Abandonment Order or the Lift Stay Order, and the proper allocation of proceeds of receivables that are undisputedly no longer property of the bankruptcy estate, was not something addressed (directly or indirectly) by this Court in either the Abandonment Order or the Lift Stay Order.

26. Even should the Court disagree with Tecumseh's position, Tecumseh at all times acted in good faith and its interpretation of the Abandonment Order and the Lift Stay Order is not unreasonable. And a party should not be held in contempt if its action "appears to be based on a good faith and reasonable interpretation of the [court's order]." *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (quoting *Rinehart v. Brewer*, 483 F.Supp. 165, 171 (S.D. Iowa 1980)).

27. At heart this is nothing more than an attempt by HASelect to unilaterally impose its valuation methodology on both TPL and Tecumseh under the guise of seeking compliance with this Court's orders. Had HASelect devoted time to resolving this discrete dispute, rather than expending effort and energy on a frivolous filing, this matter would likely have already been resolved.

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

63917223;3

8

## Conclusion

28. Wherefore, Tecumseh respectfully requests the Bankruptcy Court enter an order denying the Motion to Compel, and any granting any such other and further relief as the Bankruptcy Court may deem just and equitable.

Dated: June 10, 2022.

GARMAN TURNER GORDON LLP

By: /s/ Gabrielle A. Hamm
GERALD M. GORDON, ESQ.
WILLIAM M. NOALL, ESQ.
GABRIELLE A. HAMM, ESQ.
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119

and

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

4882-8303-7476, v. 1

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

63917223;3

9