GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
JARED SECHRIST
Nevada Bar No. 10439
E-mail: jsechrist@gtg.legal
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000 / Fax: (725) 777-3112
*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT,<br>INC., dba INFINITY HEALTH<br>CONNECTIONS,<br><br>          Debtor. | Case No.  BK-S-21-14486- abl<br><br>Chapter 7<br><br><br>Hearing Date:  March 30, 2023<br>Hearing Time: 9:30 a.m. |

## MOTION TO SET ASIDE ORDERS APPROVING SALES PROCEDURES AND APPROVING SALE

Tecumseh – Infinity Medical Receivable Fund, LP ("Tecumseh"), through its undersigned counsel, submits this motion ("Motion") pursuant to Fed. R. Bank P. 9024 which makes applicable Fed. R. Civ. P. 60 to this adversary proceeding, to set aside and vacate pursuant to Rule 60(b)(1), (2) and (6), the *Order Granting in Part, and Denying in Part, the Trustee's Motion (I) Approve Sale of Certain Assets; (II) Set Sale/Auction Procedures: and (III) Set Auction Hearing Date* ("Procedural Order") [ECF No. 175] entered on January 21, 2022,  and *Order Approving Sale* ("Sale Order") [ECF No. 184] entered February 11, 2022.

This Motion is supported by the following Memorandum of Points and Authorities, the Declaration of Gerald Gordon, Esq. ("Gordon Decl.") and attached Exhibit, the record in the

above-captioned Chapter[1] 7 case ("Case"), of which judicial notice is hereby requested pursuant to Federal Rule of Evidence 201, and any argument by counsel at the hearing on the 9024 Motion.

**I.**
**SUMMARY OF THE MOTION**

On December 3, 2021, Robert Atkinson, Esq., as the chapter 7 trustee ("Trustee") for the Case, filed his *Motion to (I) Approve Sale of Certain Assets; (II) Set Sale/Auction Procedures: and (III) Set Auction Hearing Date* ("Sale Motion") [ECF No. 155]. The Sale Motion was supported by the *Declaration of Robert E. Atkinson* [ECF No.146] in which the Trustee states "Creditor HASelect is a secured creditor of the Debtor. Their [sic] pre-petition perfected security interest covers all assets of the Debtor." *See id.* ¶5. That description of the scope of the perfected security interest of HASelect was drawn from and limited to Section 4.1 of the *Second Amended & Restated Loan & Security Agreement* ("Loan Agreement"). But Section 4.1 is not the only definition of Collateral in the lender/borrower relationship between HASelect Medical Receivables Litigation Finance Fund International SP ("HASelect") and the Debtor; rather, paragraph 16 of the executed *Form of Promissory Note* ("Note") states a materially different, and far narrower, definition of Collateral. (the Note and Loan Agreement are collectively "Loan Documents").[2] [3] [ECF 12, ¶ 4].

Tecumseh filed its *Objection to Trustee's Motion to (I) Approve Sale of Certain Assets; (II) Set Sale/Auction Procedures: and (III) Set Auction Hearing Date* ("Objection") [ECF No. 155], opposing the proposed sale to the extent it sought to sell to HASelect cash proceeds of the Tecumseh receivables, documents relating to Tecumseh's receivables, and the right to enforce and

---

[1] All references to "Chapter" or "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; all references to "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

[2] The term "MLA' has been used in the Motion and throughout the case to describe collectively the Loan Agreement and Note. However, in light of the material differences between the Loan Agreement and the Promissory Note ("Note") with regard to the term "Collateral," Tecumseh will defer from using the term in this Motion, and instead refer to the Loan Agreement and Note.

[3] The Loan Documents are attached as Exhibit 1 to the *Declaration of Michael Griffin in Support of Joint Motion of Chapter 7 Trustee and Secured Creditor HASelect Medical Receivables Litigation Finance Fund International SP to Approve Abandonment of Collateral* [ECF No. 14] (the "Griffin Abandonment Decl."), which, for the Court's convenience, is attached hereto as **Exhibit A.**

collect any future payments on Tecumseh's receivables.  HASelect filed *its Joinder to Chapter 7 Trustee's Reply in Support of Motion to Sell and Set Procedures* ("Joinder") [ECF No. 165] in which HASelect asserts once again that "…HASelect holds a perfected security interest in substantially all of Infinity's personal property, including accounts." *Id.* at 3:5.

On January 21, 2022, the Court entered the Procedural Order that approved the Trustee's proposals in the Sale Motion to: (i) allow the sale of the "Assets" as defined in the Sale Motion which encompassed all of the assets of the estate (and subject to the HASelect perfected security interest) with a reservation for "whatever rights, title interest and encumbrances HASelect and Tecumseh may have to the Tecumseh Receivables," and (ii) grant HASelect a perfected security interest in all of the assets of the estate with the right to credit bid against overbids.  The approval was premised on the mistaken assumption that HASelect's security interest included all the Assets, an assumption as to the extent of its security interest HASelect put forth by from the very beginning of the Case.[4]

 On February 11, 2022, the Court entered the Sale Order approving the Trustee's sale of the Assets with a reservation related to the receivables and proceeds thereof claimed by Tecumseh, as provided in the Objection.  Recent discovery of new evidence, however, has revealed the Sale Motion, Procedural Order and Sale Order, in addition to other orders entered in this Case are premised upon an inaccurate representation of HASelect's security interest that has infected this entire case; namely, that HASelect holds a security interest in all the Debtor's assets.[5]  As such, this Court erred in its determination of the scope of HASelect's security interest in the Estate's assets and further erred in allowing HASelect to overbid by using credit that did not exist.

