1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
JARED SECHRIST
Nevada Bar No. 10439
E-mail: jsechrist@gtg.legal
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000 / Fax: (725) 777-3112
*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.  BK-S-21-14486- abl |
| INFINITY CAPITAL MANAGEMENT, INC., dba INFINITY HEALTH CONNECTIONS, | Chapter 7 |
| Debtor. | Hearing Date:  March 30, 2023<br>Hearing Time:  9:30 a.m. |

**MOTION TO SET ASIDE ORDER ABANDONING PROPERTY OF THE ESTATE**

Tecumseh – Infinity Medical Receivable Fund, LP ("Tecumseh"), through its undersigned counsel, submits this motion ("Motion") pursuant to Fed. R. Bank P. 9024 which makes applicable Fed. R. Civ. P. 60(b)(6) to this adversary proceeding, to set aside and vacate the *Order Granting Joint Motion of Chapter 7 Trustee and Secured Creditor HASelect Medical Receivables Litigation Finance Fund International SP to Approve Abandonment of Collateral* [ECF No. 97] ("Abandonment Order") entered on October 15, 2021.

This Motion is supported by the following Memorandum of Points and Authorities, the record in the above-captioned Chapter[1] 7 case ("Case"), of which judicial notice is hereby

---

[1] All references to "Chapter" or "Section" herein shall be to the Bankruptcy Code appearing in

1   requested pursuant to Federal Rule of Evidence 201, and any argument by counsel at the hearing

2   on the 9024 Motion.

3                      **MEMORANDUM OF POINTS AND AUTHORITIES**

4                                          **I.**

5                              **SUMMARY OF THE MOTION**

6          On October 15, 2021, the Court entered the Abandonment Order directing Robert

7   Atkinson, Esq., the chapter 7 trustee ("Trustee")"to abandon the Collateral as defined in the *Joint*

8   *Motion of Chapter 7 Trustee and Secured Creditor HASelect Medical Receivables Litigation*

9   *Finance Fund International SP to Approve Abandonment of Collateral* ("Abandonment Motion")

10  [ECF No. 12]. That definition of collateral was drawn from and limited to Section 4.1 of the *Second*

11  *Amended & Restated Loan & Security Agreement* ("Loan Agreement").  But Section 4.1 is not the

12  only definition of Collateral in the lender/borrower relationship between HASelect and the Debtor;

13  rather, paragraph 16 of the executed *Form of Promissory Note* ("Note") states a materially

14  different, and far narrower, definition of Collateral. (the Note and Loan Agreement are collectively

15  "Loan Documents").[2] [3] [ECF 12, ¶ 4].

16         Despite the multiple definitions, HASelect asserted, the Trustee assumed, and this Court

17  accepted that the Collateral consisted of all the assets of the Debtor based upon the Loan

18  Agreement alone.  However, pursuant to Section E of the Note, the Loan Agreement's definition

19  of Collateral, the one accepted by the Court at HASelect's urging, is not controlling. Accordingly,

20  the Loan Agreement's definition is *misleading and an incorrect definition of the Collateral as*

21

22  Title 11 of the U.S. Code; all references to "Bankruptcy Rule" shall refer to the Federal Rules of
    Bankruptcy Procedure; all references to "Local Rule" shall refer to the Local Rules of Bankruptcy
23  Practice of the U.S. District Court for the District of Nevada.

24  [2]  The term "MLA' has been used in the Motion and throughout the case to describe collectively
    the Loan Agreement and Note.  However, in light of the material differences between the Loan
25  Agreement and the Promissory Note ("Note") with regard to the term "Collateral," Tecumseh will
    defer from using the term in this Motion, and instead refer to the Loan Agreement and Note.

26  [3] The Loan Documents are attached as Exhibit 1 to the *Declaration of Michael Griffin in Support*
    *of Joint Motion of Chapter 7 Trustee and Secured Creditor HASelect Medical Receivables*
27  *Litigation Finance Fund International SP to Approve Abandonment of Collateral* [ECF No. 14]
    (the "Griffin Abandonment Decl."), which, for the Court's convenience, is attached hereto as
28  **Exhibit A.**

1    *intended by the parties.*[4]

2    What the Abandonment Motion, supporting pleading and Order omitted was any reference

3    to the definition of the Collateral in the Note, which defines the Collateral as "all of Borrower's

4    interest in the Receivables and Claims, as set forth the in the Agreement" (Section 16, Exhibit 1-

5    A to Proof of Claim No. 8-12, filed 01/10/2022).  The Note was fully integrated into the Loan

6    Agreement by virtue of Section 9.4 of the Loan Agreement.  As stated, the Note contains no

7    reference to any collateral other than the receivables and claims, *i.e.,* it does not grant a security

8    interest in all assets. Most significantly, Section E of the Note mandates that the Note's definition

9    of Collateral, which is a capitalized term defined in Paragraph 16, is the operative definition. Ex.

