Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  blarsen@shea.law
         kwyant@shea.law

*Attorneys for HASelect-Medical Receivables*
*Litigation Finance Fund International SP*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.<br>*dba* INFINITY HEALTH CONNECTIONS<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7<br><br>Hearing Date: March 30, 2023<br>Hearing Time: 9:30 a.m. |

**HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S OPPOSITION TO TECUMSEH – INFINITY MEDICAL RECEIVABLE FUND, LP'S MOTION TO SET ASIDE ORDERS APPROVING SALES PROCEDURES AND APPROVING SALE**

HASelect-Medical Receivables Litigation Finance Fund International SP ("HASelect"), through its undersigned counsel, hereby files this Opposition to Tecumseh-Infinity Medical Receivable Fund, LP's ("Tecumseh") *Motion to Set Aside Orders Approving Sales Procedures and Approving Sale* [ECF No. 268] (the "Motion") relating to the validly entered *Order Granting in Part, and Denying in Part, the Trustee's Motion (I) Approve Sale of Certain Assets; (II) Set Sale/Auction Procedures; and (III) Set Auction Hearing Date* [ECF No. 175] entered on January 21, 2022 (the "Procedural Order") and the related *Order Approving Sale* [ECF No. 184] entered February 11, 2022 (the "Sale Order" and collectively with the Procedural Order, the "Orders").

This Motion is made and based on Fed. R. Bank. P. 9024,[1] Fed. R. Civ. P. 60, the following

---

[1] Unless otherwise stated, all "Chapter" and "Section" references are to Title 11 of the U.S. Code (the "Bankruptcy

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  memorandum of points and authorities, the exhibits attached hereto as well as those on file herein

2  as well as the related Adversary Proceedings, judicial notice of which is requested.[2]

3  ## I.    PRELIMINARY STATEMENT

4      Tecumseh's Motion is a misguided attempt to use Rule 60(b) to not only set aside the Orders

5  a year after they were entered, but to raise a new argument for the first time on its Motion for

6  reconsideration.  Indeed, for the first time ever, Tecumseh asserts in its Motion that the definition of

7  Collateral (defined below) that has been used during this entire bankruptcy case and related

8  adversary proceedings is somehow not the correct definition.  Tecumseh asserts as such despite not

9  being a party to the contract in which Collateral is defined and rather states that its counsel waited

10  more than a year to investigate the loan documents at issue. Tecumseh cannot claim that it has not

11  had these documents since its initial appearance in this case as the documents were publicly available

12  numerous pleadings that were filed at the very beginning of this bankruptcy case. However, now,

13  and after conceding and expressly agreeing in multiple pleadings that HASelect's security interest

14  extended over the Collateral as defined throughout these bankruptcy proceedings and related

15  adversary proceedings, Tecumseh asserts that a different definition should apply.

16      Tecumseh asserts that the new definition that should apply is the "definition" of Collateral

17  in the Promissory Note (the "Note") attached to the Second Amended & Restated Loan and Security

18  Agreement (the "MLA"). Tecumseh states that Collateral is capitalized in the Note and therefore,

19  that means that it is defined in the Note. However, Collateral is not capitalized in the Note—rather,

20  Collateral is simply a paragraph heading that refers back to the MLA, which is the controlling

21  definition of Collateral. This last-minute attempt by Tecumseh to re-litigate the issues already

22  resolved in Debtor Infinity Capital Management's ("Infinity" or "Debtor") bankruptcy case, as well

23  as the related adversary proceeding between HASelect and Tecumseh, whereby the Court has

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

24  
25  Code"), all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and all references to "Local Rules" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada (the "Local Rules").

26  [2] Judicial notice of all materials appearing on the docket in the above-captioned Chapter 7 bankruptcy case and related adversary proceedings is proper.  *See* FRE 201(b); *see also U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *Bank of*
27  *Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.)*, 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case, and public records.")
28  (cited by *In re Fikrou*, No. 19-13180-mkn, 2019 Bankr. LEXIS 2613, n. 2 (D. Nev. Bankr. Aug. 8, 2019)).

already granted summary judgment in favor of HASelect with respect to the definition of Collateral and related issues of HASelect's security interest and scope thereof, should be denied outright for several reasons.

First, Tecumseh's Motion is procedurally flawed and untimely. Tecumseh's Motion expressly seeks to set aside an order that has been entered for more than a year in violation of the express language of FRCP 60. Moreover, binding case law from the 9th Circuit expressly precludes what Tecumseh is attempting to do here—raise arguments and present evidence for the first time when they could have been reasonably raised earlier in the litigation. Tecumseh cannot claim it could not have made this argument sooner; rather, the corresponding declaration to Tecumseh's motion simply states that, for some unknown reason, Tecumseh's counsel refused to analyze the loan documents at issue prior to December 2022. Moreover, Tecumseh's motion is substantively flawed. Adopting Tecumseh's argument would render several provisions of the MLA superfluous, which Tecumseh acknowledges cannot happen. Moreover, Tecumseh's reading fails to read the MLA (and the attached Note) as a whole, violating the rules of contractual interpretation and construction. Lastly, the two parties to the MLA and Note have both stated unequivocally that HASelect's security interest extended over *all* of Infinity's assets. Tecumseh has even conceded in multiple pleadings before this Court that the definition of Collateral contained in the MLA is the operative definition. Tecumseh cannot now with a straight face argue otherwise.

