GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
JARED SECHRIST
Nevada Bar No. 10439
E-mail: jsechrist@gtg.legal
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000 / Fax: (725) 777-3112

*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC., dba INFINITY HEALTH CONNECTIONS,<br><br>Debtor. | Case No. BK-S-21-14486- abl<br><br>Chapter 7<br><br>Hearing Date: March 30, 2023<br>Hearing Time: 9:30 a.m. |

### REPLY IN SUPPORT OF MOTION TO SET ASIDE ORDERS APPROVING SALES PROCEDURES AND APPROVING SALE

Tecumseh – Infinity Medical Receivable Fund, LP ("Tecumseh"), through its undersigned counsel, files this reply ("Reply") in response to the oppositions filed by HASelect-Medical Receivables Litigation Finance Fund International SP ("HASelect") [ECF No. 282] and Chapter 7 Trustee Robert E. Atkinson ("Trustee") [ECF No. 280] to Tecumseh's Motion to Set Aside Orders Approving Sales Procedures and Approving Sale[1] ("Motion") [ECF No. 268] pursuant to Fed. R. Bank P. 9024 which makes applicable Fed. R. Civ. P. 60(b)(6) to this adversary proceeding.

/ / /

---

[1] [ECF No. 175] ("Procedural Order"); [ECF No. 184] ("Sale Order").

This Reply is supported by the Motion, the following Memorandum of Points and Authorities, the record in the above-captioned Chapter[2] 7 case ("Case"), of which judicial notice is hereby requested pursuant to Federal Rule of Evidence 201, and any argument by counsel at the hearing on the 9024 Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

In issuing the Procedural Order and Sale Order,[3] the Court did not consider, because neither the parties nor the Trustee requested it to, whether the Loan Agreement's or the Note's definition of HASelect's Collateral for its Loan to the Debtor was controlling. Rather, the Court assumed (incorrectly), that HASelect's representation that it had a security interest in all the Debtor's assets was controlling. By the Motion, Tecumseh requests this Court to correct that error and the course of this litigation by applying the correct definition of HASelect's Collateral found in the Note and setting aside the Procedural Order and Sale Order. HASelect and the Trustee oppose the Motion on three bases: i) that the Motion is procedurally improper; ii) that the Motion is substantively flawed; and iii) the Motion seeks relief contrary to the U.S. Bankruptcy Code's finality policy. None has merit and the Motion should be granted.

### II.

### ARGUMENT

**A. THE MOTION IS PROCEDURALLY PROPER.**

By the Motion, Tecumseh requests this Court exercise its discretion pursuant to Fed. R. Civ. P. 60, as adopted by Bankruptcy Rule 9024, to correct a profoundly impactful error—assuming incorrectly that HASelect has a security interest in all of the Debtor's assets. HASelect

---

[2] All references to "Chapter" or "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; all references to "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

[3] Unless otherwise stated, capitalized terms used in this Reply shall have the same meaning as in the Motion.

and the Trustee do not disagree that this Court has the authority to exercise its discretion in such a fashion. Instead, they contend that Tecumseh should be stuck with an incorrect application of HASelect's Collateral because Tecumseh—a stranger to the Loan Agreement and the Note—did not immediately advise the Court that HASelect had misrepresented (either intentionally or negligently) the scope of its security interest, or, at a minimum, the conflict between the Loan Agreement and the Note, or Tecumseh's counsel, and specifically Garman Turner Gordon, did not review HASelect's amended proof of claim, which was filed on January 10, 2022.[4] HASelect Opp. [ECF No. 283] at 7; Trustee Opp. [ECF No. 281] at 2-7 and 9.

HASelect and the Trustee's procedural argument boils down to two contentions: i) Tecumseh took too long to raise the issue with the Court; and ii) no extraordinary circumstances exist to excuse the delay. *Id.* But HASelect and the Trustee's arguments improperly exculpate them of their burden to advise the Court accurately of the contractual relationship between HASelect and the Debtor. It was the Trustee HASelect who filed the Motion to: i) Approve Sale of Certain Assets; ii) Set Sale/Auction Procedures; and iii) Set Auction Hearing Date [ECF No. 145], which HASelect joined [ECF No. 165], not Tecumseh. And it was the Trustee and HASelect, not Tecumseh, who omitted any mention of the definition of HASelect's Collateral in the Note. *Id.* at 2-3. The extraordinary circumstances justifying relief are that HASelect and the Trustee failed to disclose the nature and scope of HASelect's Collateral, causing this Court to issue the Procedural and Sale Orders, granting HASelect an erroneous right to credit bid and obtain all of the Debtors assets—i.e., the foundational premise of these Orders is wrong. HASelect's misrepresentation to the Court should not create a windfall for HASelect at Tecumseh's expense.