The Sale Motion, supporting pleading, Procedural Order and Sale Order failed to consider the impact of the definition of the Collateral in the Note, which defines the Collateral as "all of Borrower's interest in the Receivables and Claims, as set forth the in the Agreement" (Section 16,

---

[4] See, for example, the *Declaration of Michael Griffin in Support of Joint Motion of Chapter 7 Trustee and Secured Creditor HASelect Medical Receivables Litigation Finance Fund International SP to Approve Abandonment of Collateral* [ECF No. 14] (the "Griffin Abandonment Decl.")."

Exhibit 1-A to Proof of Claim No. 8-12, filed 01/10/2022).  This was a material flaw. The Loan Agreement fully integrated the Note by virtue of Section 9.4 of the Loan Agreement.  As stated, the Note contains no reference to any collateral other than the receivables and claims, *i.e.,* it does not grant a security interest in all assets. Most significantly, **Section E of the Note mandates that the Note's definition of Collateral, which is a capitalized term defined in Paragraph 16, is the operative definition**. Ex. A § E ("Capitalized terms used herein **unless otherwise defined**, have the meanings given such terms in the Loan Agreement." (emphasis added)). The Loan Documents, therefore, do not ambiguously define "Collateral"—the Note's definition, by its terms, controls over the Loan Agreement's. (emphasis added)

The Loan Documents containing two inconsistent definitions of the Collateral was a crucial fact the Court overlooked in arriving at its findings and conclusions. At most, HASelect and the Trustee can argue the Loan Documents' multiple definitions create ambiguity. But even if the two definitions of Collateral create some ambiguity (they do not because, as discussed, the Note's definition controls), such ambiguity cannot be resolved by summary proceedings; rather, it requires an evidentiary hearing to determine the true intent of the parties at the time of the agreement's formation, a hearing that, as of yet, has never occurred. *Farm Credit Bank v. Whitlock*, 144 Ill.2d 440, 448 (1991); *see also*, *Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1037 (7th Cir. 1998), citing *Countryman v. Industrial Commission*, 292 Ill. App. 3d 738, 741 (1997).[6]

Despite the multiple definitions, HASelect asserted, the Trustee assumed, and this Court accepted that the Collateral consisted of all the assets of the Debtor based upon the Loan Agreement alone.  Pursuant to Section E of the Note, however, the Loan Agreement's definition of Collateral—the one accepted by the Court at HASelect's urging—is not controlling. Accordingly, the Loan Agreement's definition is *misleading and an incorrect definition of the*

---

[6]     Contract interpretation is determined by state law, *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015); *Woodbridge Place Apartments v. Washington Square Capital, Inc.*, 965 F. 2d 1429, 1434 (7th Cir. 1992), and The Loan Agreement provides in § 9.10 that Illinois law shall govern the transaction.  In any event, the principles stated herein are of general applicability, and Ninth Circuit law is similar if not identical to Seventh Circuit and Illinois law.  See, *Babi Kian v. Paul Revere Life Ins. Co.*, 63 F. 3d 837, 840 (9th Cir. 1995), and *Hickey v. A.E. Stanley Mfg.*, 995 F. 2d 1385, 1389 (9th Cir. 1993).

*Collateral as intended by the parties.*[7]

An ambiguity in an agreement exists when on the face of the agreement (intrinsic ambiguity) "key contract language is susceptible of more than one reasonable interpretation where the contract is read as a whole." *Alexian Bros. Health Providers Assn. v. Humana Health Plan, Inc.*, 330 F. Supp. 2d 970, 974 (N.D. Ill. 2004), citing *Guerrant v. Roth,* 334 Ill.App.3d 259, 264, 777 N.E.2d 499, 503, 267 Ill. Dec. 696 (1st Dist. 2002).   "If … the contract's language is susceptible to more than one meaning, then an ambiguity is present. [T]hen may parol evidence be admitted to aid the trier of fact in resolving the ambiguity." *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 462-3 (1999).

The purpose of admitting and considering parol or extrinsic evidence is to determine the intent of the parties at the time of the contract formation as to an ambiguous agreement.  *Chicago Board of Options Exchange, Inc. v. Connecticut general Life Ins. Co.,* 713 F.2d 254, 258 (7th Cir 1983); *Homeowners Choice, Inc. v. AON Benfield, Inc.*, 938 F. Supp. 2d 749. 756 (N.D. Ill. 2013), citing Illinois cases.