10    A § E ("Capitalized terms used herein **unless otherwise defined**, have the meanings given such

11    terms in the Loan Agreement." (emphasis added)). The Loan Documents, therefore, do not

12    ambiguously define "Collateral"—the Note's definition, by its terms, controls over the Loan

13    Agreement's.

14    The Loan Documents containing two inconsistent definitions of the Collateral was a crucial

15    fact overlooked by the Court in arriving at its findings and conclusions. At most, HASelect and

16    the Trustee can argue the Loan Documents' multiple definitions create ambiguity. But even if the

17    two definitions of Collateral create some ambiguity (they do not because, as discussed, the Note's

18    definition controls), such ambiguity cannot be resolved by summary proceedings; rather, it

19    requires an evidentiary hearing to determine the true intent of the parties at the time of the

20    agreement's formation, a hearing that, as of yet, has never occurred. *Farm Credit Bank v. Whitlock*,

21    144 Ill.2d  440, 448 (1991); *see also*, *Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1037 (7th

22    Cir. 1998), citing *Countryman v. Industrial Commission*, 292 Ill. App. 3d 738, 741 (1997).[5]

23

24    [4]The Court also mistakenly relied upon HASelect's definition of Collateral, in whole or in part, in the two orders approving the Trustee's *Motion to (I) Approve Sale of Certain Assets; (II) Set*
25    *Sale/Auction Procedures: and (III) Set Auction Hearing Date* [Main Case ECF Nos. 155, s175, 184], and in the approval in part of HASelect's Motion for Partial Summary Judgment [ECF No.
26    88].

27    [5] Contract interpretation is determined by state law, *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015); *Woodbridge Place Apartments v. Washington Square Capital, Inc.*, 965 F. 2d 1429, 1434 (7th Cir. 1992), and The Loan Agreement provides in § 9.10 that Illinois law shall govern the
28    transaction.  In any event, the principles stated herein are of general applicability, and Ninth Circuit

1    An ambiguity in an agreement exists when on the face of the agreement (intrinsic

2  ambiguity) "key contract language is susceptible of more than one reasonable interpretation where

3  the contract is read as a whole." *Alexian Bros. Health Providers Assn. v. Humana Health Plan,*

4  *Inc.*, 330 F. Supp. 2d 970, 974 (N.D. Ill. 2004), citing *Guerrant v. Roth,* 334 Ill.App.3d 259, 264,

5  777 N.E.2d 499, 503, 267 Ill. Dec. 696 (1st Dist. 2002).  "If … the contract's language is

6  susceptible to more than one meaning, then an ambiguity is present. [T]hen may parol evidence

7  be admitted to aid the trier of fact in resolving the ambiguity." *Air Safety, Inc. v. Teachers Realty*

8  *Corp.,* 185 Ill.2d 457, 462-3 (1999).

9    The purpose of admitting and considering parol or extrinsic evidence as to an ambiguous

10  agreement is to determine the intent of the parties at the time of the contract formation.  *Chicago*

11  *Board of Options Exchange, Inc. v. Connecticut general Life Ins. Co.,* 713 F.2d 254, 258 (7th Cir

12  1983); *Homeowners Choice, Inc. v. AON Benfield, Inc.*, 938 F. Supp. 2d 749. 756 (N.D. Ill. 2013),

13  citing Illinois cases.

14    Therefore, even if the Court were to determine HASelect's and the Debtor's intent

15  regarding the  scope of  the Collateral in the face of the ambiguity (which it has not done), it was

16  clear error for the Court to define the Collateral by exclusively referencing and relying upon only

17  one of two relevant, but inconsistent, portions of the Loan Documents. And it was similarly

18  improper for the Court to determine inferentially the parties' intent by exclusively relying on the

19  representation of the moving parties and without an evidentiary hearing.