As such, the Motion should be denied and sanctions (in the form of reimbursement of HASelect's attorneys' fees and costs) should be entered against Tecumseh and its counsel for filing this frivolous motion pursuant to 28 U.S.C. § 1927.

## II.    STATEMENT OF FACTS

As this Court is well aware of the factual circumstances underlying this bankruptcy proceeding and related adversary proceedings, HASelect will provide only facts relevant to deny the Motion:

### A. HASelect's Relationship with Infinity and the Relevant Loan Documents

1.    Beginning in February 2019, HASelect made a series of loans to Infinity that were documented through various written loan agreements and promissory notes through which Infinity

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  pledged substantially all of its personal property, including accounts receivable, to HASelect as

2  collateral for such loans.[3]

3      2.    HASelect perfected its security interest in all of Infinity's personal property through

4  the filing of a UCC-1 with the Nevada Secretary of State on February 19, 2019.[4] The description of

5  the collateral covered by the UCC-1 is defined as "all assets" therein.

6      3.    On or about December 18, 2019, HASelect, which was then doing business under the

7  name HASelect-FTM Medical Receivables Litigation Finance Fund SP, and Infinity entered into the

8  MLA, which amended and superseded all prior written loan agreements and promissory notes entered

9  into between HASelect and Infinity.[5]

10     4.    Accordingly, HASelect holds a perfected security interest in all of Infinity's personal

11  property (as defined in § 4.1 of the MLA, the "Collateral").  Specifically, Section 4.1 of the MLA

12  describes the Collateral as follows:

13      To secure the payment and performance when due of all of the Borrower's
        obligations hereunder and under the Note, Borrower hereby grants to Lender a
14      security interest in the Receivables and the Alternative Receivables, and all of its
        other personal property, including without limitation, all of Borrower's interest in the
15      following, whether now owned or hereafter acquired, and wherever located, but
        excluding the Permitted Liens: All Goods, Inventory, Equipment, Fixtures,
16      Accounts, General Intangibles, Instruments, Chattel Paper, Documents, Commercial
        Tort Claims, Investment Property, Letter of Credit Rights, Deposit Accounts, and all
17      money, and all other property now or at any time in the future in Lender's possession
        (including claims and credit balances), and all proceeds (including proceeds of any
18      insurance policies, proceeds of proceeds and claims against third parties), all products
        and all books and records related to any of the foregoing (all of the foregoing,
19      together with all other property in which Lender may now or in the future be granted
        a lien or security interest, is referred to herein, collectively, as the "Collateral").[6]

20

21     5.    The MLA also incorporated by express reference the Note, which was attached to the

22  MLA as Exhibit A.[7] Both the Note and the MLA expressly referred to one another and the terms

23  therein.[8]

24

25  [3] See Declaration of Michael Griffin [ECF No. 54] (the "Griffin Declaration"), ¶ 5, submitted with the Prior Motion.

26  [4] Id. at ¶ 6.  A copy of this UCC-1 filing is on file herein at ECF No. 57-2.
    [5] See Griffin Declaration, ¶ 7.  A copy of the MLA is on file herein at ECF No. 57-1.

27  [6] See MLA [ECF No. 57-1], § 4.1.
    [7] See Note [Claim No. 8-2] on file herein.

28  [8] See MLA, § K; Note, § D.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

6.    The Note states that "capitalized terms used herein unless otherwise defined, have the meanings given such terms in the loan agreement."[9]

7.    Collateral is not a capitalized or defined term in the Note. Rather, it is a paragraph heading for Paragraph 16, which specifically states that the Note is secured as set forth in the Loan Agreement.[10]

8.    The Note capitalizes all of the paragraph headings contained therein, but those are not considered defined terms in the Note.[11] Rather, when the Note capitalizes a term, it puts such a term in quotations and **bold** typeface without underline.[12]

9.    In several pleadings before this Court, Tecumseh has admitted that "HASelect holds a perfected security interest in substantially all of Infinity's personal property (as defined in § 4.1 of the MLA, the "Collateral")".[13]

10.    Prior to the filing of this Motion, Tecumseh has never asserted that § 4.1 of the MLA does not govern the definition of Collateral.

**B. Relevant Actions taken in the Bankruptcy Proceeding**

11.    On or about September 14, 2021, Infinity filed its Chapter 7 voluntary petition, initiating the above-captioned bankruptcy proceeding.

12.    On or about September 22, 2021, HASelect and the Trustee in this matter filed the Joint Motion to Abandon Real/Personal Property [ECF No. 12] (the "Motion to Abandon"). HASelect, in support of the Motion to Abandon, filed the Declaration of Michael Griffin [ECF No. 14] (the "Griffin Declaration") to which it attached the MLA and Note that are at issue in the Motion. Therein, Collateral was defined to include not only receivables, but also all of Debtor's other personal property.[14]

---

[9] *Id.* at § E.

[10] *Id.* at ¶ 16.

[11] *See id.* at ¶ 11 entitled "Interest", which is not considered a capitalized defined term in the Note; *id.* at ¶ 13 entitled "Prepayment", which is not considered a capitalized defined term in the Note; *id.* at ¶ 15 entitled "Remedies", which is not considered a capitalized defined term in the Note.