Tecumseh now advises the Court of the definition of Collateral in the Note and why it controls. In so doing, Tecumseh has, for the first time by any party, apprised the Court of the

---

[4] That the Trustee is asserting this as a basis for denying the relief sought raises the question regarding the Trustee's actions. At what point did the Trustee review HASelect's Loan Agreement and Note, and discover the difference between paragraphs 4.1 and 16? Assuming the Trustee accepted the position of HASelect regarding the scope of its security interest, the Trustee did not discover this until the Trustee read the Gordon Decl. If the Trustee had discovered the difference before that, the Trustee would obviously have brought it to the attention of the Court.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

3

accurate nature of HASelect's security interest. And while it is true that the Loan Agreement and Note were in the public record and, thus, available to Tecumseh, they were also available to HASelect, the Trustee, and the Court—and no one caught the error. When Tecumseh recognized the error, it promptly advised this Court of the issue. Gordon Decl. [ECF No. 269] ¶¶ 9-10.

Rule 60(b)(1) grants the Court discretion to correct mistakes of law and fact, such as the incorrect application of HASelect's security interest. And Rule 60(b)(2) grants the same authority based on newly discovered evidence. Here, Tecumseh filed the Motion slightly more than a year (sixteen days) after the Court entered the Procedural Order but less than a year before the Court entered the Sales Order. There is, therefore, no question as to the timeliness of the Motion as to the Sales Order. And, despite the Trustee's contrary contentions, Tecumseh specifically requested the Court set aside the Sales Order pursuant to, among others, Rule 60(b)(1) and Rule 60(b)(2). *See* Mot. at 8 ("Rule 60(b)(1) is undoubtedly applicable here for the Sales Order. Rule 60(b)(1) provides that a court may provide relief from a final judgment for mistake, inadvertence, surprise or excusable neglect. Rule 60(b)(2) is also applicable."). But, these two Orders cannot be read in isolation, as one is ineffectual without the other. Indeed, they spring from the same motion [ECF No. 145]. Accordingly, this Court should exercise its discretion to read these orders conjunctively and set aside both pursuant to Rules 60(b)(1) and 60(b)(2).

With respect to Rule 60(b)(6), HASelect and the Trustee offer only the same procedural arguments—that Tecumseh waited too long to raise the issue. They further argue that an appeal deadline is the appropriate measure for the timeliness of a Rule 60 motion, contending that Tecumseh's Motion is merely an attempt to circumvent appeal deadlines. But Tecumseh's Motion is not a motion for reconsideration or an appeal; it is a Rule 60 Motion to set aside orders to correct errors. And it is not based on evidence that was available or on arguments that could have been made at the time of the hearing on the underlying motions. Rather, the Motion is based on a misunderstanding of HASelect's security interest that HASelect, the Trustee, Tecumseh, and the Court failed to identify in the underlying briefing. The information is not new; it was with the Court. It was just misunderstood. That failure is correctable and there is no dispute this Court has the discretion to correct the error.

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

This Court should, therefore, grant the Motion to correct the error that no one caught until now (or, if HASelect did, it chose to remain silent) and set this litigation on a proper course rather than inviting further turmoil by permitting the case to progress through resolution of dispositive motions and trial based on an incorrect assumption of the nature of HASelect's Collateral.

The only dispute is whether this Court *should* exercise that discretion to correct the error or permit this litigation to proceed on its wayward course toward a messy, disputed resolution. Moreover, the Court has a clear pathway to correct this error—it can set aside the Sale and divest HASelect of its erroneous credit bid right, opening the renewed sale to the possibility of overbidding, which should (but apparently does not) appeal to the Trustee whose job it is to maximize the value of the estate.[5]

Principles of fairness, correctness, and efficiency require this Court to grant the Motion and correct this Court's adoption of the improper definition of HASelect's Collateral.

### B. THE MOTION IS SUBSTANTIVELY SOUND.

As discussed at length in the Motion, the Note and Loan Agreement contain different definitions of "Collateral." There is no question about this. Somewhat bewilderingly, though, HASelect and the Trustee ask this Court to deny the Motion because, they argue, Section 16 of the Note is not a definition of collateral and, therefore, there is no issue before the Court to decide. But a common sense reading of the Note readily reveals Section 16 as a definition of "Collateral:"

"**16. Collateral**. This Note shall be secured by a security interest in all of [Debtor's] interest in the Receivables and Claims, as set forth in the Loan Agreement." Note [ECF No. 274] § 16 (PDF p. 43). Defining Collateral as a "security interest," as the Note does, is consistent with the UCC. NRS 104.9102(I) ("Collateral" means the property subject to a security interest or agricultural lien."). There is simply no other way to read Section 16 of the Note other than as a definition of Collateral.

/ / /

---

[5] A review of the claims register reveals 11 proofs of claims totaling approximately $2,500,000 excluding proofs of claims filed by Tecumseh and HASelect. By virtue of the assumption by the Trustee of the scope of the HASelect security interest and the agreement to allow HASelect to credit bid, the 11 unsecured creditors will not receive any distribution from this estate.