Therefore, even if the Court were to determine HASelect's and the Debtor's intent regarding the scope of the Collateral in the face of the ambiguity (which it has not done), it was clear error for the Court to define the Collateral by exclusively referencing and relying upon only one of two relevant, but inconsistent, portions of the Loan Documents. And it was similarly improper for the Court to determine inferentially the parties' intent by exclusively relying on the representation of the moving parties and without an evidentiary hearing.

The language of the Loan Documents permits only one of two conclusions: i) Section E of the Note unambiguously mandates the Note's definition of Collateral is controlling; or ii) the inconsistent definitions of Collateral in the Note and the Loan Agreement create an ambiguity that can only be resolved through an evidentiary hearing. Both conclusions demonstrate the need for

---

[7] The Court also mistakenly relied upon HASelect's definition of Collateral, in whole or in part, in its approval of the *Joint Motion of Chapter 7 Trustee and Secured Creditor HASelect Medical Receivables Litigation Finance Fund International SP to Approve Abandonment of Collateral* [Main Case ECF Nos. 12, and 97], and in the approval in part of HASelect's Motion for Partial Summary Judgment [ECF No. 88].

1   the requested relief to remedy this Court's assumption of HASelect's assertion of a security interest

2   in all of the Debtor's assets, and on that basis, the entry of the Procedural Order and Sale Order

3   relying upon HASelect's claimed security interest and granting HASelect the right to credit bid in

4   the event of an overbid.

5                                       **II.**

6                            **FACTUAL BACKGROUND**

7          Most of the factual circumstances of this Case have been described in numerous pleadings

8   and are undoubtedly well known to the Court; therefore, except as pertinent to this Motion, they

9   will not be repeated in detail here.  Briefly, the Debtor was in the business of purchasing

10  receivables and personal injury claims from medical providers. Pursuant to a sub-advisory

11  agreement entered with the Debtor on June 18, 2020, Debtor assisted Tecumseh in the purchase of

12  certain medical receivables from third parties.  The ownership status of those receivables is the

13  subject of other proceedings before this Court and is not pertinent here.  For various reasons,

14  Tecumseh has a strong interest in the assets of the Debtor's estate, especially the non-receivable

15  assets.

16         HASelect contends it holds a security interest in all the Debtor's assets, relying, as noted

17  above, on a single isolated provision of the Loan  Agreement, which is contradicted by another

18  provision of the integrated Note.[8]  Incorrectly representing to the Court that a provision of the

19  Loan Agreement (Section 4.1) determines the nature of its collateral, the Trustee filed the Sales

20  Motion and the Procedural Order and Sales Order ensued.

21         Whether out of failure to closely examine the Loan Documents it drafted, or otherwise,

22  HASelect has managed to convince the Court, the Trustee, and others that Section 4.1 of the Loan

23  Agreement determines the extent of its Collateral. In fact, however, that definition contradicts the

24

25  _____

26  [8] A true and correct copy of HASelect's Proof of Claim filed herein and the exhibits attached to it, including the Loan Documents, is attached hereto as **Exhibit B**.  Debtor and HASelect had entered into prior Loan and Note Agreements as funds were advanced to debtor, but as far as Tecumseh can determine all prior agreements were identical to the one in effect when the Case was commenced.  Tecumseh is also informed and believes that HASelect, as is customary for lenders, was the drafter of the Loan Documents.

27

28

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Loan Documents and may be contrary to the parties' intent.

As discussed above, Section 16 of the Note, which is part of the Loan Documents (*see* Section 9.4), defines the Collateral much more narrowly—it does not include any assets beyond HASelect's "Receivables"[9] and "Claims"[10] as those terms are specifically defined in the Loan Agreement.  And Section E of the Note expressly states that the definition of "Collateral" in the Note is controlling because it is defined in the Note itself. This means that the Court's adoption of the definition of "Assets" in the Sale Motion and the representation by the chapter 7 trustee in the Sale Motion—that HASelect held a security interest in all of the assets of the Debtor's estate but for a reservation by Tecumseh with regard to 'Tecumseh Receivables' (as defined in the Sale Motion)—in reliance on HASelect's representation and the Trustee's acquiescence, was in error. Accordingly, the Procedural Order, which allowed for the sale of the Assets subject to HASelect's right to credit bid against over bids of valuable assets, both eliminated unsecured assets from the sale and chilled any chance of overbidding, substantially injuring Tecumseh and unsecured creditors.  More importantly, this error arose because of the extraordinary circumstance that all parties, including the Court, failed to accurately read the Note.

As discussed below, that omission needs to be corrected by setting aside the Procedural Order and Sale Order and conducting an evidentiary hearing to determine the true intent of the parties.

///

///

///

### III.

---

[9] The Loan Agreement defines "Receivables" as "receivables owing to medical providers for health care services or other service providers of the type approved by Lender, and acquired by Borrower, in each case secured by a Claim or some other collateral approved by Lender." Loan Agreement § 2.

[10] The Loan Agreement defines "Claims" as "a claim by an Obligor for medical and other damages in connection with event or events for which Borrower has acquired the Receivable." Loan Agreement § 2.