20    The language of the Loan Documents permits only one of two conclusions: i) Section E of

21  the Note unambiguously mandates the Note's definition of Collateral is controlling; or ii) the

22  inconsistent definitions of Collateral in the Note and the Loan Agreement create an ambiguity that

23  can only be resolved through an evidentiary hearing. Both conclusions demonstrate the need for

24  relief to remedy this Court's granting of the Abandonment Motion without considering the Note's

25  competing definition and this Motion should be granted.

26

27  law is similar if not identical to Seventh Circuit and Illinois law.  See, *Babi Kian v. Paul Revere Life Ins. Co.*, 63 F. 3d 837, 840 (9th Cir. 1995), and *Hickey v. A.E. Stanley Mfg.*, 995 F. 2d 1385,

28  1389 (9th Cir. 1993).

**Garman Turner Gordon LLP**
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

## II.

## FACTUAL BACKGROUND

Most of the factual circumstances of this case have been described in numerous pleadings and are undoubtedly well known to the Court; therefore, except as pertinent to this Motion will not be repeated in detail here.  Briefly, the Debtor was in the business of purchasing receivables and personal injury claims from medical providers. Pursuant to a sub-advisory agreement entered with the Debtor on June 18, 2020, Debtor assisted Tecumseh in the purchase of certain medical receivables from third parties. The ownership status of those receivables is the subject of other proceedings before this Court and is not pertinent here.  For various reasons, Tecumseh has a strong interest in the assets of the Debtor's estate, especially the non-receivable assets.

HASelect contends it holds a security interest in all the Debtor's assets, relying, as noted above, on a single isolated provision of the Loan  Agreement, which is contradicted by another provision of the integrated Note.[6]  Representing to the Court that a provision of the Loan Agreement (Section 4.1) determines the nature of its collateral, HASelect obtained the Abandonment Order, which in effect abandoned all the debtor's assets to HASelect.

Whether out of failure to closely examine the agreement it drafted, or otherwise, HASelect has managed to convince the Court, the chapter 7 trustee, and others that Section 4.1 of the Loan Agreement determines the extent of its Collateral. In fact, however, it may not and the intention of the parties to the Loan Documents may well have been different.

As discussed above, Section 16 of the Note, which is part of the Loan Documents (*see* Section 9.4), defines the Collateral much more narrowly—it does not include any assets beyond

---

[6]    A true and correct copy of HASelect's Proof of Claim filed herein and the exhibits attached to it, including the Loan Documents, is attached hereto as **Exhibit B**.  Debtor and HASelect had entered into prior Loan and Note Agreements as funds were advanced to debtor, but a far as Tecumseh can determine all prior agreements were identical to the one in effect when the chapter 7 case was commenced.  Tecumseh is also informed and believes that HASelect, as is customary for lenders, was the drafter of the Loan Documents

HASelect's "Receivables"[7] and "Claims"[8] as those terms are specifically defined in the Loan Agreement.  And Section E of the Note expressly states that the definition of "Collateral" in the Note is controlling because it is defined in the Note itself. This means that the Court's adoption of the definition of the Collateral in the Abandonment Order, in reliance of HASelect's representation and the trustee's acquiescence, was in error, and valuable assets of the estate were improperly abandoned to the injury of Tecumseh and unsecured creditors.  More importantly, this error arose because of the extraordinary circumstance that all parties, including the Court, failed in reading the Note.  As discussed below, that omission needs to be corrected by setting aside the Abandonment Order and conducting an evidentiary hearing to determine the true intent of the parties.

**III.**

**LEGAL ARGUMENT**

### A.  PURSUANT TO RULE 60(B), THE ABANDONMENT ORDER SHOULD BE SET ASIDE.

Tecumseh respectfully requests this Court to set aside the Abandonment Order pursuant to FRCP 60(b) because it was issued based on the Court's incorrect understanding of HASelect's security interest. FRCP 60(b), as incorporated to this matter by FRBP 9024, provides several grounds for granting relief from a judgment or order.  Rule 60(b)(6) provides that a motion may be granted for "any other reason that justifies relief."  The courts have supplied further meaning to that broad phrase, and generally relief many be granted in extraordinary circumstances that include a wide range of factors, such as "the risk of injustice to the parties" and "the risk of undermining

---

[7] The Loan Agreement defines "Receivables" as "receivables owing to medical providers for health care services or other service providers of the type approved by Lender, and acquired by Borrower, in each case secured by a Claim or some other collateral approved by Lender." Loan Agreement § 2.