[12] *See id.* at ¶ 14 entitled "Events of Default" which then proceeds to define "**Events of Default**" under the Note; *see also id.* at § D wherein "**Loan Agreement**" is defined and § E wherein "**Note**" is defined.

[13] *See* [ECF No. 75], ¶ 4, on file in the related Adversary Proceeding, Case No. 21-1167-abl.

[14] *See* [ECF No. 12], ¶. 6.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

13.     On or about September 23, 2021, Tecumseh appeared in the above-captioned bankruptcy case.

14.     On or about October 11, 2021, Tecumseh filed its Objection to the Motion to Abandon [ECF No. 82] (the "Objection"). Nowhere in Tecumseh's Objection was there any objection as to the definition of Collateral to include more than just medical receivables.[15] Rather, Tecumseh asserted three objections to the Motion to Abandon: (1) that the Tecumseh Receivables (as defined therein) were not property of the estate; (2) that an adversary proceeding was required to determine the HASelect's priority/superior lien; and (3) that HASelect was heavily over-secured and that the receivables had value to the estate.[16]

15.     On October 15, 2021, the Court entered its Order Granting the Motion to Abandon [ECF No. 97] (the "Abandonment Order"), wherein it acknowledged the definition of Collateral as that used in the Motion to Abandon, which is the same definition used in § 4.1 of the MLA.

*16.*     On or about December 3, 2021, the Trustee filed its *Motion to (I) approve sale of certain assets; (II) set sale/auction procedures; and (III) set auction hearing date* [ECF No. 145] (the "Sale Motion").

17.     On December 13, 2021, Tecumseh filed its Opposition to the Sale Motion [ECF No. 155]. Nowhere therein does Tecumseh dispute the definition of Collateral previously recognized to be accurate by the Court in this case.

18.     On or about December 22, 2021, HASelect filed its Claim [8-1] in this matter, referencing the loan documents attached to the Griffin Declaration. Shortly thereafter, HASelect filed its Amended Claim [8-2] whereby it attached the MLA and the Note.

19.     On January 21, 2022, the Court entered the Procedural Order [ECF No. 175].

20.     On February 11, 2022, the Court entered the Sale Order [ECF No. 184], confirming the sale of the Collateral (subject to certain exclusions) to HASelect for $100,000.

21.     On July 25, 2022, after full briefing by HASelect and Tecumseh, wherein Tecumseh agreed that the definition of Collateral was controlled by § 4.1 of the MLA, the Court granted

---

[15] *See generally* Tecumseh's Objection [ECF No. 82].

[16] *See id.* at pp. 5-6.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  HASelect's Motion for Partial Summary Judgment in certain batches of accounts receivable at issue

2  in the adversary proceeding [ECF No. 88].

3         22.    More than one year after the Court adopted the definition of Collateral in its

4  Abandonment Order, Tecumseh has filed this Motion [ECF No. 268] seeking to set aside the

5  Procedural Order and Sale Order based on a newly concocted argument regarding the definition of

6  Collateral.

7                          **III.    <u>ARGUMENT</u>**

8  **A.  The Motion must be Denied as it is Procedurally Improper**

9         Tecumseh's Motion, which comes more than one year after entry of the Procedural Order and

10  nearly a year after entry of the Sale Order, must be denied as it is untimely under FRCP 60(b)(1),

11  (2), and (6) based on the express language of the rule and applicable, binding case law. Moreover,

12  the Motion seeks to raise arguments for the first time that Tecumseh could have previously asserted

13  during the bankruptcy case or related Adversary Proceeding. This is not allowed per Ninth Circuit

14  case law. As such, and especially because motions for reconsideration are rarely granted,[17] the

15  Motion must be denied for these procedural reasons stated more fully below.

16         *(i)   <u>The Motion is untimely.</u>*

17         Tecumseh brings this Motion under FRCP 60(b)(1), (b)(2), and (b)(6). FRCP 60(c)(1) states

18  that "[a] motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2),

19  and (3), no more than a year after the entry of the judgment or the order or the date of the

20  proceeding." As an initial matter, the Motion is indisputably untimely with respect to (b)(1) and

21  (b)(2) and the Procedural Order because the Motion was filed on February 6, 2023—more than one

22  year after entry of the Procedural Order on January 21, 2022. Thus, the Motions references to (b)(1)

23  and (b)(2) and the applicability to the Procedural Order are entirely misplaced[18] and the Court can

24  dispense with such arguments immediately. *See, e.g.*, *Nevitt v. United States*, 886 F.2d 1187, 1188

25

26  [17] *See, e.g.*, *Smith v. Nye Cnty. Det. Ctr.*, No. 2:16-cv-01999, 2020 U.S. Dist. LEXIS 76661, *2-3 (D. Nev. Apr. 30, 2020) ("[A] motion for reconsideration ***should not be granted, absent highly unusual circumstances***, unless the district

27  court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.").