HASelect and the Trustee contend Section 16 does not define Collateral because it is a subject heading rather than a defined term. But they offer no rebuttal to Section E of the Note, which states: This Note is being issued to Lender by Borrower pursuant, and otherwise subject, to the terms and conditions of the Loan Agreement. **Capitalized terms used herein unless otherwise defined, have the meanings given such terms in the Loan Agreement.**" *Id.* § E (PDF p. 43) (emphasis added). Without question (or argument), "Collateral" in section 16 is capitalized. *Id.* And, without question, what follows the capitalized "Collateral" is a definition—i.e., "Collateral" as used in the Note is a capitalized, defined term.

HASelect and the Trustee ask this Court to ignore these indisputable facts and read Sections E and 16 out of the Note.[6] But doing so violates the long-standing, universal rule of contractual construction to read contracts in such a way as to avoid rendering their clauses superfluous. Restatement (Second) of Contracts 203(a) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms [of a contract] is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.") (Comment b to section 203 explains, "Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous."); *Univ. of Haw. Prof'l Assembly on Behalf of Daeufer v. Univ. of Haw.*, 66 Haw. 214, 219 (1983) ("a court's principal objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety."); *Munroe v. Continental Western Ins. Co.*, 735 F.3d 783, 787 (8th Cir. 2013) ("Courts must also endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant."). Moreover, and more importantly, the plain language of the Note is unambiguous—Collateral is capitalized; it is defined; it is controlling.

**C. THE LOAN DOCUMENTS ARE, AT BEST FOR HASELECT, AMBIGUOUS.**

In the Motion, Tecumseh states that, at best for HASelect, the competing definitions of Collateral in the Note and Loan Agreement create ambiguity in the Loan such that this Court must

---

[6] Paradoxically, HASelect contends the rules of construction requiring the Court to give affect to all provisions of the parties' contract mandate the Court ignore Section E and 16 of the Note. HASelect Opp. at 12.

**Garman Turner Gordon LLP**
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

6

hear evidence to determine the intent of the parties (HASelect and the Debtor) regarding the scope of HASelect's security interest. HASelect and the Trustee ignore this argument, choosing instead to argue the Motion is procedurally (untimely) and substantively (does not present a genuine issue of contractual misinterpretation) flawed.

Here, there are two definitions of Collateral. The Note expressly states the conditions requiring its definition to control—a capitalized term and a definition. Both conditions are met. Nevertheless, if this Court has any lingering doubt as to whether the Note's definition controls, that doubt can only arise from uncertainty—i.e., ambiguity. In such a situation, the Court must hear evidence to divine the parties' intent. *See* Mot. at 10-14.

HASelect and the Trustee have offered minimal evidence to address the ambiguity. HASelect Opp. at 13 (citing Debtor's Answer to Adversary Complaint) fn. 25. But that evidentiary record is far from complete. Neither of the Debtor's principals have been deposed (they are scheduled to be deposed on March 27, and 28, 2023). And scant discovery has been taken by any party on the issue of contractual intent as to the scope of HASelect's security interest. Accordingly, to the extent this Court determines ambiguity exists, it should require the parties to develop and present evidence of intent to aid in the determination.

### D. SETTING ASIDE THE SALE ORDER DOES NOT VIOLATE SECTION 11 U.S.C. § 363(m).

HASelect and the Trustee contend the Motion seeks to violate the U.S. Bankruptcy Code's policy of final resolution. HASelect Opp. at 15-16. They argue that HASelect was a "good faith purchase of all of the claims that Tecumseh now seeks to set aside via its Motion." They fail to address, however, that HASelect purchased those claims based on its misrepresentation to the Court, and the Court's acceptance of that misrepresentation, of the nature of its security interest in the Debtor's assets. Based on that misrepresentation, the Court granted HASelect an erroneous right to credit bid, chilling any overbidding. HASelect is not, therefore, a good faith purchaser. It is the recipient of a windfall based on the fact no one presented the Court with the proper definition of HASelect's collateral. Accordingly, the Motion does not violate the Code's finality policy; it promotes the policies of fairness, accuracy and efficiency.

### E. SANCTIONS ARE NOT WARRANTED.

Sanctions are inappropriate where a party's actions appear to be "based on a good faith and reasonable interpretation of the court's order." *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (quoting *Rinehart v. Brewer*, 483 F.Supp. 165, 171 (S.D. Iowa 1980)). 27. Here, there is no legitimate dispute that Tecumseh has raised a legitimate issue. The Note and Loan Agreement have inconsistent definitions of Collateral. This issue has never been considered by the Court, as neither the Trustee nor HASelect raised it in their briefing. Raising this highly significant issue is not sanctionable. In fact, it should have been raised by HASelect and the Trustee in the Procedure and Sale motion. Accordingly, Tecumseh has acted in good faith and sanctions are not warranted.

### IV.

### CONCLUSION

For the reasons stated hereinabove, the Court should vacate the erroneous Abandonment Order, or in the alternative, set the mater for an evidentiary hearing to determine the actual intent of the parties as to the extent of collateral intended in granting a security interest to HASelect.

DATED this 23rd day of March 2023.

Respectfully submitted,

GARMAN TURNER GORDON LLP

By: */s/ Gerald M. Gordon*
GERALD M. GORDON, ESQ.
JARED M. SECHRIST, ESQ.
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119

and

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*