# LEGAL ARGUMENT

## A.  THIS COURT SHOULD SET ASIDE THE PROCEDURE ORDER AND SALE ORDER PURSUANT TO RULE 60(B).

Tecumseh respectfully requests this Court to set aside the Procedural Order and Sale Order pursuant to FRCP 60(b) because they were based on the Court's incorrect understanding of HASelect's security interest.  For some reason, none of the parties, nor the Court recognized or considered the Note's definition of Collateral. Tecumseh, having reviewed and evaluated the record and the documents, discovered this error and now, in good faith, requests this Court to redress this error. *See* Gordon Decl. ¶¶ 3-10.

Rule 60(b), as incorporated in Fed. R. Bankr. P. 9024, provides several grounds for granting relief from a judgment or order.  Rule 60(b)(1) is undoubtedly applicable here for the Sales Order.  Rule 60(b)(1) provides that a court may provide relief from a final judgment for mistake, inadvertence, surprise or excusable neglect. Rule 60(b)(2) is also applicable. It provides for relief from a judgment based on newly discovered evidence.  Finally, regarding both the Procedural Order and Sales Order, Rule 60(b)(6) provides a basis for relief from a judgment for any other reasons if Rules 60(b)(1) and (2) are found lacking or not available.

### 1.  Rule 60(b)(1)

The Procedural Order was mistakenly based on the belief, incorrectly advanced by the Trustee and HASelect, that Section 4.1 of the Loan Agreement was the sole and controlling provision granting HASelect a security interest in Debtor's assets, including the Assets.  Rather, Section 16 of the Note describes a much narrower security interest, Debtor's interest in HASelect's Receivables and Claims as defined in the Loan Agreement. The mistaken foundation of the Sale Motion and Procedures Motion resulted in a false determination of the extent of HASelect's

collateral, and the granting to HASelect of an erroneous credit bid right, which the Court was not authorized to grant and which chilled any overbidding.  11 U.S.C. § 363(b)(1) and (k).

Mistake as used in Rule 60(b)(1) is to be interpreted broadly and includes mistakes of law and fact.  *Kemp v. United States*, 142 S.Ct. 1856 (2022).  *See also*, *Curtis v. United* States, 61 Fed. Ct. 511, 514 (Ct. of Fed. Claims 2004) ("The Rules do not define "mistake." However, Black's Law Dictionary defines "mistake" as "an error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1017 (7th ed. 1999). The mistake justifying relief from judgment may be on the part of a party, counsel or the court.").  *See also*, *Harvest v.* Castro, 531 F.3d 737, 746 (9th Cir. 2008) (Rule 60(b)(1) … grants the power to "correct judgments . . . which has issued due to inadvertence or mistake.").  Both legal and factual mistakes occurred here.  Owing to the representations of HASelect and the Trustee, the Court misunderstood to the facts relating to HASelect's security interest and was legally mistaken in determining that: i) HASelect was secured by all of the assets of the bankruptcy estate; and ii) HASelect was entitled to credit bid, thus chilling the overbid process based on that factual error.

This situation is remarkably similar to *In re Cisneros*, 994 F.2d 1462 (9th Cir. 1993). In *Cisneros,* the chapter13 trustee reported to the court that Cisneros had completed all the payments under his plan, and the court entered Cisneros's discharge accordingly.  The IRS objected, arguing it was material that the chapter 13 trustee had overlooked the fact its claim had not been paid. Pursuant to Rule 60(b)(1), the court vacated the discharge based on mistake.  Note the similarity to this case:  A trustee provided incorrect facts to the court and, on the basis of that incorrect factual information, the court entered an erroneous judgment.

*Cisneros* has been followed by several courts.  In *Disch v. Rasmussen*, 417 F.3d 769 (7th Cir. 2005), Rasmussen had filed a chapter 7 bankruptcy, but *Disch* brought an adversary proceeding claiming Rasmussen's debt to her was nondischargeable.   Notwithstanding the

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

9

pendency of the nondischargeability proceeding, the court entered Rasmussen's discharge.  At the hearing on Disch's adversary proceeding, evidence established grounds to deny Rasmussen's discharge under 11 U.S.C. § 727.  The court then permitted Disch to amend her adversary complaint based on the evidence adduced at the hearing. The court then granted Disch's motion under Rule 60(b)(6) to revoke Rasmussen's discharge.  The court of appeal affirmed saying, "Had the court known of the facts concerning [debtor's] conduct, it would never have issued the order. We find that the initial grant of a discharge for Rasmussen was the sort of "mistake" or "inadvertence" that the court was empowered to reach under Bankruptcy Rule 9024 …." *Id.* at 779. Here, likewise had the court known the full facts concerning the Loan Documents, it most likely would not have entered the Sale Order.

In *In re McBride*, 203 B.R. 633 (Bkrtcy. S.D. Ohio 1996), the court entered an order confirming the chapter 13 plan of the debtor on the misunderstanding that all objections to the plan had been heard and disposed of.  When the court discovered there were pending objections that had not been heard, it vacated the order confirming the plan in reliance on Rule 60(b)(1).  The court justified its action saying: "As in *Cisneros*, this court issued its order under 'a misapprehension as to the facts of the case.'" *Id.* at 637.