[8] The Loan Agreement defines "Claims" as "a claim by an Obligor for medical and other damages in connection with event or events for which Borrower has acquired the Receivable." Loan Agreement § 2.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

1   the public's confidence in the judicial process." *Buck v. Davis*, 580 U.S. 100, 123 (2017).  Further,

2   as the Supreme Court said in determining whether Rule 60(b)(6) applies, the courts have "wide

3   discretion" *Id.*

4
        There can be little question that when a Court renders a decision based on incomplete or

5   inaccurate representations from the parties concerning contractual definitions, it is a basis for

6
    finding the decision to be a most extraordinary circumstance.  Moreover, that extraordinary

7   circumstance fits the Supreme Court's suggested factors for granting relief.  A court order, like the

8
    Abandonment Order, that is predicated on a movant's misrepresentations of its security interest in

9   the subject of the abandonment undermines confidence in the judiciary. An erroneous

10
    abandonment of valuable estate property at the expense of the unsecured creditors is similarly an

11
    injustice to the creditors, including Tecumseh.  Granting Tecumseh's Motion is also consistent

12
13  with numerous Ninth Circuit decisions applying Rule 60(b)(6).

14
        Highly apposite is *In re International Fibercom, Inc.*, 503 F.3d 933 (9th Cir. 2007) where

15
16  a debtor filed for bankruptcy when its workers compensation policy was set to expire. The debtor

17  moved for entry of an order that approved its assumption of its workers' compensation policy, and

18  the bankruptcy court granted the motion. The appellate court found that the workers' compensation

19
    insurance policy was not executory. The bankruptcy court thus correctly concluded that its

20
    assumption order granted relief inconsistent with 11 U.S.C.S. § 365 and granted a motion under

21
22  Rule 60(b)(6) to re-open and modify its order.  The Ninth Circuit affirmed, explaining its decision,

23  as follows:

24          We have stated in the past that Rule 60(b)(6) should be "liberally
            applied," *Hammer*, 940 F.2d at 525, "to accomplish
25          justice."  Rather, Rule 60(b)(6) should be "'used sparingly as an
            equitable remedy to prevent manifest injustice' and 'is to be utilized
26          only where extraordinary circumstances prevented a party from
            taking timely action to prevent or *correct an erroneous judgment*.'"
27
                                    *****
28

**Garman Turner Gordon LLP**
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

> The bankruptcy court correctly found that extraordinary circumstances justified reconsidering the assumption order because the order erroneously granted assumption of a non-assumable contract….

503 F.3d at 941 (emphasis added).

In *Hall v. Haws*, 861 F.3d 977 (9th Cir. 2017), the court affirmed a district court's order granting the appellee's (Hall) Rule 60(b)(6) motion. Hall and a co-defendant had been convicted of murder based on an erroneous jury instruction, but the California Court of Appeal upheld the conviction. Hall and his co-defendant then filed habeas corpus petitions in the federal district court. For somewhat questionable procedural reasons, Hall abandoned his petition, incorrectly believing that he was a co-submitter of his co-defendant's petition. He was wrong. The co-defendant's petition was granted for the very reason Hall had advanced in his abandoned petition. But, as the Ninth Circuit said, he was "out in the cold." *Id.* at 981. Under the circumstances, the district court granted Hall's motion to set aside his abandonment of his petition. In other words, erroneous actions taken by the court in allowing abandonment of the petition was an injustice requiring relief. As the Ninth Circuit said in stating its reason for affirming the order granting relief, "the decision to grant Rule 60(b)(6) relief is a case-by case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Id.* at 787-88. There, justice was done by correcting the judicial error and permitting Hall to proceed with his habeas petition.

*In re International Fibercom, Inc.*, 503 F.3d 941, *supra*, was followed in *In re Rodeo Canon Development Corp.*, 2010 Bankr. LEXIS 5036, 2010 WL 6259764 (BAP 9th Cir. 2010). In *Rodeo*, the initial trustee of a chapter 11 case entered into a settlement agreement that included a cap on further trustee's fees. The bankruptcy court entered an order approving the settlement. A successor trustee recovered substantial money for the estate, based in part on the former trustee's

malfeasance. The successor trustee then applied for fees in excess of the cap in the settlement,

raising objections. The successor trustee argued that the fee cap only applied to the former trustee.