28  [18] *See* Motion [ECF No. 268], pp. 11-12.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  (9th Cir. 1989) (stating that a district court lacks jurisdiction to consider an untimely motion under

2  Rule 60(b)(1) or (b)(2)).

3        Similarly, the Motion as it applies to the Sale Order, although not expressly barred by FRCP

4  60(c)'s one year requirement, is untimely based on the fact it is filed less than one week prior to the

5  one-year period lapsing with no good reason for doing so. Motions under Rule 60(b)(1) and (2) may

6  be denied "although…filed within the one year period, if the district court finds that the [moving

7  party] was guilty of laches or unreasonable delay." *See, e.g.*, *Meadows v. Dominican Republic*, 817

8  F.2d 517, 520-21 (9th Cir. 1987). The Ninth Circuit has determined that where "the time for filing

9  an appeal to the underlying judgment has expired, the interest in finality of judgment is to be given

10  ***great weight*** in determining whether a FRCP 60(b)(1) motion is filed within a 'reasonable time.'"

11  *See, e.g.*, *Sallie Mae Servicing, LP v. Williams (In re Williams)*, 287 B.R. 787, 793 (B.A.P. 9th Cir.

12  2002) (emphasis supplied) (finding that waiting 81 days before filing a Rule 60 motion, despite being

13  within the year requirement of FRCP 60(c), was untimely because the delay was unreasonable)

14  (citing *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)).

15        Tecumseh's reasons for waiting nearly a year to challenge the Sale Order are not reasonable

16  in any sense of the word. Tecumseh does not and cannot dispute that it had all of the documents

17  necessary to raise its newly asserted arguments regarding the definition of Collateral as early as its

18  initial appearance in this matter. Similarly, Tecumseh cannot dispute that it never challenged

19  HASelect's classification of Collateral during this bankruptcy case and related Adversary

20  Proceeding. In fact, Tecumseh ***admitted*** that "HASelect holds a perfected security interest in

21  substantially all of Infinity's personal property (as defined in § 4.1 of the MLA, the "<u>Collateral</u>")".[19]

22  Only now does Tecumseh's counsel assert that it waited for nearly one year to "review the various

23  motions and other proceedings which occurred" in this case, "including a review of the [MLA and

24  Note]."[20] It cannot be considered reasonable for counsel to wait one year to review pertinent

25  documents that underly the claims and allegations in both the bankruptcy case and Adversary

26  Proceeding.  Not only did Tecumseh have Nevada counsel to review said documents, Tecumseh also

27  ---
[19] *See* [ECF No. 75], ¶ 4, on file in the related Adversary Proceeding, Case No. 21-1167-abl.

28  [20] *See* Declaration of Gerald M. Gordon in Support of the Motion [ECF No. 269], ¶¶ 4-5.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1    had out of state counsel who could have reviewed such documents. Simply, Tecumseh has not shown

2    any reasonableness as to why it delayed for over 51 weeks before filing this Motion.

3         Further, Bankruptcy Rule 8002 states that any notice of appeal must be filed within 14 days

4    after entry of the order. Here, the time for Tecumseh to appeal the Sale Order has long passed and

5    this should be "given great weight" in coming to the conclusion that Tecumseh's delay in filing this

6    Motion was entirely unreasonable, especially considering the underlying policy supporting the

7    finality of orders and judgments. *See, In re Williams*, 287 B.R. at 793. Indeed, Tecumseh's delay of

8    nearly 365 days is much more unreasonable than the delay of the moving party in *In re Williams*

9    whose motion was denied for waiting 81 days without good cause. As such, the Court should deny

10    the Motion based on Tecumseh's unreasonable delay as this renders the Motion untimely pursuant

11    to FRCP 60(b)(1) and (2) with respect to the Sale Order.

12         Lastly, the Motion is untimely under FRCP 60(b)(6). "A motion under Rule 60(b)(6) must

13    be made within a reasonable time." *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010). Rule

14    60(b)(6) should only be used "sparingly". *Id.* "To receive relief under Rule 60(b)(6), a party ***must***

15    ***demonstrate 'extraordinary circumstances which prevented or rendered him unable to prosecute***

16    ***[his case]." Id.*** (emphasis supplied). An attorney's actions, unless grossly negligent, are chargeable

17    to the client and "do not ordinarily constitute extraordinary circumstances warranting relief from

18    judgment under Rule 60(b)(6)." *Id.* An attorney's actions are typically considered grossly negligent

19    when they abandon the client. *See id.* The extraordinary circumstances must have prevented timely

20    action to prevent or correct an erroneous judgment.

21         Here, Tecumseh has not presented any "extraordinary circumstances" for its Motion to be

22    considered timely under Rule 60(b)(6). Tecumseh has presented no evidence that its attorney's

23    actions were "grossly negligent". Tecumseh has always had two sets of counsel during its

24    involvement in both the bankruptcy case and related Adversary Proceeding involving HASelect.

25    Despite being represented, Tecumseh admitted that the definition of Collateral from the MLA, § 4.1,

26    was valid and applicable to the claims at issue. Tecumseh has always had the Note and MLA it now

27    seeks to utilize in the Motion for its newly concocted arguments. Waiting a year to come up with

28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  such an argument does not constitute "extraordinary circumstances." *See Hamilton v. Newland*, 374

2  F.3d 822, 825 (9th Cir. 2004) (stating that inexperience, under preparation, or inattention to detail

3  does not constitute "an extraordinary circumstance that justifies Rule 60(b) relief").