In *Probuilders Specialty Ins. Co. v. RRG Phoenix Constriction, Inc.*, 2017 U.S. Dist. LEXIS 229644 (D. Ore. 2017), a party moved to set aside an order granting summary judgment, arguing that the court did not consider evidence in the summary judgment record that would have supported the party's claim.  The court denied the motion, because, while the evidence could have supported such a claim the party had not asserted the claim.  Nevertheless, the court agreed that "[t]he failure to consider evidence in the summary judgment record can be a mistake within the meaning of Rule 60." *Id.* at [*2].  Likewise, the Court here failed to consider all the evidence in granting the Procedural Order, namely the entire relevant Sale Documents.

As has been demonstrated, ample authority exists for the Court to vacate the Procedural

Order under Rule 60(b)(1) for its mistake based on a failure to consider all the evidence and

information relevant and pertinent to the nature of HASelect's security interest and the material

impact it had on the sales process.

### 2. Rule 60(b)(2)

Rule 60(b)(2) provides for relief from a judgment on the basis of newly discovered

evidence.[11]  Newly discovered evidence for the purposes of Rule 60(b)(2) was well defined in *In*

*re Lossee*, No. BR 19-40540-JMM, 2019 WL 4923150, at *5, 2019 Bankr. LEXIS 3176 [*13]

(Bankr. D. Idaho Oct. 4, 2019):

> In order to establish that relief is appropriate on the basis of newly
> discovered evidence, the movant must demonstrate that: (1)
> the newly discovered evidence must have been discovered after
> judgment, and the movant must have been excusably ignorant of the
> facts at the time of trial despite due diligence to learn about the facts
> of the case; (2) the evidence discovered must be of a nature that
> would probably change the outcome of the case; and (3) the
> evidence must not be merely cumulative or impeaching. *In re*
> *Covino*, 241 B.R. 673, 679 (Bankr. D. Idaho 1999) (citing
> 12 *Moore's Federal Practice* ¶ 59.13[2][d][ii]-[vii] (3rd ed.
> 1998); *Jones v. Aero/Chem. Corp.*, 921 F.2d 875, 878 (9th Cir.
> 1990) (similar test)).

Tecumseh satisfies the above criteria.  The existence of the security interest description in

the Note and the integration clause were not discovered until after the Court entered the Procedural

Order.  Every party and the Court missed this key fact at the time of the hearings on the Sale

Motion.  As extensively discussed, the nature of the new evidence undoubtedly would have

changed the outcome of the case.  And the evidence was not cumulative or impeaching.

Consequently, Tecumseh's motion under Rule 60(b)(2) should be granted and the Procedural

---

[11]    The rule also qualifies such evidence as evidence that with reasonable diligence, could not
have been discovered in time to move for a new trial under Rule 59(b).  That qualification is
anomalous here when the evidence was there but missed by all parties and the Court.

1    Order set aside pending an evidentiary hearing regarding the true extent of HASelect's security

2    interest.

3                            3.    **Rule 60(b)(6)**

4

5    Rule 60(b)(6) provides that a motion may be granted for "any other reason that justifies

6    relief."  If the Court determines that neither Rule 60(b)(1) or 60(b)(2) apply here, it may grant

7    relief under Rule 60(b)(6).[12] The courts have supplied further meaning to the broad phrase of Rule

8    60(b)(6). Generally, relief may be granted in extraordinary circumstances that include a wide range

9    of factors, such as "the risk of injustice to the parties" and "the risk of undermining the public's

10   confidence in the judicial process."  *Buck v. Davis*, 580 U.S. 100, 123 (2017).  Further, as the

11   Supreme Court said in determining whether Rule 60(b)(6) applies, the courts have "wide

12   discretion." *Id.*

13

14   There can be little question that, where, as here, a Court and the parties have before them

15   a document but fail to read the entire document and argue and base an erroneous decision on an

16   isolated provision while overlooking an inconsistent provision, a most extraordinary circumstance

17   exists.  Moreover, that extraordinary circumstance fits the Supreme Court's suggested factors for

18   granting relief.  The failure of a court to read an entire document on which it bases a decision

19   undermines confidence in the judiciary, as does unquestioned acceptance of a litigant's misleading

20   representation of the parties' contractual rights and obligations. An erroneous determination of the

21   scope of HASelect's security interest and the adoption of sales procedures that chilled the sale is

22   an injustice to the creditors, including Tecumseh.

23

24   Granting Tecumseh's Motion is also consistent with numerous Ninth Circuit decisions

25   applying Rule 60(b)(6). Highly apposite is *In re International Fibercom, Inc.*, 503 F.3d 933 (9th

26

27   _____

28   [12] Rule 60(b)(6) is not a basis for relief if one of the other parts of Rule 60(b) apply. *Liljeberg v. Health Services Acquisition, Inc.* 486 U.S. 847, 862 n.11 (1988).