To resolve the dispute, the bankruptcy court granted a Rule 60(b)(6) motion to re-open the order

approving the settlement to clarify the order and allow for the successor trustee's fees. The

Bankruptcy Appellate Panel affirmed, and summarized its decision after applying the

extraordinary circumstances test, finding:

> [T]he bankruptcy court approved the terms of the [settlement] without realizing that, if interpreted broadly, the Fee Cap purported to prohibit the estate from employing and compensating future trustees and professionals except as permitted under the Fee Cap. Neither bankruptcy law nor state law would have enabled the estate to fully effectuate such restrictions. As a result, to the extent the Fee Cap could have been interpreted broadly, the bankruptcy court's order approving the SDTS was legally erroneous…

*Rodeo*, 2010 Bankr. LEXIS 5036 at [**36-7]; *see also Mannick v. Kaiser Health Plan, Inc.*, 2007

U.S. Dist. LEXIS 73705 (N.D. Cal. 2007) (Rule 60(b)(6) cited as authority for setting aside a

consent decree based on an error in which the wrong version of the parties' settlement was attached

to the consent decree).

In summary, Rule 60(b)(6) is an available and appropriate vehicle for correcting an

erroneous judgment or order to prevent an injustice. Such an injustice would occur here if the

Court does not set aside the Abandonment Order after being presented with uncontrovertible

evidence establishing HASelect's security interest is far narrower than the Court contemplated, or

in the alternative, an unresolved ambiguity that did not permit abandonment without an evidentiary

hearing to determine the nature of the security interest.

## B.  THE NOTE'S DEFINITION OF COLLATERAL IS CONTROLLING.

Under Illinois law, "The primary goal in construing a contract is to give effect to the intent

of the parties." *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002). "When the

language of a contract is clear, a court must determine the intent of the parties solely from the plain

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

language of the contract." *Id.*  "The language of a contract must be given its plain and ordinary meaning." *Id.* Here, the Loan Documents are clear—the definition of "Collateral" in the Note is controlling.

Section E of the Note provides, in pertinent part, "This Note is being issued to Lender by Borrower pursuant, and otherwise subject, to the terms and conditions of the Loan Agreement. Capitalized terms used herein **unless otherwise defined**, have the meanings given such terms in the Loan Agreement." Ex. A (emphasis added). Accordingly, the definition of Collateral in Paragraph 16 of the Note is the operative definition.

Because neither HASelect nor the trustee advised the Court of the accurate definition of HASelect's collateral at the time of the Abandonment Motion, the Court considered and ruled in error upon a mistaken understanding of the scope of HASelect's security interest to the detriment of Tecumseh and other creditors. As discussed at length below, that was an injustice that merits setting aside the Abandonment Order pursuant to NRCP 60(b).

C. **AT MOST, THE SEPARATE DEFINITIONS OF COLLATERAL CREATE AMBIGUITY THAT PRECLUDES ADOPTION OF THE LOAN AGREEMENT'S DEFINITION WITHOUT AN EVIDENTIARY HEARING.**

1. **General Principles of Contract Interpretation and Ambiguities.**

A number of general principles of contract interpretation are helpful in placing the balance of the argument in context.  They include:

- The purpose of the court in interpreting a contract is to determine the intent of the parties. *Home Insurance Company v. Chicago Northwestern Transportation Co.*, 56 F. 3d 763, 769 (7th Cir. 1995), citing *Schek v. Chicago Transit Authority,* 42 Ill.2d 362 (1969).

- The intent of the parties must be determined by examining the contract as a whole and not by examining isolated provisions. *Lasalle National Trust, N.A. v. ECM*

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

10

*Motors Co.*, 76 F.3d 140, 144 (7th Cir. 1996), citing *In re Halas*, 104 Ill. 2d 83 (1984); *In re River Road Hotel Partners, LLC*, 520 B.R. 691, 701 (Bkrtcy. N.D. Ill. 2014), citing *Thompson v. Gordon,* 241 Ill.2d 428 (2011).