4      For these reasons, Tecumseh's Motion is not timely, nor was it filed within a reasonable

5  time, as required by Rule 60(b) and as such, should be denied.

6          *(ii)  Tecumseh's Motion seeks to utilize FRCP 60 for impermissible purposes.*

7      Even if Tecumseh could somehow get past its unreasonable delay in bringing the Motion,

8  Tecumseh's Motion must be denied because it is being used as an impermissible vehicle to raise

9  new arguments. "A motion for reconsideration should not be granted, absent highly unusual

10 circumstances." *United States v. Benzer*, No. 2:13-cr-18 JCM, 2015 U.S. Dist. LEXIS 171821, *2

11 (D. Nev. Dec. 23, 2015) (citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.

12 2000)). "A motion for reconsideration ***may not be used to raise arguments or present evidence for***

13 ***the first time*** when they could reasonably have been raised earlier in the litigation." *See, e.g.*, *Marlyn*

14 *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (emphasis

15 supplied); *Benzer*, 2015 U.S. Dist. LEXIS 171821 at *2 (denying a motion for reconsideration);

16 *Bamforth v. Facebook, Inc.*, No. 20-cv-09483, 2022 U.S. Dist. LEXIS 100613, *6 (N.D. Cal. June

17 6, 2022) (same).

18     Despite this unequivocal and binding case law, Tecumseh seeks to do exactly what is

19 prohibited—assert an argument for the first time that the definition of Collateral, despite having all

20 of the information previously to assert such an argument. Indeed, Tecumseh cannot dispute that its

21 argument relies on documents that it has had since it appeared in this case. Nothing prevented

22 Tecumseh from raising this argument previously. Simply, Tecumseh is attempting to have another

23 bite at the proverbial apple. For this reason, as well as the fact the Motion is untimely, the Motion

24 should be denied as it is procedurally barred.

25 **B.  The Motion also must be Denied because it is Substantively Flawed**

26     Notwithstanding the fact that the Motion is procedurally barred, and notwithstanding

27 Tecumseh's previous admissions that the definition of Collateral in the MLA at § 4.1 is correct, the

28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Motion should be denied because its argument is logically flawed and based on false assumptions. First, the Note, despite Tecumseh's claims otherwise, does not define "Collateral" and thus there is no competing definition to the MLA's definition of "Collateral" in § 4.1. Second, to adopt Tecumseh's argument would go against the very canons of contractual construction that Tecumseh's own Motion recognizes must be applied. Lastly, the only two parties to the MLA and Note—Infinity and HASelect—have both admitted that HASelect's Collateral encompasses all of Infinity's personal property, not just the receivables and claims, and thus it is clear what the parties intended via the loan documents at issue. For these substantive reasons, expressed more fully below, Tecumseh's Motion should be denied.

### (i) *The only definition of Collateral is contained in the MLA.*

As an initial matter, whether Illinois law or Nevada law is applied, the MLA and the Note constitute one contract. *See, e.g.*, *Roche v. Travelers Prop. Cas. Ins. Co.*, No. 07-cv-302, 2008 U.S. Dist. LEXIS 57418, *14 (S.D. Ill. July 24, 2008) ("Under Illinois law, different instruments executed by the same parties, at the same time, for the same purpose, and in the course of the same transaction, are regarded as one instrument and will be read and construed together."); *Lincoln Welding Works v. Ramirez*, 98 Nev. 342, 345, 647 P.2d 381, 383 (1982) ("Writings which are made a part of the contract by annexation or reference will be so construed…."). Here, the MLA and Note were executed simultaneously, the Note is attached to the MLA as an exhibit, and both documents expressly reference one another. As such, they should be construed as one contract, and taken to its logical conclusion, there can be only one definition of Collateral as it would be nonsensical to say that there are two definitions for the same word in a single contract.

Tecumseh cannot dispute that Collateral is defined in the MLA at § 4.1 to include all of Infinity's personal property and intangible rights, including, but not limited to, the accounts receivables and proceeds thereof. In fact, Tecumseh has admitted as such.[21] Only now, more than a year after entry of the Orders at issue in the Motion, does Tecumseh seek to backtrack and claim otherwise for the first time ever.

---

[21] *See* [ECF No. 75], ¶ 4, on file in the related Adversary Proceeding, Case No. 21-1167-abl.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1      However, Tecumseh's argument that somehow the Note's alleged definition of Collateral

2 controls is flawed in several respects.  Most importantly, Tecumseh's argument fails because the

3 Note does not define Collateral. Tecumseh's entire argument is premised on the fact that the section

4 heading entitled "Collateral" in the Note is somehow a defined term. Indeed, Tecumseh's entire

5 argument relies on Section E of the Note wherein it states "Capitalized terms used herein unless

6 otherwise defined, have the meanings given such terms in the [MLA]" and requires that the Court

7 find that the term Collateral is somehow defined in the Note.  It is clearly not a defined term in the

8 Note based on a cursory review of the document itself.

9      Collateral is used in the Note at ¶ 16 solely as a section heading, like "Remedies", "Events

10 of Default", "Prepayment", and "Business Day"—the very paragraph headings preceding it.