Cir. 2007).  In *Fibercom*, when the debtor filed for bankruptcy, its workers compensation policy was set to expire. The debtor moved for entry of an order that approved its assumption of its workers' compensation policy, and the bankruptcy court granted the motion.  The appellate court found that the workers' compensation insurance policy was not executory. The bankruptcy court correctly concluded its assumption order granted relief inconsistent with 11 U.S.C.S. § 365 and granted a motion under Rule 60(b)(6) to re-open and modify its order.  The Ninth Circuit affirmed, explaining its decision, as follows, 503 F.3d at 941 (some citations omitted; emphasis added):

> We have stated in the past that Rule 60(b)(6) should be "liberally applied," *Hammer*, 940 F.2d at 525, "to accomplish justice." Rather, Rule 60(b)(6) should be "'used sparingly as an equitable remedy to prevent manifest injustice' and 'is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or *correct an erroneous judgment.*'"
> *****
> The bankruptcy court correctly found that extraordinary circumstances justified reconsidering the assumption order because the order erroneously granted assumption of a nonassumable contract….

In *Hall v. Haws*, 861 F.3d 861 977 (9th Cir. 2017), the court affirmed a district court's order granting Hall's Rule 60(b)(6) motion.  Hall and a co-defendant had been convicted of murder based on an erroneous jury instruction, but the conviction was upheld by the California Court of Appeal.  Hall and the co-defendant then filed habeas corpus petitions in the federal district court. For somewhat questionable procedural reasons, Hall abandoned his petition, incorrectly believing that he was a co-submitter of his co-defendant's petition. He was wrong. The co-defendant's petition was granted for the very reason Hall had advanced in his abandoned petition.  But, as the Ninth Circuit said, he was "out in the cold." Under the circumstances, the district court granted Hall's motion to set aside his abandonment of his petition.  In other words, erroneous actions taken by the court in allowing abandonment of the petition was an injustice requiring relief.  The Ninth Circuit, in stating its reason for affirming the order granting relief, held "**the decision to grant Rule**

60(b)(6) relief is a case-by case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." 861 F.3d at 787-8. There, justice was done by correcting the judicial error and permitting Hall to proceed with his habeas petition.

In re International Fibercom, Inc., 503 F.3d 941, *supra*, was followed in *In re Rodeo Canon Development Corp.*, 2010 WL 6259764, 2010 Bankr. LEXIS 5036, (BAP 9th Cir. 2010). In *Rodeo* the initial trustee of a chapter 11 case entered into a settlement agreement that included a cap on further trustee's fees. The bankruptcy court entered an order approving the settlement. A successor trustee recovered substantial money for the estate, based in part on the former trustee's malfeasance. The successor trustee then applied for fees more than the cap in the settlement, raising objections. The successor trustee argued the fee cap only applied to the former trustee. To resolve the dispute, the bankruptcy court granted a Rule 60(b)(6) motion to re-open the order approving the settlement to clarify the order and allow for the successor trustee's fees. The Bankruptcy Appellate Panel affirmed, and summarized its decision, after applying the extraordinary circumstances test, as follows:

> [T]he bankruptcy court approved the terms of the [settlement] without realizing that, if interpreted broadly, the Fee Cap purported to prohibit the estate from employing and compensating future Trustees and professionals except as permitted under the Fee Cap. Neither bankruptcy law nor state law would have enabled the estate to fully effectuate such restrictions. As a result, to the extent the Fee Cap could have been interpreted broadly, the bankruptcy court's order approving the SDTS was legally erroneous…"

2010 Bankr. LEXIS 5036 at [**36-7]; *see also, Mannick v. Kaiser Health Plan, Inc.*, 2007 U.S. Dist. LEXIS 73705 (N.D. Cal. 2007) (Rule 60(b)(6) cited as authority for setting aside a consent decree based on an error in which the wrong version of the parties' settlement was attached to the consent decree).

In summary, Rule 60(b)(6) is an appropriate vehicle for correcting an erroneous judgment or order to prevent an injustice. Such an injustice would occur here if the Court were to determine after an evidentiary hearing that HASelect did not have a perfected security interest all of the assets of the estate, but nevertheless did not set aside the Procedural Order and Sale Order in light of the significant impact on creditors and Tecumseh as a result thereof.

## IV
## THE NOTE'S DEFINITION OF COLLATERAL IS CONTROLLING.

Under Illinois law, "The primary goal in construing a contract is to give effect to the intent of the parties." *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002). "When the language of a contract is clear, a court must determine the intent of the parties solely from the plain language of the contract." *Id.* "The language of a contract must be given its plain and ordinary meaning." *Id.* Here, the Loan Documents are clear—the definition of "Collateral" in the Note is controlling.

Section E of the Note provides, in pertinent part, "This Note is being issued to Lender by Borrower pursuant, and otherwise subject, to the terms and conditions of the Loan Agreement. Capitalized terms used herein **unless otherwise defined**, have the meanings given such terms in the Loan Agreement." Ex. A (emphasis added). Accordingly, the definition of Collateral in Paragraph 16 of the Note is the operative definition. (emphasis added).