- A contract is ambiguous if it is reasonably or fairly susceptible of different constructions. *Alexian Bros. Health Providers Assn. v. Humana Health Plan, Inc.*, 330 F. Supp. 2d 970, 974 (N.D. Ill. 2004), citing *Guerrant v. Roth,* 334 Ill. App. 3d 259, 264 (2002).

- When an ambiguity in the contract prevents the court from determining the parties' intent from the language of the contract alone due to the ambiguity in the contract, a court may admit extrinsic evidence for the purpose of finding intent. *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill. 2d 457, 462-3 (1999); *Bourke v. Dun & Bradstreet Corp.,* 159 F. 3d 1032, 1037 (7th Cir. 1998), citing *Countryman v. Industrial Commission*, 292 Ill. App. 3d 738 (1997).

- The finding of intent from the extrinsic evidence is for the trier of fact and not for the court on summary judgment or its equivalent. *Harman v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013), citing *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288-89 (1990).

- If the extrinsic evidence does not readily permit a finding of intent, the contract will be construed against the drafter. *Aircraft Products Co. v. Universal Oil Products Co.*, 154 Ill.2d 90, 108-9 (1992); *Harris v. American General Finance Co.,* 54 Ill. App. 3d 835, 840 (1977).

    2.    **The Loan Documents Are, at Best for HASelect, Ambiguous as to the Collateral.**

The Loan Documents comprise an integrated agreement, as stated in Section 9.4 of the Loan Agreement, that consist of the Loan Agreement and the Note (executed together on the same date). The Loan Agreement describes the Collateral in Section 4.1 as "the Receivables and

Alternate Receivables,[9] and all of its other personal property…", followed by a detailed description

of the latter. Ex. A (Griffin Decl.) at Ex. 1 § 4.1.   By contrast, Section 16 of the Promissory Note

describes the Collateral as "all of Borrower's interest in the Receivables and Claims…." *Id.*

Section 16 contains no mention of other personal property.  Read together, as they must, the two

descriptions of the Collateral create an intrinsic ambiguity, because the Loan Agreements are

reasonably or fairly susceptible of different constructions, *Alexian Bros. Health Providers Assn.*

*v. Humana Health Plan, Inc.*, 330 F. Supp. 2d 970, 974 (N.D. Ill. 2004), citing *Guerrant v.*

*Roth,* 334 Ill. App. 3d 259, 264 (2002), and susceptible to more than one meaning. *Gallagher v.*

*Lenart*, 226 Ill.2d 208, 233 (2007).

Setting aside the fact that Section E's mandate that the Note's definition controls, the two

different descriptions of the Collateral could suggest ambiguity because they present more than

one meaning of the term, *Sasmano v. Associated Internists of Chicago Ltd.*, 97 Ill. App. 3d 215,

219 (1981), and "the express language of the contract itself is fairly susceptible to more than one

reasonable reading [and] what the contract says is simply not clear on its face." *Bourke v. Dun &*

*Bradstreet Corp.,* 159 F. 3d 1032, 1037 (7th Cir. 1998), citing *Countryman v. Industrial*

*Commission*, 292 Ill. App. 3d 738 (1997). Similarly, ambiguity exists when the terms of a contract

have a double meaning. *Lewiton v. ITA Software, Inc.*, 585 F.3d 377, 379-80 (7th Cir. 2009).  If

the Court determines that Section E of the Note does not clearly establish the Note's definition as

controlling, then that is the case here.

The fact that this rather obvious circumstance escaped the Court's notice arose from the

fact that the trustee and the Court—relying on the moving parties' mistaken representation of an

isolated Loan Agreement provision—did not analyze or consider the Loan Documents in their

entirety.  That was extraordinary and created an injustice.

Illinois law leaves no doubt that in construing a contract to determine the parties' intent, a

court must review an integrated agreement as a whole and may not rely on an isolated provision.

"A contract must be construed as a whole, viewing each provision in light of the other provisions.

---

[9] Again, both defined terms in the Loan Agreement.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract." *Thompson v. Gordon*, 241 Ill.2d 428, 441 (2011). "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Gallagher v. Lenart,* 226 Ill.2d 208, 233 (2007). "[M]eaning and effect must be given to every part, and no part should be rejected as surplusage unless absolutely necessary since it is presumed that each provision was inserted deliberately and for a purpose." *White v. White*, 62 Ill. App. 3d 375, 378 (1978).