11 However, Remedies is not a defined term, despite being capitalized.[22] Indeed, "Remedies" is used

12 to connote ¶ 15, but when the Court reads ¶ 15 in its entirety, it is apparent that "remedies" is used

13 in its noncapitalized form, despite being a "capitalized" paragraph heading. "Prepayment" is another

14 example of a paragraph heading that is not subsequently capitalized in the same paragraph because

15 it is not considered a defined term.[23] As such, because remedies and prepayment are not considered

16 a capitalized defined term simply based on its capitalization and use as a paragraph heading, the

17 same logic applies to "Collateral" as a paragraph heading and shows that it is not considered a

18 capitalized defined term.

19      This logical conclusion is only bolstered when the Court looks at ¶ 14 of the Note entitled

20 "Events of Default". "Events of Default" is a capitalized paragraph heading, but it cannot be

21 considered a defined term solely based on its use as a capitalized paragraph heading because it is

22 subsequently defined in **bold** typeface without underline later in the same paragraph.[24] Had the

23 paragraph heading been sufficient to define such a term, it would not have been re-defined later on.

24 Moreover, it is clear that when a term is defined in the Note that may not be already defined in the

25 MLA, it is delineated as such through **bold** typeface without underline. For example, the Note at §

26

27 [22] *See* Note, ¶ 15.

27 [23] *Id.* at ¶ 13.

28 [24] *Id.* at ¶ 14.

A defines the MLA as the "**Loan Agreement**", which is defined in the MLA as the "**Agreement**". The parties to the MLA and the Note routinely used **bold** typeface without underlining to define terms, and "Collateral" as used in the Note is simply not delineated in such a manner. In fact, the only place where "**Collateral**" (in **bold** typeface with no underline) appears is in the MLA. As such, the only logical conclusion is that Collateral is only defined in the MLA and not the Note as Tecumseh now suggests.

Further, the Note routinely states that, unless otherwise stated, the MLA is the governing document when there is a conflict between the MLA and the Note.[25] The Note, at ¶ 16 entitled Collateral even states that the Note shall be secured by a security interest "as set forth in the [MLA]." All documents defer to the MLA and its provisions, and as such, those provisions are the operative and controlling ones that have been used during the entirety of the bankruptcy case and related Adversary Proceeding. The Court should not now, based on Tecumseh's newly concocted argument more than a year later, reverse all the progress made in the bankruptcy case and related proceedings on such a flawed argument when the documents themselves expressly disprove Tecumseh's arguments. This is especially true because adopting such an argument would, at a minimum, require that the estate repay HASelect its $100,000.00, with interest, provided in connection with the Orders that Tecumseh now seeks to overturn.

    (ii) *Adopting Tecumseh's interpretation of the Note and MLA renders provisions of the MLA superfluous.*

Tecumseh's arguments further fall flat based on Tecumseh's own citation to the general principles of contract interpretation in its Motion. Tecumseh acknowledges at least one relevant provision that the Court must examine the contract as a whole, and not by examining isolated provisions.[26] However, this is exactly what Tecumseh's argument disregards—Tecumseh seeks to have this Court view ¶ 16 of the Note in isolation from § 4.1 in the MLA regarding the true definition of Collateral. As stated above, the MLA and Note constitute one contract, and the Court should take into account all provisions, including, but not limited to, § 4.1 which Tecumseh has consistently

[25] *See* Note, § E.
[26] Motion, p. 16.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

agreed[27] (or failed to dispute) accurately defines "Collateral" and the scope of HASelect's security interest.

Moreover, adopting Tecumseh's arguments would fly in the face of established contractual interpretation principles that a court should not construe a contract to render any provisions inoperative or superfluous and should further not construe them as conflicting unless no other reasonable interpretation is possible. *See, e.g.*, *Bayview Hunters Point Cmty. Advocates v. Metro Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004); *see also United States ex rel. R Excavating v. PK Constrs.*, No. 96-35765, 1997 U.S. App. LEXIS 34870, *6 (9th Cir. Dec. 4, 1997) (unpublished).

Reading the MLA and Note as Tecumseh would suggest would entirely render § 4.1 of the MLA superfluous. Indeed, the Court cannot adopt Tecumseh's interpretation of reading the Note to define "Collateral" without rendering the security interest and Collateral definition in MLA nugatory, thereby violating the applicable contractual construction principles. Further, Tecumseh's Motion attempts to create a conflict between the MLA and the Note, thereby violating the principle of contractual construction that requires provisions to be read in a nonconflicting manner unless no other reasonable interpretation is possible. Here, there is a reasonable interpretation that does not require conflict—the MLA governs the definition of Collateral and the scope of HASelect's security interest, and the Note simply reaffirms the same. This is an undoubtedly reasonable interpretation because the Note, in the Section entitled "Collateral", refers back to the MLA and the provisions therein.

As such, the Court should not adopt Tecumseh's arguments as to do so flies directly in the fact of applicable contractual construction principles and should deny the Motion outright.

(iii) <u>Both Infinity and HASelect understand that the sole definition of Collateral in the MLA controls</u>

Even if the Tecumseh's Motion was not untimely, procedurally flawed, and logically flawed for the reasons stated above, Tecumseh's Motion can be denied because there is no need to determine the intent of the parties to the MLA and the Note as both Infinity and HASelect have agreed that

---

[27] *See* [ECF No. 75], ¶ 4, on file in the related Adversary Proceeding, Case No. 21-1167-abl.