Because neither HASelect nor the Trustee advised the Court of the accurate definition of HASelect's collateral at the time of the Sale Motion hearings, the Court considered and ruled in error upon a mistaken understanding of the scope of HASelect's security interest to the detriment of Tecumseh and other creditors. As discussed at length below, that was an injustice that merits setting aside the Procedural Order and Sale Order pursuant to NRCP 60(b).

///

**B. AT MOST, THE SEPARATE DEFINITIONS OF COLLATERAL CREATE AMBIGUITY THAT PRECLUDES ADOPTION OF THE LOAN AGREEMENT'S DEFINITION WITHOUT AN EVIDENTIARY HEARING.**

      **1.    General Principles of Contract Interpretation and Ambiguities.**

A number of general principles of contract interpretation are helpful in placing the balance of the argument in context. They include:

- The purpose of the court in interpreting a contract is to determine the intent of the parties. *Home Insurance Company v. Chicago Northwestern Transportation Co.*, 56 F. 3d 763, 769 (7th Cir. 1995), citing *Schek v. Chicago Transit Authority,* 42 Ill.2d 362 (1969).

- The intent of the parties must be determined by examining the contract as a whole and not by examining isolated provisions. *Lasalle National Trust, N.A. v. ECM Motors Co.*, 76 F.3d 140, 144 (7th Cir. 1996), citing *In re Halas*, 104 Ill. 2d 83 (1984); *In re River Road Hotel Partners, LLC*, 520 B.R. 691, 701 (Bkrtcy. N.D. Ill. 2014), citing *Thompson v. Gordon,* 241 Ill.2d 428 (2011).

- A contract is ambiguous if it is reasonably or fairly susceptible of different constructions. *Alexian Bros. Health Providers Assn. v. Humana Health Plan, Inc.*, 330 F. Supp. 2d 970, 974 (N.D. Ill. 2004), citing *Guerrant v. Roth,* 334 Ill. App. 3d 259, 264 (2002).

- When an ambiguity in the contract prevents the court from determining the parties' intent from the language of the contract alone due to the ambiguity in the contract, a court may admit extrinsic evidence for the purpose of finding intent. *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill. 2d 457, 462-3 (1999); *Bourke v. Dun & Bradstreet Corp.,* 159 F. 3d 1032, 1037 (7th Cir. 1998), citing *Countryman v. Industrial Commission*, 292 Ill. App. 3d 738 (1997).

- The finding of intent from the extrinsic evidence is for the trier of fact and not for

the court on summary judgment or its equivalent. *Harman v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013), citing *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288-89 (1990).

- If the extrinsic evidence does not readily permit a finding of intent, the contract will be construed against the drafter. *Aircraft Products Co. v. Universal Oil Products Co.*, 154 Ill.2d 90, 108-9 (1992); *Harris v. American General Finance Co.,* 54 Ill. App. 3d 835, 840 (1977).

### 2. The Loan Documents Are, at Best for HASelect, Ambiguous as to the Collateral.

The Loan Documents comprise an integrated agreement, as stated in Section 9.4 of the Loan Agreement, that consist of the Loan Agreement and the Note (executed together on the same date). The Loan Agreement describes the Collateral in Section 4.1 as "the Receivables and Alternate Receivables,[13] and all of its other personal property…", followed by a detailed description of the latter. Ex. A (Griffin Decl.) at Ex. 1 § 4.1. By contrast, Section 16 of the Promissory Note describes the Collateral as "all of Borrower's interest in the Receivables and Claims…." *Id.* Section 16 contains no mention of other personal property. Read together, as they must, the two descriptions of the Collateral create an intrinsic ambiguity, because the Loan Agreements are reasonably or fairly susceptible of different constructions, *Alexian Bros. Health Providers Assn. v. Humana Health Plan, Inc.*, 330 F. Supp. 2d 970, 974 (N.D. Ill. 2004), citing *Guerrant v. Roth,* 334 Ill. App. 3d 259, 264 (2002), and susceptible to more than one meaning. *Gallagher v. Lenart*, 226 Ill.2d 208, 233 (2007).

Setting aside the fact that Section E's mandate that the Note's definition controls, the two different descriptions of the Collateral could suggest ambiguity because they present more than one meaning of the term, *Sasmano v. Associated Internists of Chicago Ltd.*, 97 Ill. App. 3d 215, 219 (1981), and "the express language of the contract itself is fairly susceptible to more than one reasonable reading [and] what the contract says is simply not clear on its face." *Bourke v. Dun &*

---

[13] Again, both defined terms in the Loan Agreement.

*Bradstreet Corp.*, 159 F.3d 1032, 1037 (7th Cir. 1998), citing *Countryman v. Industrial Commission*, 292 Ill. App. 3d 738 (1997). Similarly, ambiguity exists when the terms of a contract have a double meaning. *Lewiton v. ITA Software, Inc.*, 585 F.3d 377, 379-80 (7th Cir. 2009).  If the Court determines that Section E of the Note does not clearly establish the Note's definition as controlling, then that is the case here.