In summary, the record in this case shows that the description of the Collateral in the Loan Documents is either controlled and defined by the Note or is ambiguous and must be determined upon an evidentiary hearing to determine the parties' intent. In no case, however, could the Court have properly relied upon the Loan Agreement's definition in issuing the Abandonment Order.

### 3.   When an Ambiguity Exists In a Contract, The Intent of The Parties Must Be Determined By Consideration of Extrinsic Evidence at an Evidentiary Hearing.

Once an ambiguity is discovered in a contract, the role of a court in ascertaining the intent of the parties switches from a summary-type analysis of the contract to consideration of extrinsic evidence, *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 462-3 (1999); *Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1037 (7th Cir. 1998), citing *Countryman v. Industrial Commission*, 292 Ill. App. 3d 738 (1997), by the trier of fact.  *Harman v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013), citing *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 288-89 (1990).  The court cannot ascertain intent by the mere consideration of the attorneys' submissions.  In the bankruptcy context, where the bankruptcy judge is the trier of fact, that requires an evidentiary hearing.

An important point of law in the search for the parties' intent is what they intended at the time of the contract's formation; in other words, what was negotiated.  *LaSalle National Trust, N.A. v. ECM Motors Co.,* 76 F.2d 140, 144-5 (7th Cir. 1996); *Chicago Board of Options Exchange, Inc. v. Connecticutt Gne. Life Ins. Co.*, 713 F.2d 254, 251 (7th Cir. 1983), citing Illinois cases; *Homeowners Choice, Inc. v. AON Benfield, Inc.*, 938 F. Supp. 2d 749, 756 (N.D.

1    Ill. 2013) ["T]he most relevant extrinsic evidence of intent is evidence of the parties'

2    negotiations at the time the contract was executed."); *Dunkin' Donuts v. Towns Family*, 1995

3    U.S. Dist. LEXIS 14520 [*10] (N.D. Ill. 1995).

4         Therefore, at an evidentiary hearing, the Court should admit extrinsic evidence as to what

5    the parties intended when they negotiated the Loan Documents.  That may include contemporary

6    documents, such as term sheets, emails, etc., and testimony of the negotiators.

7              **4.    The Loan Documents Should Be Construed Against HASelect.**

8         As stated above, for purposes of this Motion, it is assumed that, as the lender, HASelect

9    drafted the Loan Documents.  It is well established in Illinois law that the doctrine of *contra*

10   *preferentem* (against the offeror) applies to the interpretation of contracts; *i.e.*, an ambiguous

11
     contract term should be construed against the drafter of the contract. *Duldulao v. St. Mary of*
12
     *Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 493 (1987); *Aircraft Products Co. v. Universal Oil Products*
13
     *Co.*, 100 Ill. App. 3d 694, 698 (1981).[10] Therefore, if the extrinsic evidence does not provide a
14
15   clear answer to what the parties intended, the Loan Agreement should be construed against

16   HASelect, and Tecumseh's interpretation should prevail.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26

27   _____

28   [10]    As noted above, *Contra preferentem* is applied in Illinois outside the insurance policy
     context.

**Garman Turner Gordon LLP**
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

## IV.
## CONCLUSION

For the reasons stated hereinabove, the Court should vacate the erroneous Abandonment Order, or in the alternative, set the mater for an evidentiary hearing to determine the actual intent of the parties as to the extent of collateral intended in granting a security interest to HASelect.

DATED this 6th day of February, 2023.

Respectfully submitted,

GARMAN TURNER GORDON LLP

By: */s/ Gerald M. Gordon*
    GERALD M. GORDON, ESQ.
    JARED M. SECHRIST, ESQ.
    7251 Amigo St., Suite 210
    Las Vegas, Nevada 89119

    and

    MICHAEL D. NAPOLI, ESQ.
    *Pro hac vice*
    AKERMAN LLP
    2001 Ross Avenue, Suite 3600
    Dallas, Texas 75201
    Tel: (214) 720-4360 / Fax: (214) 720-8116

    ARIEL E. STERN, ESQ.
    Nevada Bar No. 8276
    AKERMAN LLP
    1635 Village Center Circle, Suite 200
    Las Vegas, Nevada 89134
    Tel: (702) 634-5000 / Fax: (702) 380-8572
    Email: ariel.stern@akerman.com

    *Attorneys for Tecumseh–Infinity Medical*
    *Receivable Fund, LP*