SHEA LARSEN

1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

HASelect's security interest is governed by § 4.1 of the MLA. Infinity has admitted, via its principals in Oliver Hemmers and Anne Pantelas, that "HASelect holds a perfected security interest in all of Infinity's personal property (as defined in § 4.1 of the MLA, the "<u>Collateral</u>")."[28] This is considered a judicial admission, and is binding on Infinity. *See, e.g.*, *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). HASelect has consistently and accurately stated that its security interest extends over all of the assets of Infinity as set forth in the MLA's definition of Collateral. Thus, the very two parties to the MLA and Note have conceded that the definition of Collateral in the MLA is the operative definition that defines HASelect's perfected security interest.

Moreover, Tecumseh recently produced several documents in the adversary proceeding, one of which is TEC000509.[29] Therein, Oliver Hemmers acknowledges that there is "a blanket UCC over Infinity." Moreover, the UCC-1 on file states that it is over "all assets." Simply, all of the evidence ever put before this Court shows that HASelect has a security interest in all of Infinity's assets as set forth in § 4.1 of the MLA. The Court has even found as such in ruling on the summary judgment motions in the Adversary Proceedings, a finding which Tecumseh has never challenged. The Court should not allow Tecumseh, who is not a party to either the MLA or the Note, to interject feigned ambiguity when the very parties to these documents are well aware of what was agreed upon. Therefore, in addition to the reasons stated earlier, the Court should deny the Motion outright.

## C. The Motion also must be Denied because it seeks to violate the protections of 11 U.S.C. § 363(m)

Not only should Tecumseh's Motion be denied for the procedural and substantive reasons stated above, but Tecumseh's Motion should also be denied as it runs afoul of 11 U.S.C. § 363(m), the purpose of which is to promote finality in bankruptcy. *See In re Preblich*, 5 F.3d 539 (9th Cir. 1993). The Sale Order included a finding that HASelect was a good faith purchaser of all of the claims that Tecumseh now seeks to set aside via its Motion.[30] Further, the Ninth Circuit has expressly stated that pursuant to Section 363(m), "the sale may not be modified or set aside on appeal unless

---

[28] *Compare Adversary Complaint* filed by HASelect against Anne Pantelas, Oliver Hemmers, and Infinity Health Solutions [ECF No. 1], at ¶ 11, in Case No. 22-01109 *with Defendants' Answer to the Adversary Complaint* [ECF No. 21], at ¶ 11, in Case No. 22-01109.

[29] *See* **Exhibit 1** attached hereto.

[30] *See* Sale Order [ECF No. 184], at ¶ 5.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

it was stayed pending appeal." *Adei v. Barclay (In re Berkeley Del. Court, LLC)*, 834 F. 3d 1036, 1041 (9th Cir. 2016). Here, Tecumseh cannot assert that it stayed the sale pending an appeal. As such, Tecumseh is essentially asking this Court to do what the appellate court would not be able to do—i.e., modify or set aside the previously and properly entered Sale Order.

As such, the Court should not grant Tecumseh any relief because doing so would essentially allow an end-run around the appellate bar on setting aside sale orders containing § 363(m) findings. The Motion should be denied.

### D. Sanctions should be imposed against Tecumseh and its Counsel for filing the Motion

While HASelect understands that sanctions are typically not warranted when a filing is made in good faith, based on the Motion's facial procedural flaws, untimely nature, lack of any merit whatsoever, which simply has multiplied the proceedings unreasonably and unnecessarily, HASelect must request that sanctions in the form of attorneys' fees and costs incurred with opposing the Motion should be granted pursuant to 28 U.S.C. § 1927. *See, e.g.*, *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964-65 (9th Cir. 2004). Additionally, this Court has the inherent power to impose sanctions where a party has acted in bad faith or for oppressive reasons. *Id.*

There is nothing that indicates good faith with respect to the Motion. Not only was it untimely for the reasons stated above, but the only reason also it was allegedly brought was because Tecumseh's Nevada counsel allegedly waited nearly a year to review relevant documents before raising a newly created argument that it asserts in the Motion. Moreover, the Motion has duplicated proceedings as it requires HASelect to defend against and brief issues that have already been decided by this Court in both this proceeding and the related Adversary Proceedings several times. Tecumseh fails to acknowledge to the Court in its Motion that both it and Infinity have already conceded the very argument that Tecumseh now attempts to make nearly one year after the entry of orders. None of this can lead to the conclusion that the Motion was filed in "good faith".

///

///

///

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1         As such, HASelect respectfully requests that the Court issue sanctions under either 28 U.S.C.

2  § 1927, or its inherent power, and reimburse HASelect's costs and fees incurred in responding to the

3  current Motion.

4         DATED this 9th day of March, 2023.

5                                  **SHEA LARSEN**

6

7                                    /s/ *Bart K. Larsen, Esq.*
                                    Bart K. Larsen, Esq.