The fact that this circumstance escaped the Court's notice arose from the fact that the trustee and the Court—relying on the moving parties' mistaken representation of an isolated Loan Agreement provision—did not analyze or consider the Loan Documents in their entirety.  That was extraordinary and created an injustice.

Illinois law leaves no doubt that in construing a contract to determine the parties' intent, a court must review an integrated agreement as a whole and may not rely on an isolated provision. "A contract must be construed as a whole, viewing each provision in light of the other provisions. The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract." *Thompson v. Gordon*, 241 Ill.2d 428, 441 (2011).  "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself."  *Gallagher v. Lenart,* 226 Ill.2d 208, 233 (2007).  "[M]eaning and effect must be given to every part, and no part should be rejected as surplusage unless absolutely necessary since it is presumed that each provision was inserted deliberately and for a purpose." *White v. White*, 62 Ill. App. 3d 375, 378 (1978).

In summary, the record in this case shows that the description of the Collateral in the Loan Documents is either controlled and defined by the Note or is ambiguous and must be determined upon an evidentiary hearing to determine the parties' intent. In no case, however, could the Court have properly relied upon the Loan Agreement's definition in issuing the Procedural Order and Sale Order.

3.    **When an Ambiguity Exists In a Contract, The Intent of The Parties Must Be Determined By Consideration of Extrinsic Evidence at an Evidentiary Hearing.**

Once an ambiguity is discovered in a contract, the role of a court in ascertaining the intent

of the parties switches from a summary-type analysis of the contract to consideration of extrinsic evidence, *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 462-3 (1999); *Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1037 (7th Cir. 1998), citing *Countryman v. Industrial Commission*, 292 Ill. App. 3d 738 (1997), by the trier of fact.  *Harman v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013), citing *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 288-89 (1990).   The court cannot ascertain intent by the mere consideration of the attorneys' submissions.   In the bankruptcy context, where the bankruptcy judge is the trier of fact, that requires an evidentiary hearing.

An important point of law in the search for the parties' intent is what they intended at the time of the contract's formation; in other words, what was negotiated.  *LaSalle National Trust, N.A. v. ECM Motors Co.,* 76 F.2d 140, 144-5 (7th Cir. 1996); *Chicago Board of Options Exchange, Inc. v. Connecticutt Gne. Life Ins. Co.*, 713 F.2d 254, 251 (7th Cir. 1983), citing Illinois cases; *Homeowners Choice, Inc. v. AON Benfield, Inc.*, 938 F. Supp. 2d 749, 756 (N.D. Ill. 2013) ["T]he most relevant extrinsic evidence of intent is evidence of the parties' negotiations at the time the contract was executed."); *Dunkin' Donuts v. Towns Family*, 1995 U.S. Dist. LEXIS 14520 [*10] (N.D. Ill. 1995).

Therefore, at an evidentiary hearing, the Court should admit extrinsic evidence as to what the parties intended when they negotiated the Loan Documents.  That may include contemporary documents, such as term sheets, emails, etc., and testimony of the negotiators.

### 4.    The Loan Documents Should Be Construed Against HASelect.

As stated above, for purposes of this Motion, it is assumed that, as the lender, HASelect drafted the Loan Documents.  It is well established in Illinois law that the doctrine of *contra preferentem* (against the offeror) applies to the interpretation of contracts; *i.e.*, an ambiguous contract term should be construed against the drafter of the contract. *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 493 (1987); *Aircraft Products Co. v. Universal Oil Products*

*Co.*, 100 Ill. App. 3d 694, 698 (1981).[14] Therefore, if the extrinsic evidence does not provide a clear answer to what the parties intended, the Loan Agreement should be construed against HASelect, and Tecumseh's interpretation should prevail.

## IV.
## CONCLUSION

For the reasons stated hereinabove, the Court should vacate the erroneous Procedural Order and Sale Order, or in the alternative, set the matter for an evidentiary hearing to determine the actual intent of the parties as to the extent of collateral intended in granting a security interest to HASelect.

DATED this 6th day of February, 2023.

Respectfully submitted,

GARMAN TURNER GORDON LLP

By: */s/ Gerald M. Gordon*
    GERALD M. GORDON, ESQ.
    JARED M. SECHRIST, ESQ.
    7251 Amigo St., Suite 210
    Las Vegas, Nevada 89119

    and

    MICHAEL D. NAPOLI, ESQ.
    *Pro hac vice*
    AKERMAN LLP
    2001 Ross Avenue, Suite 3600
    Dallas, Texas 75201
    Tel: (214) 720-4360 / Fax: (214) 720-8116

    ARIEL E. STERN, ESQ.
    Nevada Bar No. 8276
    AKERMAN LLP
    1635 Village Center Circle, Suite 200
    Las Vegas, Nevada 89134
    Tel: (702) 634-5000 / Fax: (702) 380-8572
    Email: ariel.stern@akerman.com*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

---

[14]    As noted above, *Contra preferentem* is applied in Illinois outside the insurance policy context.