8                                    Nevada Bar No. 8538
                                    Kyle M. Wyant, Esq.

9                                    Nevada Bar No. 14652
                                    1731 Village Center Circle, Suite 150

10                                 Las Vegas, Nevada 89134

11                                 *Attorneys for HASelect-Medical Receivables*
                                 *Litigation Finance Fund International SP*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*SHEA LARSEN*
*1731 Village Center Circle, Suite 150*
*Las Vegas, Nevada 89134*
*(702) 471-7432*

**CERTIFICATE OF SERVICE**

1. On March 9, 2023, I served the following document(s): **HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S OPPOSITION TO TECUMSEH – INFINITY MEDICAL RECEIVABLE FUND, LP'S MOTION TO SET ASIDE ORDERS APPROVING SALES PROCEDURES AND APPROVING SALE**

2. I served the above document(s) by the following means to the persons as listed below:

    ☒ a. ECF System:

ROBERT E. ATKINSON
Robert@ch7.vegas, TrusteeECF@ch7.vegas;ecf.alert+atkinson@titlexi.com

CLARISSE L. CRISOSTOMO on behalf of Trustee ROBERT E. ATKINSON
clarisse@nv-lawfirm.com, bknotices@nv-lawfirm.com

BRADFORD IRELAN on behalf of Creditor HEALTHPLUS IMAGING OF TEXAS, LLC
birelan@imtexaslaw.com, jstephens@imtexaslaw.com; dhall@imtexaslaw.com; ynguyen@imtexaslaw.com

DAVID MINCIN on behalf of Creditor HEALTHPLUS IMAGING OF TEXAS, LLC
dmincin@mincinlaw.com, cburke@mincinlaw.com

MICHAEL D. NAPOLI on behalf of Creditor TECUMSEH - INFINITY MEDICAL RECEIVABLES FUND, LP
michael.napoli@akerman.com, cindy.ferguson@akerman.com; catherine.kretzschmar@akerman.com; masterdocketlit@akerman.com

TRENT L. RICHARDS on behalf of Creditor THE INJURY SPECIALISTS
trichards@sagebrushlawyers.com

ARIEL E. STERN on behalf of Creditor TECUMSEH - INFINITY MEDICAL RECEIVABLES FUND, LP
ariel.stern@akerman.com, akermanlas@akerman.com

U.S. TRUSTEE - LV - 7
USTPRegion17.LV.ECF@usdoj.gov

MATTHEW C. ZIRZOW on behalf of Debtor INFINITY CAPITAL MANAGEMENT, INC.
mzirzow@lzlawnv.com, carey@lzlawnv.com; trish@lzlawnv.com; jennifer@lzlawnv.com; zirzow.matthewc.r99681@notify.bestcase.com

    ☐ b. United States mail, postage fully prepaid:

    ☐ c. Personal Service:

I personally delivered the document(s) to the persons at these addresses:

    ☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐    For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐    d.    By direct email (as opposed to through the ECF System): Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐    e.    By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐    f.    By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 9, 2023.

By: /s/ *Bart K. Larsen, Esq,*

# **EXHIBIT 1**

| | |
|---|---|
| **From:** | Dr. Oliver Hemmers on behalf of Dr. Oliver Hemmers <oliver@infinitycapital.com> |
| **To:** | Chad Meyer |
| **Cc:** | Mike Belotz; anne@infinitycapital.com |
| **Subject:** | Re: Great news! |
| **Date:** | Thursday, October 22, 2020 5:36:32 PM |

HedgeAct filed a blanket UCC over Infinity. A good attorney would know how to structure a deal that protects Tecumseh.

Dr. Oliver Hemmers
Please excuse typos - sent from my phone.

> On Oct 22, 2020, at 4:48 PM, Chad Meyer <cmeyer@tecumsehalts.com> wrote:
>
> Oliver,
>
> Can you provide us copies of the security interests that have actually been filed? Do they mention individual receivables? At a minimum I think we are going to need HA to remove their security interest on the receivables we buy.
>
> I think we'll need to have our own attorney make sure these things are free and clear when we purchase them. If there is a way for Griffin to take our money and still claim the receivables, I'm sure he'll do it.
>
> Thanks!
> Chad
>
>
> Sent from my iPhone
>
>> On Oct 22, 2020, at 2:41 PM, "oliver@infinitycapital.com" <oliver@infinitycapital.com> wrote:
>>
>>
>> Hi Mike,
>> Attached is the last active agreement with HAS from December last year.
>> Kind Regards, Oliver
>>
>> **From:** Mike Belotz <mbelotz@tecumsehalts.com>
>> **Sent:** Thursday, October 22, 2020 8:04 AM
>> **To:** oliver@infinitycapital.com; 'Anne@infinitycapital.com' <Anne@infinitycapital.com>
>> **Cc:** Chad Meyer <cmeyer@tecumsehalts.com>
>> **Subject:** Great news!
>> Anne and Oliver,
>> Over the past couple days we've gotten commitments for over $1.1M. So Chad and I are in agreement we need to start buying some Hedgeact

receivables. However, before we do we want to make sure that the receivables we buy are free and clear with no possibility of a lien from Hedgeact. Is it possible for you to send us the agreements with HA and any other documentation you have so we can run it past legal counsel to make sure we can do this? Any additional insight you have will be most helpful too.

Terrific news and it looks like we are just getting started!

Best,

MB

<HAS-FTM.Infinity.SecondAmended Restated. Loan and Security Agmt. and Promissory Note. exc.12.18.2019.pdf>